IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VIRGINIA WOLF and CAROL SCHUMACHER;
KAMI YOUNG and KARINA WILLES;
ROY BADGER and GARTH WANGEMANN;
CHARVONNE KEMP and MARIE CARLSON;
JUDITH TRAMPF and KATHARINA HEYNING;
SALUD GARCIA and PAM KLEISS;
WILLIAM HURTUBISE and LESLIE PALMER; and
JOHANNES WALLMANN and KEITH BORDEN,

        Plaintiffs,

        v.                            Case No. 14-CV-00064-BBC

SCOTT WALKER; J.B. VAN HOLLEN;
RICHARD G. CHANDLER; OSKAR ANDERSON;
GARY KING; JOHN CHISHOLM;
JOSEPH CZARNEZKI; WENDY CHRISTENSEN;
and SCOTT MCDONELL,

        Defendants.

---

**STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO ABSTAIN AND STAY**

---

INTRODUCTION

Since the beginning of this nation, the definition and regulation of marriage has been the responsibility of the states, rather than of the federal government. *See United States v. Windsor*, ___ U.S. ___, 133 S. Ct. 2675, 2691 (2013). In the present case, plaintiffs challenge the federal constitutionality of the State of Wisconsin's definition of the legal status of marriage. There is no dispute that, even in such an area of virtually exclusive state primacy, the states must comply with the strictures of the United States Constitution. Considerations of federalism and federal-state comity, however, dictate that the federal courts should give state courts an

opportunity to clarify the meaning of a challenged state law before they go about the serious business of potentially invalidating it.  *See Forsyth v. City of Hammond*, 166 U.S. 506, 518-19 (1897) (noting that "[t]he construction by the courts of a state of its constitution and statutes is, as a general rule, binding on the federal courts[]" and that a state's supreme court is the "final arbiter" of question regarding the meaning of the state's constitution).

For this reason, the State Defendants[1] ask this Court to temporarily stay the present action, pursuant to the abstention doctrine of *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), until the Wisconsin Supreme Court has issued a decision in the pending case of *Appling v. Walker*, Case No. 2011AP1572.  The issue in *Appling* is whether the legal status of domestic partnership created by Wis. Stat. ch. 770 is substantially similar to the legal status of marriage and, therefore, neither valid nor recognized in this state under Wis. Const. art. XIII, § 13. Because the Wisconsin Supreme Court's interpretation of the state-law issues in *Appling* will substantially affect this Court's analysis of the federal constitutional issues in this case, *Pullman* abstention is warranted here.

In the alternative, State Defendants ask the Court to abstain pursuant to the doctrine of *Burford v. Sun Oil Co*., 319 U.S. 315 (1943), because any injunctive relief issued by this Court would be binding only on the State Defendants and the three county clerks named in plaintiffs' Amended Complaint and not on any other state or local officials (Dkt. #26).   Under these circumstances, *Burford* abstention is warranted because the adjudication of plaintiffs' constitutional claims in this forum would disrupt the state's important interest in the uniform and coherent administration of state marriage laws, which clearly is a matter of substantial public concern.  Accordingly, if this case is not temporarily stayed under *Pullman*, State Defendants ask

---

[1]The State Defendants are Scott Walker, J.B. Van Hollen, Richard G. Chandler, Oskar Anderson, Gary King, and John Chisholm.

the Court either to order *Burford* abstention or to direct such other steps as the Court may deem appropriate to protect the significant state interest in the coherence of state marriage policy.  If a *Pullman* stay is granted, then State Defendants ask that the *Burford* issue be addressed prior to any resumption of this proceeding.

ARGUMENT

I.      THE COURT SHOULD STAY THIS CASE UNDER THE *PULLMAN* ABSTENTION DOCTRINE PENDING THE WISCONSIN SUPREME COURT'S DECISION IN *APPLING*.

