IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| VIRGINIA WOLF and CAROL SCHUMACHER; KAMI YOUNG and KARINA WILLES; ROY BADGER and GARTH WANGEMANN; CHARVONNE KEMP and MARIE CARLSON; JUDITH TRAMPF and KATHARINA HEYNING; SALUD GARCIA and PAM KLEISS; WILLIAM HURTUBISE and LESLIE PALMER; and JOHANNES WALLMANN and KEITH BORDEN, <br><br> Plaintiffs, <br><br> vs. <br><br> SCOTT WALKER; J.B. VAN HOLLEN; RICHARD G. CHANDLER; OSKAR ANDERSON; GARY KING; JOHN CHISHOLM; JOSEPH CZARNEZKI; WENDY CHRISTENSEN; and SCOTT MCDONELL, <br><br> Defendants. | Case No. 14-cv-00064-BBC |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE
STATE DEFENDANTS' MOTION TO ABSTAIN AND STAY**

The State Defendants ask the Court to abstain and to stay this matter pending a decision from the Wisconsin Supreme Court in *Appling v. Walker*, Case No. 2011AP001572. The "Issue Presented for Review" in *Appling* is whether "the legal status of domestic partnership created by Wisconsin Statutes Chapter 770 [is] 'substantially similar' to the legal status of marriage and thus unconstitutional under Article XIII, Section 13 of the Wisconsin Constitution." Petitioners' Brief, *Appling v. Walker*, Case No. 2011AP001572, p.1 (filed Aug. 12, 2013), available at http://wscca.wicourts.gov/index.xsl. The "State Defendants" in *Appling* (including Governor Walker) declined to even participate in the case. Now, however, the State Defendants (including Governor Walker) assert that in light of purported "important state-law issues" to be decided in *Appling* and the need for "authoritative guidance" from the Wisconsin Supreme Court, this Court

1

should abstain from deciding the federal constitutional issues squarely presented to it. The State Defendants' motion is baseless, and comes nowhere close to demonstrating that the Court should depart from its "virtually unflagging obligation" to exercise its jurisdiction here. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Plaintiffs are same-sex couples challenging Wisconsin's ban against marriage for same-sex couples, not its domestic partnership laws. Contrary to the State Defendants' suggestion, that challenge does not turn upon any unsettled question of state law, such that *Pullman* abstention is warranted. There is nothing ambiguous, nor anything at issue in *Appling*, about the provision of Wisconsin's constitution stating that "[o]nly a marriage between one man and one woman shall be valid or recognized as a marriage in this state." Nor is there any unsettled question regarding the impact of this provision upon Plaintiffs: it means Plaintiffs cannot get married in Wisconsin, nor will Wisconsin recognize their out-of-state marriages, and it is precisely that impact that Plaintiffs contend violates their constitutional rights.

The State Defendants' attempt to invoke *Burford* abstention fares no better. The State Defendants complain that a judgment in this case would interfere with their interest in "coherence and uniformity in the administration of state marriage policy." But under binding Seventh Circuit precedent, that is not enough to invoke *Burford* abstention. Rather, there must also be some specialized state forum to adjudicate the claims at issue. The State Defendants cannot show (and have made no attempt to show) that is the case here.

**I.      There Is No Basis For *Pullman* Abstention.**

     **A.      *Pullman* Abstention Does Not Apply Because There Is No Unsettled Question Of State Law Affecting Plaintiffs' Federal Claims.**

"Under *Pullman* abstention, a court abstains in order to avoid unnecessary constitutional adjudication." *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 361 (7th Cir.

2

1998). Such abstention is "warranted only when (1) there is a substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling." *Id.* at 364. *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-17 (1996) (*Pullman* abstention applies where "the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law"). *Pullman* abstention plainly does not apply here.

First, there is no "substantial uncertainty" as to the meaning of the state law Plaintiffs challenge. That state law is Article XIII, § 13 of the Wisconsin Constitution (the "marriage ban"), which states:

> Only a marriage between one man and one woman shall be valid or recognized as a marriage in this state. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state.

