IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

VIRGINIA WOLF and CAROL SCHUMACHER;
KAMI YOUNG and KARINA WILLES;
ROY BADGER and GARTH WANGEMANN;
CHARVONNE KEMP and MARIE CARLSON;
JUDITH TRAMPF and KATHARINA HEYNING;
SALUD GARCIA and PAM KLEISS;
WILLIAM HURTUBISE and LESLIE PALMER; and
JOHANNES WALLMANN and KEITH BORDEN,

      Plaintiffs,

      v.                                       Case No. 14-CV-00064-BBC

SCOTT WALKER; J.B. VAN HOLLEN;
RICHARD G. CHANDLER; OSKAR ANDERSON;
GARY KING; JOHN CHISHOLM;
JOSEPH CZARNEZKI; WENDY CHRISTENSEN;
and SCOTT MCDONELL,

      Defendants.

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO ABSTAIN AND STAY**

ARGUMENT

I.    A TEMPORARY STAY UNDER THE *PULLMAN* ABSTENTION DOCTRINE IS APPROPRIATE.

Plaintiffs' arguments in opposition to State Defendants' pending Motion to Abstain and Stay fail to provide any compelling reason why this Court should not temporarily stay this matter to allow the Wisconsin Supreme Court first to resolve state-court issues that will have a substantial bearing on this Court's analysis of the constitutional issues in the present case.

Plaintiffs' primary contention is that *Pullman* does not apply here because a decision by the Wisconsin Supreme Court in *Appling v. Walker*, Case No. 2011AP1572, will not completely

eliminate the need for a federal constitutional ruling in this case. Plaintiffs' Response in Opposition to the State Defendants' Motion to Abstain and Stay (Dkt. #60 at 4). That argument is beside the point, since State Defendants have not contended that the outcome of *Appling* would make the federal issues in this case go away. To the contrary, State Defendants have emphasized that what they seek is only a temporary stay for the purpose of obtaining clarification from the Wisconsin Supreme Court about the meaning of the "legal status of marriage" that is reserved to opposite-sex couples by Wis. Const. art. XIII, § 13 ("the Marriage Amendment"). It is well-established that *Pullman* abstention is appropriate not only where the resolution of a state-law question will eliminate the need to decide a federal question, but also where it will materially alter the federal court's view of that question. State Defendants' Memorandum in Support of Motion to Abstain and Stay (Dkt. #58 at 3-4 (citing cases)).

Plaintiffs' respond that *Pullman* nonetheless does not apply here because there is no relevant uncertainty of state law for the Wisconsin Supreme Court to resolve. That is incorrect. While there may be no substantial uncertainty that same-sex couples residing in Wisconsin cannot marry under state law (or have a same-sex marriage from another jurisdiction recognized), there is substantial uncertainty about the precise legal meaning of that fact. Wisconsin's Marriage Amendment undoubtedly reserves something called "the legal status . . . of marriage" to opposite-sex couples. Wis. Const. art. XIII, § 13. As shown in State Defendants' opening brief, however, the meaning of "the legal status of marriage" as used in the Marriage Amendment is both currently uncertain and centrally at issue in *Appling* (*see* Dkt. #58 at 5-8).

In the decision currently under review by the Wisconsin Supreme Court, the Wisconsin Court of Appeals characterized the central issue in *Appling* as follows: "for the

domestic partnership law to pass muster here, the 'legal status' created by that law may not be 'substantially similar' to the 'legal status' of marriage." *Appling v. Doyle*, 2013 WI App 3, ¶ 5, 345 Wis. 2d 762, 826 N.W.2d 666 (2012). *Appling* thus requires the Wisconsin Supreme Court to construe the meaning of the "legal status of marriage" under the Marriage Amendment.

The appellants in *Appling* contend that "[t]he term 'legal status' encompasses only the *eligibility* and *formation* requirements of marriages and domestic partnerships, not the rights and obligations that come with these relationships." *Id.*, ¶ 19 (italics in original). The eligibility requirements, in this view, refer to "things such as limitations based on age, ability to consent, and consanguinity[,]" while the formation requirements "refer primarily to the process for obtaining a marriage license." *Id.*, ¶ 26.

