## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

VIRGINIA WOLF and CAROL
SCHUMACHER; KAMI YOUNG and
KARINA WILLES; ROY BADGER and
GARTH WANGEMANN; CHARVONNE
KEMP and MARIE CARLSON; JUDITH
TRAMPF and KATHARINA HEYNING;
SALUD GARCIA and PAM KLEISS;
WILLIAM HURTUBISE and LESLIE
PALMER; and JOHANNES WALLMANN
and KEITH BORDEN,

       Plaintiffs,

     v.                      Case No. 14-C-00064-bbc

SCOTT WALKER; J.B. VAN HOLLEN;
RICHARD G. CHANDLER; OSKAR
ANDERSON; GARY KING; JOHN
CHISHOLM; JOSEPH CZARNEZKI;
WENDY CHRISTENSEN; and
SCOTT MCDONELL,

       Defendants.

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because they seek redress for claims under Wis. Stat. § 765.30(1) (the "Evasion Statute") that do not apply and are moot, their claims lack specificity and are overly broad, and they identify as defendants persons who took no action towards Plaintiffs. Moreover, Plaintiffs claims fail because

neither the Supreme Court nor the Seventh Circuit has held that the fundamental right to marry includes a fundamental right to marry someone of the same sex. Accordingly, Defendants Scott Walker, J.B. Van Hollen, Richard G. Chandler, Oskar Anderson, Gary King, and John Chisholm (collectively, "State Defendants"), by their undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiffs are eight same-sex couples who claim that the limitation of the legal status of marriage under Wisconsin state law to opposite-sex couples violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. (Dkt. #26).

During both the 2003 and 2005 sessions, the Wisconsin State Assembly and Senate adopted a joint resolution to amend the Wisconsin Constitution. Because the joint resolution was passed by two successive Legislatures, the amendment was submitted to the people for ratification. In November 2006, a majority of voters approved the Marriage Amendment.

Plaintiffs challenge the Marriage Amendment as unconstitutional. (Dkt. #26,¶ 1). The Marriage Amendment states:

> Only a marriage between one man and one woman shall be valid
> or recognized as a marriage in this state. A legal status identical or

substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state.

Wis. Const. art. XIII, § 13.

Plaintiffs further challenge as unconstitutional "any and all provisions of Wisconsin's marriage statutes (Wis. Stat. ch. 765) that refer to marriage as a relationship between a 'husband and wife,' if and to the extent that such provisions constitute a statutory ban on marriage for same sex-couples." (Dkt. #26, ¶ 1). Plaintiffs do not identify any particular provisions of Chapter 765 that meet these criteria. (*Id.*). Plaintiffs define the term "marriage ban," used throughout the Amended Complaint, as encompassing both the Marriage Amendment and Chapter 765. (*Id.*).

Plaintiffs also claim a risk of prosecution "harm" under the Evasion Statute. (Dkt. #26, ¶ 7). The Evasion Statute states:

> The following may be fined not more than $10,000 or imprisoned for not more than 9 months or both:
>
> (a) *Penalty for marriage outside the state to circumvent the laws.* Any person residing and intending to continue to reside in this state who goes outside the state and there contracts a marriage prohibited or declared void under the laws of this state.

Wis. Stat. § 765.30(1).

Among others, Plaintiffs sued Richard G. Chandler in his official capacity as Secretary of Revenue of the State of Wisconsin. (Dkt. #26, ¶ 22). Plaintiffs allege that as Secretary, Chandler "has authority to enforce the revenue code of Wisconsin, including its provisions related to the treatment

for revenue purposes of marriages contracted in Wisconsin and in other jurisdictions." (*Id.*). Plaintiffs assert no further allegations solely directed at Secretary Chandler.[1]

Plaintiffs sued Oskar Anderson in his official capacity as State Registrar. (*Id.*, ¶ 23). Plaintiffs allege that as State Registrar, Anderson "has the authority to establish the form of a marriage license in Wisconsin and to accept for registration and assign a date of registration to marriage documents." (*Id.*). Plaintiffs assert no further allegations solely directed at Registrar Anderson.

Plaintiffs sued Gary King and John Chisholm in their official capacity as District Attorneys of Eau Claire County and Milwaukee County, respectively. (*Id.*, ¶¶ 24-25). Plaintiffs allege that King and Chisholm each "has the authority to initiate a prosecution under the marriage evasion statute." (*Id.*). Plaintiffs assert no further allegations solely directed at District Attorney King or District Attorney Chisholm.