   A.      *Pullman* Abstention Is Proper Under The Circumstances Of This Case.

The present case should be stayed under the *Pullman* abstention doctrine.  Under that doctrine, a federal district court is directed to abstain from exercising its jurisdiction over federal constitutional claims if two interrelated elements are present in the case.  *Pullman*, 312 U.S. at 499-501.  First, there must be an uncertain question of state law, and second, that state-law question must be susceptible of a construction that will either eliminate the need to decide the federal question or materially alter the federal court's view of that issue.  *Bellotti v. Baird*, 428 U.S. 132, 147 (1976); *Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975); *Kusper v. Pontikes*, 414 U.S. 51, 54-55 (1973).  Under these circumstances, *Pullman* directs the federal district courts to avoid trying to forecast how the state courts would decide the unsettled state-law question and to instead abstain to allow the state courts to resolve the question.  *Pullman*, 312 U.S. at 499-500.  Such abstention avoids friction between federal and state courts, reduces the likelihood that a federal court will make an erroneous interpretation of state law, and may avoid unnecessary constitutional rulings.  *Id.* at 499-501.

*Pullman* abstention is common in cases in which state-court resolution of the state-law issue may moot or otherwise eliminate the need for the federal court to decide a federal

constitutional issue.   Complete elimination of the federal constitutional questions is not necessary, however, and *Pullman* abstention is also proper if resolution of the pertinent state-law issue will sharpen a federal constitutional issue or affect the scope or contours of the federal litigation.   *See Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985); *E & E Hauling, Inc. v. Forest Pres. Dist. of DuPage Cnty., Ill.*, 821 F.2d 433, 436 (7th Cir. 1987); *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 380 (9th Cir. 1983).

*Pullman* abstention "does not . . . involve the abdication of federal jurisdiction, but only the postponement of its exercise[.]"   *Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 175 (1959).   The decision whether to abstain is a discretionary exercise of the federal court's equitable powers.   *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964); *Pullman*, 312 U.S. at 500; *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 293 (7th Cir. 1994).   If abstention is granted, the district court typically stays its proceedings and retains jurisdiction of the case pending a state court interpretation of the pertinent state law. *Pullman*, 312 U.S. at 499-502.   If the state court interpretation does not eliminate the basis of the federal claims, the federal action can then resume.   *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n. 9 (1983).

In the present case, plaintiffs challenge the federal constitutionality of Article XIII, § 13, of the Wisconsin Constitution (hereafter, "the Marriage Amendment"), which states:

> Only a marriage between one man and one woman shall be valid or recognized as a marriage in this state.   A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state.

Plaintiffs claim that the restriction of the legal status of marriage under Wisconsin state law to opposite-sex couples violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.[2]

Any evaluation of plaintiffs' claims necessarily turns on the meaning of the Marriage Amendment and, in particular, on:  (1) the scope and severity of any legal disabilities it may impose on same sex couples; (2) the particular meaning of the phrase "legal status . . . of marriage;" and (3) the purpose and intent of the legislators who framed and legislatively passed the Marriage Amendment and of the voters who ratified it.  At the present time, the only published state-court opinion addressing those issues is the decision of the Wisconsin Court of Appeals in *Appling v. Doyle*, 2013 WI App 3, 345 Wis. 2d 762, 826 N.W.2d 666, which held that the state constitutional definition of marriage as a relation between a man and a woman and the prohibition on legislative recognition of a legal status for unmarried individuals identical or substantially similar to that of marriage are not violated by those provisions of the Wisconsin Statutes that confer some (but not all) of the legal benefits of marriage on same-sex couples who register as domestic partners.  In reaching that conclusion, the Court of Appeals provided extensive discussion of each of the issues enumerated above.  *Id.*, ¶¶ 21-40, 41-64, and 76-91.

The Wisconsin Court of Appeals, however, is an intermediate appellate court and its decision in *Appling* is currently under review by the Wisconsin Supreme Court.  The case has

---

[2]On the same constitutional grounds, plaintiffs also challenge "any and all provisions of Wisconsin's marriage statutes (Wis. Stat. ch. 765) that refer to marriage as a relationship between a 'husband and wife,' if and to the extent that such provisions constitute a statutory ban on marriage for same-sex couples . . . ." (Dkt. #26, ¶ 1).  Whether plaintiffs' federal constitutional issues are phrased in terms of the state constitution or in terms of state statutes, the Wisconsin Supreme Court's interpretation of the state-law issues in *Appling* will substantially affect this Court's analysis of those federal issues. *Pullman* abstention is, therefore, warranted in relation to all of the provisions of state law challenged by plaintiffs.  However, because plaintiffs have not specifically identified the challenged statutory provisions, the argument of this memorandum will be stated in terms of the Marriage Amendment.