There is no dispute at all, much less any "substantial uncertainty," that the marriage ban prohibits Plaintiffs, same-sex couples residing in Wisconsin, from marrying or having their out-of-state marriages recognized in Wisconsin. That prohibition is certain and indisputable, and it is precisely what Plaintiffs allege violates their federal constitutional rights.

The State Defendants do not dispute that Wisconsin's marriage ban means exactly what it says, and prohibits Plaintiffs from marrying or having their out-of-state marriages recognized in Wisconsin. Instead, they point to the Wisconsin Supreme Court's pending *Appling* case, concerning whether Wisconsin's statutory domestic partnership registration scheme for same-sex couples violates Art. XIII, § 13's ban on legal statuses that are "substantially similar . . . to marriage." Plaintiffs' challenge here, however, does not involve Wisconsin's domestic partnership statute or the scope of its prohibitions, so any uncertainty regarding whether that

3

statute is valid under state law is irrelevant to Plaintiffs' federal law challenge to the marriage ban.

Second, and relatedly, there is no "reasonable probability" that a decision in *Appling* would "obviate the need for a federal constitutional ruling." *Int'l College*, 153 F.3d at 364. Wisconsin currently allows same-sex couples to obtain certain domestic partnership benefits (as the intermediate appellate court held that scheme is permissible under Wisconsin law, and there has been no stay or injunction regarding domestic partnership registration). Plaintiffs contend here that Wisconsin nevertheless has violated their fundamental rights to marry and have their existing marriages recognized, and has unlawfully discriminated against them on the basis of their sex and sexual orientation. In other words, Plaintiffs contend that it is not enough under the United States Constitution that Wisconsin has enacted statutory provisions that, in the words of the State Defendants, "confer some (*but not all*) of the legal benefits of marriage on same-sex couples who register as domestic partners." Defs.' Br. in Support of Motion to Abstain ("Br.") [Doc. #58] at 5 (emphasis added).

In *Appling*, the Wisconsin Supreme Court can conceivably rule one of two ways: it can hold that the domestic partnership statute is invalid under Wisconsin's constitution because it confers upon same-sex couples "[a] legal status identical or substantially similar to that of marriage," or it can hold that it is valid under Wisconsin's constitution because domestic partnership is not "[a] legal status identical or substantially similar to that of marriage." Wis. Const. Art. XIII, § 13. Neither ruling will change the fact that Wisconsin, by the plain terms of its constitution, denies same-sex couples "[a] legal status identical or substantially similar to that of marriage." And neither ruling would obviate the need for a federal constitutional ruling,

4

because no matter how the Wisconsin court may rule, Plaintiffs' federal constitutional challenge to Wisconsin's marriage ban remains.

The State Defendants point (at 4) to cases suggesting that *Pullman* abstention may apply where the federal constitutional issue, even if not mooted, would be "presented in a different posture if a pertinent state law issue which is currently undecided were to be resolved in a particular way." *E&E Hauling, Inc. v. Forest Pres. Dist. of DuPage County*, 821 F.2d 433, 436 (7th Cir. 1987). That principle also has no application here. The current posture of this case is that Wisconsin provides certain domestic partnership benefits to same-sex couples, and Plaintiffs allege that Wisconsin's exclusion of same-sex couples from the institution of marriage violates the federal constitution. If the court in *Appling* affirms the intermediate court's decision, the posture of this case will not have changed one whit. If the court instead strikes down the domestic partnership statute under Wisconsin law, it is difficult to discern how that could possibly help the State Defendants in this case, but in any event the posture of Plaintiffs' federal claims would still remain the same: they will still be excluded from the institution of marriage under the marriage ban.