The *Appling* respondents, in contrast, argue that "legal status" refers more broadly to "all legal aspects of marriages and domestic partnerships," including not only eligibility and formation requirements, but also termination requirements and the various rights and obligations of those relationships. *Id.*, ¶ 22.

Under the view of the *Appling* appellants therefore, what the Marriage Amendment reserves to opposite-sex couples would be a legal status defined by eligibility limitations and formation procedures, while under the respondents' view, what is reserved to opposite-sex couples would be a much broader range of rights, benefits, and obligations. The Wisconsin Supreme Court's resolution of the dispute between those two views thus is likely to have a significant effect on determining exactly what it is that the Marriage Amendment reserves exclusively for opposite-sex couples.

Plaintiffs argue that this dispute does not matter because, in their view, the Marriage Amendment violates the federal constitution under both a narrow and a broad

construction of the legal status reserved to opposite-sex couples. To that extent, it is true that there will remain a federal issue for this court to resolve after *Appling* is decided. How the present case is subsequently argued to and decided by this Court, however, will be materially affected by the narrowness or breadth of the construction of the "legal status of marriage" in *Appling*.

Under the legal standards applicable to the constitutional claims raised in this case, Plaintiffs are asking this Court to determine whether Wisconsin has a legitimate or important governmental purpose for restricting the legal status of marriage to opposite-sex couples and, if there is such a purpose, whether the restriction is rationally or substantially related to it. In conducting the analysis necessary to make those determinations, it makes a significant difference whether the legal status in question encompasses only the eligibility and formation requirements of marriage or also includes the entire bundle of rights, benefits, and obligations that state law confers on the marital relationship. All that the State Defendants are requesting here is a temporary stay until the Wisconsin Supreme Court resolves that question, so that the subsequent litigation of this case may benefit from that resolution.

Plaintiffs also argue that a temporary stay should not be granted because they are suffering the ongoing constitutional harms alleged in their Amended Complaint and because the requested temporary stay would "indefinitely delay" the kind of expedited resolution of this case that the Court proposed in its Order of March 4, 2014 (*see* Dkt. #60 at 7). This argument also fails.

State Defendants showed in their opening brief that, even in cases involving allegations of an ongoing denial of important civil rights, the U.S. Supreme Court has instructed lower federal courts, when deciding whether to grant a *Pullman* stay, not to look solely at the alleged

injury, but rather to balance the alleged injury against the probable consequences of abstention (*see* Dkt. #58 at 8-9 (citing cases)). State Defendants also showed that the argument in favor of a *Pullman* stay is most compelling in a case like this one in which the pertinent state-law issue is already under review by the state's highest court (*see* Dkt. #58 at 9). Plaintiffs address neither the applicable balancing standard nor the fact that the state-law issue is likely to be authoritatively resolved no later than mid-July, but instead simply re-assert their allegations of harm and provide an inaccurate assertion of "indefinite delay." Accordingly, for the reasons previously given, the Court should conclude that the benefits of the requested stay outweigh the costs of the resulting limited and temporary delay.

Finally, Plaintiffs emphasize the "virtually unflagging obligation" of federal courts to exercise their jurisdiction (Dkt. #60 at 2 and 6 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))). That emphasis, however, is misplaced in the present case. The issue in *Colorado River* was to identify the circumstances permitting the *dismissal* of a federal suit in favor of a pending state proceeding raising the same issue as the federal case. *Colo. River Water Conservation Dist.*, 424 U.S. at 818. Because complete dismissal of a federal suit over which a federal court has jurisdiction is an extreme remedy, the Supreme Court emphasized the exceptional nature of abstention in that context. *Id.*