---

[1]Other allegations are generally asserted as to all Defendants. (*See, e.g.,* Dkt. #26, ¶¶ 126-51).

## STANDARD OF REVIEW

Rule 12(b)(6) permits a party to file a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In deciding a Rule 12(b)(6) motion, the district court's task is to determine whether the complaint includes "'enough facts to state a claim to relief that is plausible on its face.'" *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The federal rules demand more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

The Supreme Court has identified a two-step approach to analyze a complaint under Rule 12(b)(6). *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). The first step in testing the sufficiency of a complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 678-79. Conclusory allegations are "not entitled to the assumption of truth;" therefore, they are not considered. *Id.* at 680 (citing *Twombly*, 550 U.S. at 555).

After ignoring the conclusory allegations, and assuming the veracity of the remaining well-pled factual allegations, the second step is to determine whether the complaint pleads "'a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556); *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Wilson v. Price*, 624 F.3d 389, 391-92 (7th Cir. 2010).

The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3; *McReynolds*, 694 F.3d at 885 ("the plausibility standard calls for a 'context specific' inquiry that requires the court 'to draw on its judicial experience and common sense'" (quoting *Iqbal*, 556 U.S. at 679)).

"To survive a motion to dismiss, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face[.]'" *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient under Fed. R. Civ. P. 8. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ARGUMENT

State Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on five separate grounds.

*First*, claims related to the Evasion Statute should be dismissed because Plaintiffs' conduct is not subject to penalty under the Evasion Statute and, even if they were, those claims are now moot. If the Evasion Statute claims are dismissed, District Attorneys King and Chisholm should also be dismissed as parties because the only allegations directed at them relate solely to the Evasion Statute. *Second*, the Amended Complaint should be dismissed pursuant to *Iqbal/Twombly* as impermissibly vague for failing to identify the statutes claimed unconstitutional. *Third,* claims against Secretary of Revenue Chandler and State Registrar Anderson should be dismissed for failure to allege facts giving rise to claims against them. *Fourth*, Counts One through Four of the Amended Complaint should be dismissed for failure to state a claim. *Fifth*, Plaintiffs' claims are foreclosed

by the Supreme Court's controlling ruling in *Baker v. Nelson*, 409 U.S. 810 (1972).

## I.   ALL CLAIMS RELATING TO THE EVASION STATUTE SHOULD BE DISMISSED BECAUSE IT DOES NOT APPLY TO SAME-SEX MARRIAGES AND THE CLAIMS ARE MOOT.

Plaintiffs generally allege that Wisconsin law exposes same-sex couples to criminal prosecution under the Evasion Statute if they leave the State to get married.  (Dkt. #26, ¶¶ 7, 9, 24-25).  This is pled as a "harm," not an independent cause of action, and is the only such harm upon which Plaintiffs base their claims against Defendants Chisholm and King.  (*Id.*, ¶¶ 24-25).   These claims should be dismissed because the Evasion Statute does not apply to same-sex marriage, and the claims against Defendants Chisholm and King are moot.

### A.   No threat of prosecution exists under the Evasion Statute.

A pre-enforcement challenge to a statute may be litigated only so long as there is a "credible threat of prosecution" or the plaintiff otherwise faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  Further, "a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will not enforce the

statute." *Commodity Trend Servs., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998).

Plaintiffs' pre-enforcement challenge to the Evasion Statute fails because their conduct does not violate the Evasion Statute and because Defendants Chisholm and King have agreed not to prosecute under it.

### B. The Evasion Statute does not apply to any conduct alleged by Plaintiffs.

Wisconsin Stat. § 765.30(1) provides a penalty for "[a]ny person residing and intending to continue to reside in this state who goes outside the state and there contracts a marriage prohibited or declared void under the laws of this state." The conduct of Plaintiffs Wolf and Schumacher and Young and Willes in contracting their marriages in Minnesota while continuing to reside in Wisconsin is not subject to penalty under Wis. Stat. § 765.30(1) because their marriages were not "prohibited or declared void under the laws of this state" within the meaning of that statutory provision. The Marriage Amendment does not declare such marriages "void" or "prohibited" under the statutes, it merely refuses to recognize them.