been fully briefed and orally argued to the Court and is awaiting decision.  It is likely, therefore, that by mid-July Wisconsin's highest court will issue a decision that will provide an authoritative interpretation of the meaning of the Marriage Amendment, with particular reference to the issues enumerated above.  Under these circumstances, the *Pullman* doctrine directs that this case should be temporarily stayed, pending the outcome of *Appling*.  Any subsequent briefing and review of plaintiffs' federal constitutional claims in this Court then will be able to benefit from the views of the Wisconsin Supreme Court on these important state-law issues.

More specifically, in order to evaluate plaintiffs' constitutional claims in this case, this Court will be required to apply to the challenged provisions of Wisconsin law the analytical framework that has been developed by the U.S. Supreme Court in the recent *Windsor* decision, 133 S. Ct. 2675.  In that case, the Supreme Court held that the Due Process Clause of the Fifth Amendment—including its equal protection component—was violated by the portion of the federal Defense of Marriage Act ("DOMA") that defined marriage, for all federal-law purposes, as a legal union between one man and one woman.

The Supreme Court in *Windsor* began by acknowledging the historic power of the states, rather than the federal government, to define and regulate marriage and found that it was in the exercise of that historic power that some states, in recent years, have enacted state laws allowing and recognizing same-sex marriages.  *Id.* at 2689-92.  With regard to this traditional allocation of federal and state authority, the Court noted that "[t]he dynamics of state government in the federal system are to allow the formation of consensus respecting the way the members of a discrete community treat each other in their daily contact and constant interaction with each other."  *Id.* at 2692.  Against that background, the Court found that "DOMA's unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage" suggested

that the federal law was motivated not by a permissible governmental purpose, but rather by an improper purpose of injuring the same class of persons that some states had sought to benefit through state marriage laws.  *Id.* at 2693.  The Court found evidence of such animus in the legislative history of DOMA and in the inevitable effects of the statute's practical operation, including the broad scope of the burdens that the statute imposed on same-sex couples who have been permitted to marry under the laws of a state.  *Id.* at 2693-95.  On the basis of these findings, the Court concluded that the challenged section of DOMA had no legitimate governmental purpose that could overcome its principal, impermissible purpose and effect of injuring a particular class of persons.  *Id.* at 2695-96.

Since *Windsor*, some federal district courts have applied and extended the reasoning of that decision to invalidate state laws that restrict the legal status of marriage to opposite-sex couples.  *See Kitchen v. Herbert*, ___ F. Supp. 2d ___, 2013 WL 6697874 (D. Utah Dec. 20, 2013); *Bishop v. United States ex rel. Holder*, ___ F. Supp. 2d ___, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014); *Bourke v. Beshear*, ___ F. Supp. 2d ___, 2014 WL 556729 (W.D. Ky. Feb 12, 2014); *Bostic v. Rainey*, ___ F. Supp. 2d ___, 2014 WL 561978 (E.D. Va. Feb 13, 2014); *De Leon v. Perry*, ___ F. Supp. 2d ___, 2014 WL 715741 (W.D. Tex. Feb. 26, 2014); *see also Obergefell v. Wymyslo*, ___ F. Supp. 2d ___, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013) (invalidating state constitutional and statutory bans on recognition of same-sex marriages granted in other states).  Plaintiffs in the present case ask this Court to apply similar reasoning to invalidate Wisconsin's restriction of the legal status of marriage to opposite-sex couples.

In analyzing the constitutionality of a state law under the *Windsor* line of reasoning, a court must consider the scope and severity of any disabilities that the challenged law imposes on

a particular group of people and the relationship of that scope to the purported goals of the law. For purposes of the present case, there is currently no authoritative guidance on those issues from Wisconsin's highest state court.  As noted above, however, the Wisconsin Supreme Court will soon issue a decision in *Appling* which is expected to address the intent and purposes behind the passage of the Marriage Amendment, the contours of the restrictions on the legal status of marriage under Wisconsin state law, and the scope and severity of any claimed legal disabilities that Wisconsin's marriage laws may impose on same-sex couples.  Under the *Pullman* doctrine, therefore, it is appropriate for this Court to abstain from addressing the federal constitutional issues raised by Plaintiffs in this case until the Wisconsin Supreme Court has decided *Appling*.