Finally, the State Defendants suggest (at 8) that the *Appling* court's decision will impact this case because the court is "expected to address the intent and purposes behind" the marriage ban, "the contours of the restrictions on the legal status of marriage," and "the scope and severity of any claimed legal disabilities that Wisconsin's marriage laws may impose on same-sex couples." That suggestion also misses the mark. The Wisconsin Supreme Court has *already* explained the intent and purpose of the marriage ban. "The purpose of the marriage amendment, then, was to preserve the legal status of marriage in Wisconsin as between only one man and one woman," and to do so through a constitutional amendment to "ensure[] that no legislature, court,

5

or any other government entity can get around the first sentence [which "preserves the one man-one woman character of marriage"] by creating or recognizing 'a legal status identical or substantially similar to that of marriage.'" *McConkey v. Van Hollen*, 2010 WI 57, ¶¶ 54-55, 783 N.W.2d 855, 869. As for the "contours of the restrictions" and "scope and severity" of disabilities imposed by the marriage ban, the restrictions and disabilities that Plaintiffs challenge are clear and indisputable: the marriage ban means Plaintiffs cannot marry or have their out-of-state marriages recognized in Wisconsin, which of course is precisely the purpose and intent of the marriage ban.

In short, there is no basis at all for abstention under the *Pullman* doctrine, much less the exceptional circumstances required before a federal court will put aside its "virtually unflagging obligation" to exercise its jurisdiction over cases presenting federal questions. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

### B. The State Defendants' Arguments Regarding Harm And Comity Are Irrelevant.

Because there is no basis to invoke *Pullman* abstention, the Court need not even reach the State Defendants' arguments that Plaintiffs would not be harmed by a stay (Motion at 8-10) and that considerations of comity support abstention (Motion at 10-11). Plaintiffs nevertheless briefly address each argument below.

Contrary to the State Defendants' suggestion, staying adjudication of Plaintiffs' federal constitutional claims would cause them significant harm. As explained in Plaintiffs' motion for a preliminary injunction, Plaintiffs suffer the ongoing harm and indignity of the State's denigration of their relationships and their families. As the Supreme Court recognized in *Windsor*, the denial of marriage to same-sex couples "tells those couples, and all the world, that their" relationships are "second-tier." *United States v. Windsor*, __ U.S. __, 133 S.Ct. 2675, 2694

(2013). "The differentiation demeans the couple, whose moral and sexual choices the Constitution protects," and "humiliates tens of thousands of children now being raised by same-sex couples." *Id*. Exclusion from marriage makes it "even more difficult for the children [of same-sex couples] to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Id*. In addition, Plaintiffs Young and Willes are soon expecting a daughter, but the marriage ban means Plaintiff Willes cannot be recognized as the baby's parent, and hence denies them the same crucial protections for their parental relationship with their child that are provided to married couples with children. Moreover, the marriage ban nullifies the pre-existing, legally recognized marriage of Plaintiffs Wallmann and Borden, effectively divorcing them against their will. All Plaintiffs are denied crucial state and federal law spousal protections.

Plaintiffs withdrew their motion for preliminary injunction, but only because this Court proposed expedited resolution on the merits as an alternative. The State Defendants' proposal to now indefinitely delay even resolution on the merits, pending a state court decision that does not even involve the federal rights Plaintiffs seek to vindicate and that raises no pertinent state-law issue, is an unwarranted burden not outweighed by any serious federalism interest.

The State Defendants also assert (at 9-10) that the costs of a delay now are immaterial because any permanent injunction issued by the Court should be stayed pending appeal to the Seventh Circuit. In other words, according to the State Defendants, since they intend to later seek to delay vindication of Plaintiffs' constitutional rights if Plaintiffs prevail, the Court might as well grant their request to delay adjudication now. While Plaintiffs do not agree that a

judgment in their favor should be stayed pending any appeal,[1] even if that were the likely result it is a reason to expedite, not stay, this case now, so that the matter can promptly be resolved by the inevitable appeal to the Seventh Circuit.

Finally, the State Defendants' "comity" argument leads nowhere. They suggest (at 10-11) that the *Appling* court should get first crack at determining whether the marriage ban is "motivated by baseless hostility" and "bad faith." But there is no indication that the Wisconsin Supreme Court intends to address such matters. Rather, the issue in *Appling* is purely a legal issue – whether Wisconsin's domestic partnership statute creates a "legal status identical or substantially similar to that of marriage" – that has no bearing on Plaintiffs' claims that the marriage ban itself is unconstitutional.