*Pullman* abstention—particularly in the present case—is quite different. The remedy under *Pullman* is not to dismiss the federal case, but only to temporarily stay it. Therefore, unlike other abstention doctrines that lead to dismissal of the federal case, *Pullman* abstention "does not . . . involve the abdication of federal jurisdiction, but only the postponement of its exercise[.]" *Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 175 (1959). Moreover, even the temporary postponement of the exercise of federal jurisdiction is at

its minimum in a case like this one where the state-law issues warranting abstention are already fully briefed and argued before the state's highest court and a decision is expected in the very near future (*see* Dkt. #58 at 9).  Contrary to plaintiffs' suggestions, therefore, the "virtually unflagging obligation" of federal courts to exercise their jurisdiction would be unimpaired by granting the temporary stay requested here by State Defendants.

> II. THE CONCERN OVER NON-UNIFORM ADMINISTRATION OF STATE MARRIAGE LAWS IS A GENUINE ONE THAT SHOULD BE ADDRESSED BY THE COURT.

In the alternative, State Defendants have asked the Court either to order abstention under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), or to take other appropriate steps to protect the state interest in the uniform and coherent administration of its marriage laws against the risk that a judgment in this case would bind the three county clerks in this case but would not bind the rest of Wisconsin's county clerks.  In response, Plaintiffs argue that *Burford* abstention applies only where the state provides a specialized forum for the adjudication of the state-law issue in question.  Because there is no such specialized forum related to the administration of state marriage laws, *Burford* abstention is not warranted.

State Defendants recognize that *Burford* abstention, unlike *Pullman* abstention, typically involves the more drastic remedy of complete dismissal of the federal action in question and is generally found to be warranted only in cases where, as an alternative to federal adjudication, the state provides a specialized administrative or adjudicatory mechanism for addressing the policy issues in question.  Because Wisconsin does not have such a mechanism for administering the uniform issuance of marriage licenses throughout the state, outright dismissal of this case under *Burford* may be an unduly harsh remedy.  Even if that conclusion is reached, however, State Defendants still have asked, in the alternative that the Court take steps to address the uniformity concern they have raised.

Plaintiffs respond to the uniformity concern by first asserting that, even if a judgment in this case would bind only the three county clerks currently before the Court, it is unduly speculative to be concerned over the possibility that some of the remaining county clerks throughout the state might differ in their responses to that judgment. As discussed in State Defendants' opening brief, however, the court in *McGee v. Cole*, ___ F. Supp. 2d ___, 2014 WL 321122, *7 (S.D. W. Va., Jan. 29, 2014), did not find such a possibility to be unduly speculative, but was sufficiently concerned by it to order the plaintiffs in that case to address the concern (Dkt. #58 at 14).

Moreover, the uniformity concern raised by State Defendants is similar in some respects to the policy underlying the standard for the required joinder of parties under Fed. R. Civ. P. 19(a) ("Rule 19"). That rule provides, in part, that a person must be joined as a party if the person claims an interest relating to the subject of the action and disposing of the action in the person's absence would leave an existing party subject to a substantial risk of incurring multiple or inconsistent legal obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii). Notably, the rule does not require certainty that the multiple or inconsistent obligations will be incurred, but only requires a *substantial risk*. In the present case, similarly, State Defendants contend that there is a substantial risk that some of Wisconsin's county clerks would not follow a non-binding judgment by this Court, thereby subjecting the people of Wisconsin to multiple and inconsistent legal standards in the issuance of marriage licenses. Rule 19 demonstrates that such a risk of inconsistent obligations should be taken seriously and should not be considered speculative, as Plaintiffs assert.