A marriage is "void" within the meaning of Wis. Stat. § 765.21 if it was contracted in violation of four specific statutes: Wis. Stat. § 765.02, 765.03, 765.04, or 765.16. These provisions address specific circumstances not

implicated here: marriageable age, consanguinity and divorce, disability, and officiating persons.

Criminal statutes must be narrowly construed. *See State v. Bohacheff,* 114 Wis. 2d 402, 417, 338 N.W.2d 466 (1983). The Marriage Amendment, which simply treats a marriage as unrecognized, is not one of the types of marriage referred to in Wis. Stat. § 765.21. As a result, Wis. Stat. § 765.30(1) does not apply to the conduct described in the Amended Complaint, and the Court should dismiss Defendants Chisholm and King because enforcement of the Evasion Statute is the only alleged basis for liability against them. (*See* Dkt. #26, ¶¶ 7, 39, 46).

### C. Defendants Chisholm and King should also be dismissed as parties because the claims against them are moot.

The Court should also dismiss Defendants Chisholm and King from this litigation because the parties have stipulated to terms that remove any threat of prosecution against Plaintiffs. (*See* Dkt. #55-1).

"Mootness is often described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004) (internal quotation omitted). In analyzing whether a case is

moot, the Court "must consider any changes in the relationship between the parties that have occurred since . . . the date litigation commenced." *Id*.

Here, the only alleged basis of liability against Defendants Chisholm and King is that they are allegedly authorized to prosecute actions under the Evasion Statute. (Dkt. #26, ¶¶ 24-25). Plaintiffs and Defendants Chisholm and King have stipulated, however, to the fact that they agree not to prosecute Plaintiffs Wolf and Schumacher, and Young and Willes, as a result of their having contracted marriages in Minnesota because Wis. Stat. § 765.30(1) does not apply to the conduct described in Plaintiffs' Amended Complaint. (Dkt. #55-1). As a result, the relationship between the parties has changed, and there is no longer any threat of prosecution. Plaintiffs' claims against Defendants Chisholm and King are therefore moot, and Defendants Chisholm and King should be dismissed from this lawsuit.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED AS IMPERMISSIBLY VAGUE FOR FAILING TO IDENTIFY THE STATUTES CLAIMED UNCONSTITUTIONAL.

Plaintiffs implicitly concede that, prior to the enactment of the Marriage Amendment, same-sex marriage was not recognized in Wisconsin. Their claims, however, argue only that the marriage ban in general—and not any particular law other than the Marriage Amendment—violates federal substantive due process or equal protection principles. Even taking all

allegations in the Amended Complaint as true, Plaintiffs thus fail to allege that the host of constitutional and statutory provisions that prevent them from marrying in Wisconsin violates the United States Constitution.

A complaint must contain "'allegations plausibly suggesting (not merely consistent with)'" an entitlement to relief. *McCauley*, 671 F.3d at 616. This circuit has interpreted *Iqbal* to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint: "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616 (internal quotes and citation omitted).

Plaintiffs' pleading fails to present such a story. The term "marriage ban," scattered throughout the Amended Complaint, broadly includes both the Marriage Amendment and all of Chapter 765 to the extent its provisions either refer to a "husband and wife" or if they may be construed as banning same-sex marriage. (Dkt. #26, ¶ 1). Yet Plaintiffs never identify which of the twenty-five sections of Chapter 765 they claim are unconstitutional. The only guidance given to Defendants or this Court is the qualifier that the affected

sections must "constitute a statutory ban on marriage for same-sex couples."[2] The determination of the constitutionality of State laws should not be left to mere guesswork.

Other allegations and the prayer for relief are even less clear. Paragraph 114(a)-(j), for example, alludes to other harms that purportedly flow from "barring same-sex couples from marriage," none of which has anything to do with the marriage amendment or Chapter 765. (*See* Dkt. #26, ¶ 114(a)-(j)).[3] The prayer for relief is similarly vague, requesting the Court permanently enjoin scores of unidentified statutes: "*any other sources of state law* that operate to exclude same-sex couples from marriage or to deny

---

[2]Although scouring Chapter 765 to find references to "husband and wife" is easy, determining what constitutes a ban on same-sex marriage is not similarly evident. The latter requires careful construction of the language of each specific statutory provision, the meaning of its language in the particular context in which it is used, and its relationship to language in related statutory provisions. Analysis of such questions is impossible when Plaintiffs have not identified the particular provisions to be construed or how those provisions allegedly create the purported ban on same-sex marriage.