      B.      **Plaintiffs Would Not Be Significantly Harmed By A Temporary Stay.**

It is self-evident that any stay would create some delay in the present case.  Under the circumstances presented here, however, the burdens of any temporary delay would not be great and are outweighed by the benefits of obtaining authoritative guidance on the important state-law issues discussed above.

The Supreme Court has recognized that abstention may delay and increase the costs of litigation, but has nonetheless found that, in appropriate cases, such concerns are outweighed by the federalism interests that abstention promotes.  *See City of Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 172-73 (1942).  The Court has nonetheless acknowledged that, in cases where delay could lead to impairment of a plaintiff's important civil rights, federal courts should balance the nature of the alleged injury against the probable consequences of abstention. *Compare Procunier v. Martinez*, 416 U.S. 396, 404 (1974) (abstention inappropriate when First Amendment challenge involved), with *Harrison*, 360 U.S. at 168-73 (abstention proper in

Fourteenth Amendment challenge to state laws allegedly designed to curtail activities of groups such as NAACP).

In conducting such balancing of interests, the U.S. Supreme Court considers the availability of a prompt state-court resolution of the pertinent state-law questions to be a factor that a federal court should consider in deciding whether to abstain. *Bellotti*, 428 U.S. at 151 (discussing availability of certification of the state-law question to state court). Where there is already pending a state-court action that is likely to resolve the pertinent state-law question without the delay of having to commence a new proceeding in state court, that factor may tip the scales in favor of granting abstention. *See Harris Cnty. Comm'rs Court*, 420 U.S. at 83; *see also Albertson v. Millard*, 345 U.S. 242, 244-45 (1953); *Fieldcrest Dairies*, 316 U.S. at 173; *Ziegler v. Ziegler*, 632 F.2d 535, 539 (5th Cir. 1980) (argument in favor of abstention more compelling where there is already pending a state-court action that is likely to resolve the state question). Even in a case involving civil rights, abstention is appropriate where the pertinent state-law issue is already before the state's highest court. *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987); *Porter v. Jones*, 319 F.3d 483, 493-94 (9th Cir. 2003).

When these principles are applied to the present case, the costs of any delay are low enough to permit abstention. As previously noted, *Appling* is not only already pending before the Wisconsin Supreme Court, but has already been fully briefed and orally argued, with a decision reasonably expected no later than mid-July of this year. Even if this Court were to deny the requested stay and proceed with this case on an expedited schedule, it is still highly unlikely that Plaintiffs would be able to obtain the injunctive relief they seek prior to the decision in *Appling*. This Court has already noted, in its Order of March 4, 2014, that the U.S. Supreme Court, in *Herbert v. Kitchen*, ___ U.S. ___, 134 S. Ct. 893 (2014), granted a stay

pending appeal of a district court order permanently enjoining the enforcement of a state-law prohibition of same-sex marriages and that, since that action, every other federal district court that has enjoined such a prohibition has similarly stayed the injunction pending appeal (Dkt. #53 at 2-3). Under this line of cases, any permanent injunction that this Court might issue following litigation of the merits of this case would also properly be stayed pending final disposition of an appeal to the Seventh Circuit. Until such an appeal is completed, Plaintiffs cannot obtain the injunctive relief they seek in this case and it is highly unlikely that the proceedings in this Court and any subsequent appeal to the Seventh Circuit would be completed before the Wisconsin Supreme Court issues its decision in *Appling*. A modest delay of the proceedings in this Court for the purpose of obtaining the benefit of the Wisconsin Supreme Court's clarification of the meaning of the legal status of marriage under Wisconsin state law and the scope of any burdens imposed by state law on same-sex couples thus should not substantially delay any enforceable injunctive relief that Plaintiffs in this case might ultimately obtain. Under these circumstances, the benefits of abstention outweigh the low costs of the resulting delay.