## II. There Is No Basis for *Burford* Abstention.

The State Defendants also assert that the Court should apply the second type of *Burford* abstention, under which abstention may be appropriate where adjudication in a federal forum "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" Br. at 12 (quoting *Colorado River*, 424 U.S. at 814). The State Defendants rely primarily on *McGee v. Cole*, 2014 WL 321122 (S.D. W.Va. Jan. 29, 2014), which concerned a challenge to West Virginia's ban on marriage for same-sex couples. The *McGee* court declined to enter any final ruling on *Burford* abstention, but noted that it was "troubled with how resolution of this case could create disjointed policy across West Virginia," since only two county clerks were named defendants, and it required additional briefing if plaintiffs did not join other state defendants. 2014 WL 321122 at *7. While the State

---

[1] Among other things, in two cases striking down bans on the recognition of marriages of same-sex couples legally entered into elsewhere, one final decision has not been stayed at all (*Obergefell v. Wymyslo*, No. 13-cv-501, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013)), and the other was stayed for less than 30 days to permit the State time to implement the decision (*Bourke v. Beshear*, No. 13-cv-750, Dkt. 58 (W.D. Ky. Feb. 28, 2014)).

Defendants urge this Court to follow the *McGee* court's *Burford* analysis, that approach is unpersuasive and, more importantly, flatly inconsistent with Seventh Circuit precedent.

Whatever the law may be in the Fourth Circuit, the Seventh Circuit has held that "the mere existence of a statewide regulatory regime is not sufficient" for *Burford* abstention. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011). Rather, "[t]he state must 'offer some forum in which claims may be litigated,' and this forum must 'stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims.'" *Id.* (quoting *Property & Cas. Ins. Ltd. v. Central Nat'l Ins. Co. of Omaha*, 936 F.3d 319, 323 (7th Cir. 1991)). "In other words, judicial review by state courts *with specialized expertise* is a prerequisite to *Burford* abstention." *Id.* (emphasis in original). *Burford* "teaches that judicial review must, by legislative design, be concentrated in a few particular courts for its narrow abstention doctrine to be applicable." *Id.* at 505.

Here, there is no such state forum with "specialized expertise" to adjudicate Plaintiffs' claims. Thus, even if Wisconsin has an "important interest in the uniform and coherent administration of its marriage laws" (Br. at 12), as a matter of law there is no basis to invoke *Burford* abstention. *See also Teed v. JT Packard & Assoc., Inc.*, 2010 WL 446468, *2 (W.D. Wis. Feb. 2, 2010) (Crabb, J.) ("Abstention is proper under *Burford* only if the state 'offer[s] some forum in which [plaintiffs'] claims may be litigated'" and that forum is "'specialized'" (quoting *Property & Cas. Ins.*, 936 F.2d at 323)).

Further, even if there were some specialized state forum for adjudication here (though plainly there is not), the State Defendants' suggestion (at 13) that a final decision in this case would result in "confusion and lack of coherence and uniformity in the administration of state marriage policy" is pure speculation. While only three of Wisconsin's county clerks are

9

included as defendants here (the clerks of the three counties where Plaintiffs reside), Plaintiffs bring a facial attack on the constitutionality of Wisconsin's marriage ban, and have named as defendants the highest executive branch officials in the State, including the Governor and the Attorney General. If the Court declares that the marriage ban is unconstitutional and enjoins the State Defendants from enforcing it, the notion that other county clerks in Wisconsin, whether or not technically bound by the judgment, would continue to deny marriage licenses to same-sex couples is purely speculative. Such speculation is far too thin a reed to support the extraordinary step of abstention.

Perhaps more importantly, even if a judgment in Plaintiffs' favor would disrupt Wisconsin's uniform and coherent marriage scheme, that is immaterial here. Wisconsin, pursuant to its constitution, uniformly denies marriage to same-sex couples. If, as Plaintiffs contend, this denial violates Plaintiffs' fundamental constitutional rights, then Wisconsin's interest in the orderly administration of its marriage laws is no basis to continue trampling Plaintiffs' fundamental constitutional rights. Any burdens of adjusting Wisconsin's policies in other counties to ensure they comply with the federal constitution should fall on the State, not Plaintiffs.