Next, Plaintiffs argue that the asserted interest in uniformity is immaterial because the state can have no interest in the uniform implementation of an unconstitutional state law. With

all due respect, this argument puts the cart before the horse. If this Court were to declare the Marriage Amendment unconstitutional, that judgment either would be binding on all of Wisconsin's county clerks, or it would not. If it would be binding, then all of the clerks would be precluded from seeking to re-litigate the issue of the Marriage Amendment's constitutionality in a later court action. In that circumstance, Plaintiffs would be correct that the state would have no legitimate interest in the continued enforcement—uniform or not—of the invalidated law. Conversely, however, if the judgment would not be binding on all of the clerks, then the unbound clerks would *not* be precluded from seeking to re-litigate the constitutional issue in another case. In that circumstance, there could be a prolonged period of time during which there would be a substantial risk of non-uniform issuance of marriage licenses in the state. Plaintiffs' argument that the state can have no interest in the uniform implementation of an unconstitutional law, however, simply begs the real question of whether a judgment in this case would or would not be binding on all of the state's county clerks.

With regard to the latter question, Plaintiffs make three arguments—all unpersuasive. First, they argue that if this Court declared the Marriage Amendment unconstitutional, all county clerks in the state would then have a ministerial duty under Wis. Stat. § 765.12(1) to issue a marriage license to any same-sex couple that applied for such a license and met all other statutory qualifications for obtaining such a license. This argument, once again, assumes what has not been proved. If this Court's judgment would not legally bind all county clerks—as State Defendants contend—then there would remain a risk that some clerks could continue to rely on the Marriage Amendment to deny a license to a same-sex couple.

Second, Plaintiffs suggest that the uniformity concern is alleviated by the presence in this case of the state registrar of vital statistics, who has statutory authority to establish the form for

marriage licenses that county clerks must use.  This suggestion is unavailing, however, because the registrar's power to design a form does not include the legislative power to impose binding legal standards on county clerks or otherwise to direct their actions in carrying out their own statutory duties.  In the absence of any such power, there is nothing the Court could order the registrar to do or not do that would eliminate the risk of non-uniformity.

Third, Plaintiffs argue in a footnote that, under principles of claim and issue preclusion, all county clerks in the state would be bound by a judgment of this Court because they are all in privity with the State Defendants (Dkt. #60 at 11 n. 2).  That argument is incorrect.  Plaintiffs provide an incomplete quotation from *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940), to suggest that, for claim and issue preclusion purposes, privity *always* exists between officers of the same government (*Id.*).  That is not, however, what the U.S. Supreme Court said in that case.  In the sentence immediately following the one quoted by Plaintiffs, the Court explained that:  "The crucial point is whether or not in the earlier litigation the representative of the [government] had authority to represent [the absentee's] interests in a final adjudication of the issue in controversy."  *Sunshine Anthracite Coal Co.*, 310 U.S. at 403.

In the present case, it is clear that neither the Governor, nor the Attorney General, nor any of the other State Defendants has the authority to represent the interests of Wisconsin's county clerks in this proceeding.  That is why the three defendant clerks in this case are represented before this Court by the corporation counsels of their respective counties and not by the Attorney General.  Because the State Defendants do not have the authority to represent the interests of county clerks in this case, they are not in privity with those clerks under the reasoning of *Sunshine Anthracite Coal Co.*, and Plaintiffs' privity argument fails.

For all of the above reasons, Plaintiffs have failed to allay the uniformity concerns raised by the State Defendants, and the Court, therefore, should take such steps as it deems appropriate to protect the state interest in the coherence of state marriage policy.

CONCLUSION

For the reasons stated above and in State Defendants' Memorandum in Support of Motion to Abstain and Stay, the Court should temporarily stay the present case under the *Pullman* abstention doctrine until the Wisconsin Supreme Court has issued a decision in the pending case of *Appling v. Walker*. In the alternative, the Court should take appropriate steps to protect the uniform and coherent administration of Wisconsin state marriage laws before proceeding with the merits of this case

Dated this 20th day of March, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General

s/Thomas C. Bellavia
THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants,
Scott Walker, J.B. Van Hollen,
Richard G. Chandler, Oskar Anderson,
Gary King, and John Chisholm

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 266-8690 (Bellavia)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*
*bellaviatc@doj.state.wi.us*

bellaviatc\cases\misc cases\wolf v. walker\br\2014 03-20 abstention reply brief.docx