[3]Plaintiffs' allegations regarding the presumption of parenthood for children born into a same-sex marriage illustrates the far-reaching nature of their claims. (*See* Dkt. #26, ¶¶ 47-48, 114(a) and (b)). Granting such relief could implicate many provisions of state law other than those identified by Plaintiffs, including Wisconsin's Children's Code, Wis. Stat. ch. 48, and portions of the Family Code dealing with such subjects as marital property and actions affecting the family. *See, e.g.,* Wis. Stat. chs. 766 and 767; Wis. Stat. §§ 891.405, 891.41, and 990.01(19m).

recognition of the marriages of same-sex couples validly contracted in another jurisdiction."[4] (*Id.*, ¶ 151(B) (emphasis added)).

An integral purpose of the short and plain statement requirement is to apprise a defendant of the grounds upon which a claim rests. *Twombly,* 550 U.S. at 555. Plaintiffs' allegations are so general that they encompass a wide swath of conduct, much of it unrelated to the Marriage Amendment or Chapter 765. Without clarity as to which laws Plaintiffs are challenging, Defendants are left to their own conjecture in preparing a defense. This is insufficient. *See Ross*, 578 F.3d at 581 (finding that under *Twombly* and *Iqbal*, courts should not accept as adequate sketchy or abstract recitations of causes of action).

Here, State Defendants will likely contend that the Marriage Amendment and other affected laws must be upheld if there is a rational basis for them. Plaintiffs will likely disagree, suggesting that a heightened standard applies. Either way, given the vagueness of Plaintiffs' pleadings, State Defendants are unduly burdened by having to defend all laws potentially invoked by the broad term "marriage ban" instead of a precise set of challenged laws. This unfairly disadvantages State Defendants and is

---

[4]The breadth and scope of the relief requested is also problematic. Based on Plaintiffs' pleadings, it is impossible to discern whether it would be possible for the Court to afford them effective and appropriately tailored relief on the claims they have pled without having to affirmatively rewrite an indefinite number of state statutes—a task beyond judicial cognizance.

inconsistent with the pleading requirements established in *Twombly* and *Iqbal*. Accordingly, State Defendants request the Court dismiss the Amended Complaint as impermissibly vague.

### III. PLAINTIFFS' CLAIMS AGAINST SECRETARY CHANDLER AND REGISTRAR ANDERSON ARE NOT PLAUSIBLE BECAUSE THE AMENDED COMPLAINT ALLEGES NO FACTS GIVING RISE TO CLAIMS AGAINST THEM.

Plaintiffs' claims against Secretary Chandler and Registrar Anderson are not plausible because the Amended Complaint does not allege facts sufficient to establish their personal involvement in Plaintiffs' alleged injuries. As a result, the Court cannot draw a reasonable inference that Secretary Chandler and Registrar Anderson are liable for the alleged harms complained of by Plaintiffs. *See Iqbal*, 556 U.S. at 678; *Wilson*, 624 F.3d at 391-92.

Liability under 42 U.S.C. § 1983 must be based on a defendant's personal involvement in the alleged constitutional violation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994); *Morales v. Cadena*, 825 F.2d 1095, 1101 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf–Lillie*, 699 F.2d at 869.

In the Amended Complaint, Plaintiffs allege Secretary Chandler "has authority to enforce the revenue code of Wisconsin" (Dkt. #26, ¶ 22) and Registrar Anderson "has the authority to establish the form of a marriage license in Wisconsin and to accept for registration and assign a date of registration to marriage documents." (*Id.*, ¶ 23). However, they do not identify any specific action taken or harms threatened by Secretary Chandler or Registrar Anderson that were directed towards any Plaintiff. Instead, Plaintiffs refer to an unnamed singular "Defendant's actions in administering and enforcing [the marriage ban]," (*id.*, ¶ 142) and the Defendants' collective "duties and actions to ensure compliance with the marriage ban." (*Id.*, ¶¶ 131, 137, 144). Conclusory allegations like this are not enough to satisfy Rule 12(b)(6). *See Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555).