C.      Considerations of Comity Also Support Abstention.

Considerations of federal-state comity also support abstention in this case. Under the reasoning of *Windsor*, as previously discussed, plaintiffs' constitutional claims require this Court to determine the extent, if any, to which the challenged provisions of Wisconsin state law may be motivated by baseless hostility to same-sex couples and hence devoid of any permissible governmental purpose. In judicial proceedings involving the actions of government officials, there is ordinarily a presumption of regularity. For example, in determining whether a challenged state action has a constitutionally permissible secular purpose under the First Amendment's Establishment Clause, the Supreme Court has characterized the review of the

government's asserted purpose as a "sensitive task" and has indicated that a reviewing court "must take the government at its word absent compelling evidence to the contrary." *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 903 n. 9 (2005).

Plaintiffs in this case are asking this Court to override the usual presumption of regularity and to reach the serious and sensitive conclusion that an amendment of the fundamental charter of a sovereign state by the state's duly elected legislature and by the people of the state acting in their sovereign capacity has been undertaken not in good faith and in accordance with the regular principles of the rule of law, but rather with baseless animus against a particular group.  There can be some circumstances so extreme as to warrant the federal courts in reaching such a conclusion.  *See, e.g., Romer v. Evans*, 517 U.S. 620 (1996) (holding that a state constitutional provision that prohibited all legislative, executive, or judicial action at any level of state or local government that would give minority or protected status based on homosexual orientation, conduct, practices, or relationships was so inconsistent in scope with the reasons offered by the state that it was inexplicable as anything other than an expression of animus toward homosexuals).  Such a severe judgment, however, is not one to be reached lightly.  On the contrary, considerations of comity and respect dictate that a federal court should not conclude that such an act of state sovereignty has been undertaken in bad faith and with baseless animus without first at least allowing the state's highest court to clarify the meaning of the challenged state law and the scope of any disabilities it may impose on the supposedly disfavored group.

For all of the above reasons, the Court should temporarily stay this case under the *Pullman* abstention doctrine pending the Wisconsin Supreme Court's decision in *Appling*.

II.   THE COURT SHOULD EITHER ABSTAIN UNDER THE *BURFORD* ABSTENTION DOCTRINE OR ORDER OTHER STEPS TO PROTECT THE COHERENT ADMINISTRATION OF WISCONSIN STATE MARRIAGE LAWS.

In the alternative, if this case is not temporarily stayed for the purpose of allowing the Wisconsin Supreme Court to clarify the meaning of the Marriage Amendment, the Court should abstain pursuant to the doctrine of *Burford* or order other appropriate steps to protect the State of Wisconsin's important interest in the uniform and coherent administration of its marriage laws.

In *Burford*, the U.S. Supreme Court recognized that federal abstention may be appropriate to defer to a state's administration of a complex statutory scheme.  The Court has said that *Burford* abstention is proper when "federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976).  More generally, the *Burford* abstention doctrine provides that "[c]ourts should abstain from deciding cases presenting 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' *or* whose adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002) (emphasis added) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).  If either of those two prongs is met, a federal court should abstain under *Burford*. *McGee v. Cole*, ___ F. Supp. 2d ___, 2014 WL 321122, *3 (S.D. W. Va., Jan. 29, 2014).

In the recent *McGee* case, involving a federal constitutional challenge to West Virginia's prohibition of same-sex marriage, the district court found that abstention under the first prong of the *Burford* analysis was not proper because the issue of the status of same-sex marriage under

- 12 -

West Virginia law was not a difficult one, but rather had already been clearly determined. *Id.*, *5.  With regard to the second prong of the *Burford* analysis, however, the court found that federal-court adjudication of the plaintiffs' constitutional claims could disrupt the uniform and coherent implementation of state marriage policy because any judgment invalidating the state's ban on same-sex marriages would have been binding only on the two county clerks who were named as defendants in that case.  *Id.*, *6-7.  The court found that "this concern in creating a coherent policy is sufficient ground for abstention," but reserved judgment and gave the plaintiffs an opportunity to either seek joinder of additional parties or file with the court an explanation of why such joinder was not necessary.  *Id.*, *7.