In any event, the State Defendants' suggestion that relief in this case, as currently postured, could not impact marriage in other counties is wrong. Under Wisconsin law, while county clerks issue marriage licenses, the state registrar of vital statistics – who is one of the State Defendants – establishes the forms for marriage licenses that the county clerks must use. Wis. Stat. § 765.20(1). Further, pursuant to Wis. Stat. § 765.12(1), the actual issuance of a marriage license by a county clerk is merely a ministerial act when certain requirements, none of which turn upon the marriage ban, are satisfied, and when "there is no prohibition against or

10

legal objection to the marriage." If this Court declared the marriage ban unconstitutional, that would remove the "prohibition against" marriage for same-sex couples, in which case Wisconsin law would require that the clerks "shall issue a marriage license" when the remaining requirements are satisfied. Wis. Stat. § 765.12(1).[2]

In short, the State Defendants' request for *Burford* abstention cannot be squared with Seventh Circuit law, because there is no specialized state adjudicatory forum to protect Wisconsin's purported interest in ensuring uniformity in the administration of its marriage policy. And even if there were such a forum, the State Defendants have failed to meet their heavy burden of showing that adjudication by this Court would significantly disrupt the coherence of Wisconsin's policies regarding the issuance of marriage licenses.[3]

---

[2] In addition, "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is res judicata in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940). Other county clerks in Wisconsin would be bound by any judgment here because they are in privity with the State Defendants, including the Governor (who is charged with faithfully executing the laws of Wisconsin), the Attorney General (charged with representing the State in any matter in which the State is interested, Wis. Stat. 165.25, which certainly includes a facial constitutional challenge to a Wisconsin law), and the state registrar of vital statistics (charged with promulgating the marriage forms that the county clerks are bound to use), and they have no independent interest not already adequately represented by the State Defendants. *See, e.g.*, *County of Boyd v. U.S. Ecology, Inc.*, 48 F.3d 359, 361-62 (8th Cir. 1995) (finding that the county's lawsuit was precluded by an earlier lawsuit brought by the state because the interests of the plaintiffs in both cases were nearly identical); *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 494-95 (4th Cir. 1981) (finding that the Attorney General adequately represented the local school board's interests in the previous case, and thus the subsequent suit was res judicata).

[3] The State Defendants' request should also be denied to the extent that it requests that this Court abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* abstention requires that the "state and federal actions" be "actually parallel," and that "exceptional circumstances justify abstention." *Adkins*, 644 F.3d at 498 (quotation marks omitted). State and federal actions are only parallel when there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (quotation marks omitted). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *AAR International, Inc. v. Nimeilas Enterprises S.A.*, 250 F.3d 510, 520 (7th Cir. 2001). As discussed in Part I.A, *supra*, no conceivable decision in *Appling* will

11

**Conclusion**

The doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). *See also Quackenbush*, 517 U.S. at 716 ("federal courts have a strict duty to exercise the jurisdiction that is conferred on them by Congress"). The State Defendants have failed to establish that any such extraordinary exception applies here, and hence the Court should deny their motion.

Dated: March 18, 2014

By: /s Gretchen E. Helfrich
Counsel for Plaintiffs

JOHN A. KNIGHT
American Civil Liberties Union Foundation
Lesbian Gay Bisexual Transgender Project
180 North Michigan Avenue
Suite 2300
Chicago, Illinois 60601
(312) 201-9740
jaknight@aclu.org

JAMES D. ESSEKS
American Civil Liberties Union Foundation
Lesbian Gay Bisexual Transgender Project
125 Broad Street
New York, New York 10004
(212) 549-2623
jesseks@aclu.org

LAURENCE J. DUPUIS
SBN: 1029261
American Civil Liberties Union of
Wisconsin Foundation
207 E. Buffalo Street, Suite 325
Milwaukee, Wisconsin 53202
(414) 272-4032
ldupuis@aclu-wi.org

HANS J. GERMANN
GRETCHEN E. HELFRICH
FRANK DICKERSON
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
(312) 782-0600
hgermann@mayerbrown.com
ghelfrich@mayerbrown.com
fdickerson@mayerbrown.com

---

resolve Plaintiffs' claims. Moreover, the State Defendants have not articulated exceptional circumstances to justify abstention. As such, abstention is inappropriate.