The powers and duties of the Department of Revenue are generally set forth in Chapter 73 of the Wisconsin Statutes. *See, e.g.,* Wis. Stat. § 73.03. The Department has the power and authority, among other things, to enforce State tax laws. Wis. Stat. § 73.03(3). Simply identifying this power, however, does not satisfy Plaintiffs' pleading obligations. The allegations that come closest to pleading such a connection between Plaintiffs' harms and Secretary Chandler merely purport to explain the differences between marriage and domestic registry in the State. (*See* Dkt. #26, ¶ 114(d)-(f)).

Significantly, the Amended Complaint does not allege any harm has been caused to any Plaintiff by Secretary Chandler or the Department of Revenue. Without more, Plaintiffs' claims must fail. *See Wolf–Lillie*, 699 F.2d at 869.

The powers and duties of the State Registrar with respect to marriage documents are set forth in Chapter 69 of the Wisconsin Statutes. *See, e.g.,* Wis. Stat. § 69.03. Under the statutes, the Registrar is empowered to accept, date, index, and preserve original marriage documents. Wis. Stat. § 69.03(5). The original marriage documents (*i.e.*, marriage license and marriage license worksheet containing information about the applicants) are issued by the clerk of the county in which the marriage is to take place, not by the State Registrar. Wis. Stat. §§ 765.12 and 765.13. After the issuance of the license, the county clerk must transmit the marriage license worksheet to the Registrar. Wis. Stat. § 765.13. Although Wis. Stat. § 765.20(1) authorizes the Registrar to prescribes forms, without pleading any specific action taken or harm threatened by Registrar Anderson, the claims directed towards him must fail.

Accordingly, State Defendants request the Court dismiss the claims asserted against Secretary Chandler and Registrar Anderson pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. ALL COUNTS OF THE AMENDED COMPLAINT FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

All four counts of the Amended Complaint fail to state claims upon which relief can be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Counts One and Two must be dismissed because no Supreme Court or Seventh Circuit authority holds that the due process clause protects a fundamental right to marry that includes a fundamental right to marry someone of the same sex.

Counts One and Two must be dismissed for failure to state a claim upon which relief can be granted because the fundamental right to marry has not been extended to include a fundamental right to marry someone of the same sex.

Count One is entitled "Violation of Due Process – Freedom to Marry." (Dkt. #26 at 38). In support of Count One, Plaintiffs allege that there is a "fundamental right to marry the person of one's choice" protected by the Due Process Clause. (*Id.*, ¶ 128). The fundamental right to marriage is allegedly also based upon "related constitutional rights to liberty, dignity, autonomy, family integrity, and association." (*Id.*). Plaintiffs further allege that the marriage ban "is not narrowly tailored nor is it the least restrictive

alternative to further a compelling or important government interest." (*Id.*, ¶ 130.)

Count Two is entitled "Violation of Due Process – Freedom to Remain Married." (Dkt. #26 at 39). In support of Count Two, Plaintiffs allege that "[t]he Due Process Clause protects the fundamental right to remain married and prevents the state from inappropriately interfering with one's existing marital relationship." (*Id.*, ¶ 134).

Counts One and Two fail to state claims upon which relief can be granted because no Supreme Court or Seventh Circuit authority holds that that the Due Process Clause extends the fundamental right to marry to include a fundamental right to marry someone of the same sex. Moreover, the Court is without authority to extend the fundamental right to traditional marriage to include same-sex couples.

Fundamental rights are those that are "deeply rooted in this Nation's history and tradition" and "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [the asserted right] were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations and internal quotation marks omitted). Courts must "exercise the utmost care whenever [they] are asked to break new ground in this field." *Id.* at 720, 721.

Precedent has not extended the fundamental right to marry to include a right to marry someone of the same sex; it is not a "fundamental right" that is "deeply rooted in this Nation's history and tradition." *Id.* The Supreme Court recently stated that "the limitation of lawful marriage to heterosexual couples" has "for centuries been deemed both necessary and *fundamental*." *United States v. Windsor*, 133 S. Ct. 2675, 2689 (2013) (emphasis added); *see also id.* at 2715 ("It is beyond dispute that the right to same-sex marriage is not deeply rooted in this Nation's history and tradition.") (Alito, J., dissenting).