The procedural posture in the present case is similar in all material respects to the posture in *McGee*.  Plaintiffs in this case have named three individual county clerks—*i.e.*, the clerks of Milwaukee, Racine, and Dane counties—as defendants in this action.[3]  The clerks of all the other counties in Wisconsin, however, are not before the Court in this case.  Accordingly, as in *McGee*, any injunctive relief that this Court might issue would be binding on the three defendant county clerks, but would not be binding on any other county clerks in the state.  Because the county clerks in Wisconsin issue all marriage licenses, *see* Wis. Stat. § 765.12(1), a judgment in plaintiffs' favor in this case could create a situation in which the three defendant county clerks would be required to issue marriage licenses to same-sex couples, while other county clerks would not be subject to that requirement and could continue to issue marriage licenses only to opposite-sex couples.  As the *McGee* court noted, the resulting confusion and lack of coherence and uniformity in the administration of state marriage policy "is sufficient ground for abstention[.]"  *McGee*, 2014 WL 321122, *7.

---

[3]All Plaintiffs who allege that they are currently unmarried and wish to marry in Wisconsin reside in those three counties (Dkt. #26, ¶¶ 14-18).

The presence of the State Defendants in this case does not allay these concerns about coherence and uniformity. With regard to Governor Scott Walker, plaintiffs' Amended Complaint alleges only that he has a general duty under the Wisconsin Constitution to take care that the laws of the state are faithfully executed (Dkt. #26, ¶ 20). With regard to Secretary of Revenue Richard G. Chandler, plaintiffs allege only that he has the authority to enforce the revenue code of Wisconsin (Dkt. #26, ¶ 22). With regard to State Registrar of Vital Statistics Oskar Andersen, plaintiffs allege only that he has the authority to establish the form of a marriage license and to accept for registration and assign a date of registration to marriage documents (Dkt. #26, ¶ 23). Finally, with regard to Attorney General J.B. Van Hollen and District Attorneys John Chisholm and Gary King, plaintiffs allege only that they each have the authority to initiate a prosecution under Wisconsin's marriage evasion statute (Dkt. #26, ¶¶ 21, 24, and 25). None of these allegations is sufficient to support a conclusion that any of the State Defendants has any legal power to direct the actions of Wisconsin's county clerks with regard to the issuance of marriage licenses, nor are the State Defendants independently aware of any such power.[4] There simply is nothing that this Court could order any of the current defendants in this case to do or not do that would be sufficient to ensure a uniform and coherent statewide policy regarding the issuance of marriage licenses.

Faced with a similar situation, the *McGee* court concluded that sufficient grounds for *Burford* abstention existed but chose, under the circumstances of that case, to reserve its decision on abstention and to afford the plaintiffs an opportunity to either seek joinder of additional parties or explain to the court why such joinder was not necessary. *McGee*, 2014 WL 321122, *7. Because the posture of the present case is materially analogous to the

---

[4]County clerks in Wisconsin are independently elected county officers, directly accountable to the electorate. *See* Wis. Stat. § 59.20(2)(a).

situation in *McGee*, this Court similarly should either order abstention under *Burford* or reserve judgment on *Burford* abstention and direct such other steps as the Court may deem appropriate to protect the state interest in the coherence of state marriage policy.  If a *Pullman* stay is granted, the *Burford* issue still should be addressed prior to any resumption of this proceeding.

CONCLUSION

For the reasons stated above, the State Defendants respectfully ask the Court to temporarily stay the present case under the *Pullman* abstention doctrine until the Wisconsin Supreme Court has issued a decision in the pending case of *Appling v. Walker*.  In the alternative, State Defendants ask the Court to abstain under the *Burford* abstention doctrine or to order other appropriate steps to protect the uniform and coherent administration of Wisconsin state marriage laws.  If a *Pullman* stay is granted, State Defendants ask that the *Burford* issue also be addressed prior to any subsequent resumption of this proceeding.

Dated this 14th day of March, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General

s/Thomas C. Bellavia
THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants,
Scott Walker, J.B. Van Hollen,
Richard G. Chandler, Oskar Anderson,
Gary King, and John Chisholm

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 266-8690 (Bellavia)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*
*bellaviatc@doj.state.wi.us*