In *Windsor*, the Supreme Court held that the Due Process Clause of the Fifth Amendment was violated by the portion of the federal Defense of Marriage Act ("DOMA") that defined marriage, for all federal-law purposes, as a legal union between one man and one woman. *Windsor* invalidated Section 3 of DOMA because it was an "unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage," and concluded that the challenged section had "no legitimate purpose." *Id.* at 2693, 2695-96. The *Windsor* majority did not apply heightened scrutiny (*i.e.*, did not look for an *important* governmental purpose or a *substantial* relation to such a purpose).

Several federal district courts outside the Seventh Circuit have recently addressed the right to same-sex marriage post-*Windsor*, resulting in a split

among the districts regarding whether same-sex marriage is a fundamental right. *Compare Bourke v. Beshear*, No. 3:13-CV-750-H, 2014 WL 556729, at *5 (W.D. Ky. Feb. 12, 2014) ("neither the Supreme Court nor the Sixth Circuit has stated that the fundamental right to marry includes a fundamental right to marry someone of the same sex"), *and Bishop v. United States ex rel. Holder*, No. 04-CV-848-TCK-TLW, 2014 WL 116013, at *24, n.33 (N.D. Okla. Jan. 14, 2014) (declining to address whether plaintiffs had a "fundamental 'right to marry a person of their choice,'" including someone of the same sex), *with De Leon v. Perry*, No. SA-13-CA-00982-OLG, 2014 WL 715741, at *20 (W.D. Tex. Feb. 26, 2014) (extending the fundamental right to marry to include the right to marry someone of the same sex).

No Supreme Court or Seventh Circuit authority holds that the fundamental right to marriage must be extended to include the right to marry a person of the same sex under the Due Process Clause of the Constitution. State Defendants submit that the Amended Complaint fails to state a sufficient claim for the establishment of a new right that goes beyond all existing legal precedent. State Defendants, therefore, request the Court dismiss Counts One and Two for failing to state claims upon which relief can be granted.

### B. Count Two also must be dismissed because Wisconsin law does not nullify Plaintiffs' out-of-state marriages.

Count Two is entitled "Violation of Due Process – Freedom to Remain Married." (Dkt. #26 at 39). In support of Count Two, Plaintiffs allege that "[t]he Due Process Clause protects the fundamental right to remain married and prevents the state from inappropriately interfering with one's existing marital relationship." (*Id.*, ¶ 134). Plaintiffs further allege that "Wisconsin's marriage ban operates to nullify the existing marriages of same-sex couples who move to Wisconsin from other states or countries." (*Id.*, ¶ 135).

Count Two fails to state a claim upon which relief can be granted because Wisconsin law does not, on its face, nullify existing same-sex marital relationships or otherwise formally invalidate existing marriages validly contracted in other jurisdictions.

First, Wis. Stat. § 765.21 determines which marriages are void under Wisconsin law. Void marriages are those "contracted in violation ss. 765.02, 765.03, 765.04 and 765.16 . . . except as provided in ss. 765.22 and 765.23." Wis. Stat. § 765.21. Same-sex marriage is not included.

Second, the Marriage Amendment does not, on its face, void existing marriages lawfully contracted in other jurisdictions. Although it refuses to *recognize* as valid in Wisconsin same-sex marriages from other jurisdictions, the Marriage Amendment does not serve to invalidate out-of-state marriages

or otherwise disrupt the regulation of domestic relations in other sovereign states as Section 3 of DOMA was found to have done in *Windsor*.

In *Windsor*, the Supreme Court acknowledged the historic power of the states, rather than the federal government, to define and regulate marriage and found that it was in the exercise of that historic power that some states, in recent years, have enacted state laws allowing and recognizing same-sex marriages. *Windsor*, 133 S. Ct. at 2689-92. Against that backdrop, the Court discussed "DOMA's unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage." *Id.* at 2693. The Court found problematic the effect of DOMA—"imposing restrictions and difficulties"—on state defined marriages, a power that was historically reserved to the states. DOMA, a federal law, effectively deprived the *Windsor* plaintiffs of the benefits associated with their marriage granted under New York law.

The Marriage Amendment is unlike Section 3 of DOMA because it does not deprive any Plaintiffs of the benefits and responsibilities that come with the valid marriages for which they contracted out-of-state. Plaintiffs Wallmann and Borden, married in California, currently possess the same benefits and responsibilities under California law that they possessed on the day they were married; the Marriage Amendment has no effect on their California marriage. Moreover, the State of California, by virtue of

conferring marriage on Plaintiffs Wallmann and Borden, did not grant any benefits or responsibilities under Wisconsin law, nor could it.

Third, Plaintiffs' arguments are contrary to Section 2 of DOMA. *See* 28 U.S.C. § 1738C. The Full Faith and Credit Clause of the United States Constitution empowers Congress to "prescribe . . . the Effect" of a State's acts and records in another State. U.S. Const. art. IV, § 1. Pursuant to that authority, DOMA provides that "[n]o State . . . shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State . . . or a right or claim arising from such relationship." 28 U.S.C. § 1738C. Section 2 of DOMA was not invalidated in *Windsor* and has not been challenged in this action. It continues to provide that Wisconsin is not required to recognize or give effect to any out-of-state same-sex marriage.[5]

Accordingly, Plaintiffs have failed to state a substantive due process claim based upon a violation of their right to remain married because Wisconsin law does not void existing same-sex marriages contracted in other jurisdictions and the Marriage Amendment is authorized by federal law.

---

[5]Several district courts beyond the Seventh Circuit have found that Section 2 of DOMA does not foreclose similar claims. *See, e.g., DeLeon*, 2014 WL 715741, at *22; *Bishop*, 2014 WL 116013, at *7-8.

Count Two, therefore, fails as a matter of law and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**C. Count Three must be dismissed because the Marriage Amendment does not create classifications based on sexual orientation and even if it did, homosexuality is not a suspect class.**

Count Three must be dismissed for failure to state a claim upon which relief can be granted. On its face, the Marriage Amendment does not create a classification based upon sexual orientation.

Count Three is entitled "Violation of Equal Protection Based on Sexual Orientation." (Dkt. #26 at 39). In support of Count Three, Plaintiffs allege:

> Wisconsin's marriage ban does not permit same-sex couples to marry nor does it permit the recognition of the marriages of same-sex couples lawfully entered into outside of Wisconsin. It therefore discriminates facially and as-applied to Plaintiffs and other lesbian and gay couples on the basis of sexual orientation.

(*Id.*, ¶ 141).

Plaintiffs further allege that "[d]iscrimination on the basis of sexual orientation is suspect and demands a heightened level of scrutiny under the United States Constitution[.]" (*Id.*, ¶ 142).

The Marriage Amendment does not, by its plain language, create a classification based upon sexual orientation. It instead treats heterosexual and homosexual people exactly the same. Neither heterosexuals nor homosexuals are permitted to marry someone of the same sex in Wisconsin;

such a marriage is neither "valid" nor "recognized" as a marriage in Wisconsin.  Wis. Const. art. XIII, § 13.

Even if the Marriage Amendment did discriminate based on sexual orientation—and the State Defendants contend it does not—the Supreme Court has never held that homosexuality constitutes a suspect class and the Seventh Circuit has held that, unlike persons of different races and genders, "homosexuals are not entitled to any heightened protection under the Constitution."  *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 953-54 (7th Cir. 2002); *see also id.* at 957 ("Discrimination against homosexuals by public entities violates the equal protection clause only if it lacks a rational basis[.]") (Posner, J., concurring).

Count Three, therefore, fails as a matter of law and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Count Four must be dismissed because the Marriage Amendment does not create a classification based on gender.

Count Four must be dismissed for failure to state a claim upon which relief can be granted.  On its face, the Marriage Amendment does not create a classification based upon gender.

Count Four is entitled "Violation of Equal Protection Based on Gender."

(Dkt. #26 at 41). In support of Count Four, Plaintiffs allege:

> The Wisconsin marriage ban discriminates based on gender because it permits a man and woman to marry, but does not allow a man to marry a man, or a woman to marry a woman, and because it permits different-sex marriages lawfully entered into outside of Wisconsin to be recognized but does not allow the marriages of same-sex couples lawfully entered into outside of Wisconsin to be recognized.

(*Id.*, ¶ 147).

The Marriage Amendment does not, on its face, create a classification based upon gender. Similarly, no other challenged provision of Wisconsin law, including Wis. Stat. § 765.30(1)(a), discriminates facially on the basis of gender.

Neither men nor women are permitted to marry someone of the same sex in Wisconsin; such a marriage is neither "valid" nor "recognized" as a marriage in Wisconsin. Wis. Const. art. XIII, § 13.

The Marriage Amendment does not draw any distinctions between same-sex male couples and same-sex female couples, does not place any disproportionate burdens on men and women, and does not draw upon stereotypes applicable only to male or female couples. Instead, the Marriage Amendment treats men and women exactly the same and has nothing to do with gender discrimination. *See, e.g., Sevcik v. Sandoval,* 911 F. Supp. 2d 996, 1005 (D. Nev. 2012) (holding that Nevada's prohibition

of same-sex marriage was not "directed toward persons of any particular gender" and did not "affect people of any particular gender disproportionately such that a gender-based animus [could] reasonably be perceived"); *Jackson v. Abercrombie,* 884 F. Supp. 2d 1065, 1089 (D. Haw. 2012) (collecting cases) ("The Court thus agrees with the vast majority of courts considering the issue that an opposite-sex definition of marriage does not constitute gender discrimination").[6]

Plaintiffs' Count Four fails as a matter of law because the Marriage Amendment does not, on its face, discriminate on the basis of gender. Accordingly, it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## V. PLAINTIFFS' CLAIMS ARE FORECLOSED BY THE SUPREME COURT'S CONTROLLING RULING IN *BAKER v. NELSON.*

Plaintiffs' claims are foreclosed by the Supreme Court's controlling ruling in *Baker*, 409 U.S. 810. In *Baker*, the Supreme Court unanimously dismissed, "for want of a substantial federal question," an appeal from the Minnesota Supreme Court presenting the same questions at issue here: whether a State's refusal to sanction same-sex marriage violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id.*

---

[6]There is a split among the districts on this issue. *See Bishop*, 2014 WL 116013 at *24 (collecting cases).

The *Baker* Court's dismissal was a decision on the merits that is binding on lower courts on the issues presented and necessarily decided. *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam). "[U]nless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise." *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) (internal citations omitted).

Because Plaintiffs' claims here are the same as those rejected on the merits by the Supreme Court in *Baker*, they are foreclosed by that decision. *See Sevcik*, 911 F. Supp. 2d at 1002 (*Baker* is controlling and therefore district courts are "prevented" from concluding that "a state's refusal to recognize same-sex marriage offends the Equal Protection Clause"); *Jackson,* 884 F. Supp. 2d at 1087 (holding that the Fourteenth Amendment challenge to Hawaii law limiting marriage to opposite-sex couples presented precise issues that had been presented in *Baker*). *See also Massachusetts v. Dept' of Health & Human Servs.*, 682 F.3d 1, 8 (1st Dist. 2012) ("*Baker* is precedent binding on us unless repudiated by subsequent Supreme Court precedent" and "limit[s] the arguments to ones that do not presume or rest on a

constitutional right to same-sex marriage"); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 870-71 (8th Cir. 2006) (finding "good reason" for the judicial restraint as applied by the Supreme Court in *Baker*).[7]

## CONCLUSION

For the reasons stated above and in their Motion to Dismiss, the State Defendants respectfully ask the Court to:

(1)  dismiss all claims asserted under the Evasion Statute pursuant to Rule 12(b)(6);

(2)  dismiss all claims asserted against Defendants Chisholm and King pursuant to Rule 12(b)(6) or as moot;

(3)  dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) for failing to identify which Wisconsin Statutes are claimed unconstitutional;

(4)  dismiss all claims asserted against Secretary of Revenue Richard G. Chandler and State Registrar Oskar Anderson pursuant to Rule 12(b)(6) for failure to plead allegations against them sufficient to state plausible claims;

(5)  dismiss Counts One through Four of the Amended Complaint for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6);

---

[7]Several district courts beyond the Seventh Circuit have held that *Baker* is no longer controlling.  *See, e.g., DeLeon*, 2014 WL 715741, at *8; *Bostic v. Rainey*, No. 2:13cv395, 2014 WL 561978, at *10 (E.D. Va. Feb. 13, 2014); *Kitchen*, 2013 WL 6697874, at *7-8.

(6)     dismiss the Amended Complaint because Plaintiffs' claims are foreclosed by the Supreme Court's controlling ruling in *Baker*, 409 U.S. 810; and

(7)  for all other and further relief that justice requires.

Dated this 20th day of March, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General

s/ Timothy C. Samuelson
TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants,
Scott Walker, J.B. Van Hollen,
Richard G. Chandler, Oskar Anderson,
Gary King, and John Chisholm

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 266-8690 (Bellavia)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*
*bellaviatc@doj.state.wi.us*