IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VIRGINIA WOLF and CAROL SCHUMACHER,
KAMI YOUNG and KARINA WILLES,
ROY BADGER and GARTH WANGEMANN,
CHARVONNE KEMP and MARIE CARLSON,
JUDITH TRAMPF and KATHARINA HEYNING,
SALUD GARCIA and PAM KLEISS,
WILLIAM HURTUBISE and LESLIE PALMER,
JOHANNES WALLMANN and KEITH BORDEN,

                                                  OPINION and ORDER

            Plaintiffs,

                                                14-cv-64-bbc

      v.

SCOTT WALKER, in his official capacity as
Governor of Wisconsin,
J.B. VAN HOLLEN, in his official capacity as
Attorney General of Wisconsin,
RICHARD G. CHANDLER, in his official capacity as
Secretary of Revenue of Wisconsin,
OSKAR ANDERSON, in his official capacity as
State Registrar of Wisconsin,
GARY KING, in his official capacity as
Eau Claire County District Attorney,
JOHN CHISHOLM, in his official capacity as
Milwaukee County District Attorney,
JOSEPH CZARNEZKI, in his official capacity as
Milwaukee County Clerk,
WENDY CHRISTENSEN in her official capacity as
Racine County Clerk and
SCOTT MCDONELL, in his official capacity as
Dane County Clerk,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1

Plaintiffs in this case are challenging the constitutionality of Wisconsin restrictions on marriage between same-sex couples. After plaintiffs withdrew their motion for a preliminary injunction in favor of an expedited schedule, dkt. #55, Magistrate Judge Stephen Crocker set deadlines for filing dispositive motions, which means that briefing will be finished by the end of May 2014. Dkt. #65.

Now defendants Scott Walker, J.B. Van Hollen, Richard G. Chandler, Oskar Anderson, Gary King and John Chisholm (referring to themselves as "the state defendants") have filed "a motion to abstain and stay" on two grounds. Dkt. #57. First, the state defendants argue that it is appropriate to stay the case until the Wisconsin Supreme Court decides Appling v. Walker, No. 2011AP1572. Second, the state defendants argue that abstention is appropriate because plaintiffs' requested relief "would disrupt the state's important interest in the uniform and coherent administration of state marriage laws." Dfts.' Br., dkt. #58, at 2.

Because the state defendants have not shown that abstention is appropriate for either reason, I am denying their motion. Abstaining or staying the case would serve no purpose but to delay the case.

OPINION

As the Supreme Court has noted on several occasions, "a federal court's obligation to hear and decide a case is virtually unflagging." Sprint Commcations, Inc. v. Jacobs, 134 S. Ct. 584, 590-91 (2013) (internal quotations omitted). Abstention "is the exception, not

2

the rule, and can be justified only in exceptional circumstances." Adkins v. VIM Recycling, Inc., 644 F.3d 483, 496-97 (7th Cir. 2011) (internal quotations omitted).

The state defendants rely on two separate abstention doctrines. First, under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), a court may stay a case if "there is a substantial uncertainty as to the meaning of the state law" and "there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling." Wisconsin Right to Life State Political Action Committee v. Barland, 664 F.3d 139, 150 (7th Cir. 2011) (internal quotations omitted). "The main purpose of the Pullman doctrine is to avoid, if possible, declaring a state statute unconstitutional, by giving the state courts a chance to interpret it narrowly." Mazanec v. N. Judson-San Pierre School Corp., 763 F.2d 845, 847 (7th Cir. 1985). For example, in Pullman, 312 U.S. at 498, the plaintiffs challenged a railroad regulation on two grounds: it was racially discriminatory in violation of the equal protection clause and the railroad commission did not have the authority under state law to issue the regulation. Because the resolution of the state law issue was "far from clear," id. at 499, the Supreme Court concluded that the district court should have stayed the case pending a decision by a state court in order to avoid "the friction of a premature constitutional adjudication." Id. at 500.

Second, under Burford v. Sun Oil Co., 319 U.S. 315 (1943), a federal court may abstain from hearing a case "when it is faced with difficult questions of state law that implicate significant state policies" or "when concurrent federal jurisdiction would be disruptive of state efforts to establish a coherent policy with respect to a matter of

substantial public concern." Adkins, 644 F.3d at 504 (internal quotations omitted). However, a disruption to state policy may be a basis for abstaining only when the state offers an alternative forum in a court "with specialized expertise" to review the plaintiffs' claims. Id.

With respect to Pullman abstention, the state defendants do not suggest that there is any uncertainty regarding whether the Wisconsin Constitution prohibits same-sex couples such as plaintiffs from marrying in Wisconsin. That is obvious from the language of the amendment. Wis. Const. § art. XIII, § 13 ("Only a marriage between one man and one woman shall be valid or recognized as a marriage in this state. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state."). Further, defendants acknowledge that Appling v. Walker will not "obviate the need for a federal constitutional ruling" in this case. Barland, 664 F.3d at 150. As made clear by the Wisconsin Court of Appeals, Appling "is not about whether the Wisconsin or United States Constitutions require, on equal protection or other grounds, that same-sex couples have the right to a legally recognized relationship that is identical or substantially similar to marriage." Appling v. Doyle, 2013 WI App 3, ¶ 5, 345 Wis. 2d 762, 766, 826 N.W.2d 666, 668. Rather, the question in Appling is whether Wisconsin's 2009 domestic partnership statute violates the Wisconsin Constitution on the ground that it creates a legal status that is substantially similar to marriage. Thus, regardless whether the state supreme court upholds the domestic partnership law or strikes it down, this court will still have to decide whether Wisconsin's ban on same-sex marriage violates the United States

Constitution.

The state defendants cite various cases for the proposition that Pullman abstention is appropriate even when the state court decision may not eliminate the federal constitutional question, saying it is enough if resolving the state law issue first will "materially alter" the federal question. Dfts.' Br., dkt. #58, at 3-4 (citing Bellotti v. Baird, 428 U.S. 132, 146-47 (1976); Harris County Commissioners Court v. Moore, 420 U.S. 77, 84 (1975); Kusper v. Pontikes, 414 U.S. 51, 54, 94 (1973); American Booksellers Association, Inc. v. Hudnut, 771 F.2d 323, 327 (7th Cir. 1985); E & E Hauling, Inc. v. Forest Preserve District of DuPage County, Illinois, 821 F.2d 433, 436 (7th Cir. 1987)). The problem with the state defendants' argument is that they never explain with any specificity how the decision in Appling is likely to change the scope of the issues in this case. Although they state repeatedly throughout their opening brief that Appling is important to this case, all of their arguments are conclusory:

- "Because the Wisconsin Supreme Court's interpretation of the state-law issues in Appling will substantially affect this Court's analysis of the federal constitutional issues in this case, Pullman abstention is warranted here," Dfts.' Br., dkt. #58, at 2;

- "Any evaluation of plaintiffs' claims necessarily turns on the meaning of the Marriage Amendment and, in particular, on: (1) the scope and severity of any legal disabilities it may impose on same sex couples; (2) the particular meaning of the phrase 'legal status . . . of marriage;' and (3) the purpose and intent of the legislators who framed and legislatively passed the Marriage Amendment and of the voters who ratified it," id. at 5;

- "[T]he Wisconsin Supreme Court's interpretation of the state-law issues in Appling will substantially affect this Court's analysis of those federal issues," id. at 5 n.2;

5

- "Any subsequent briefing and review of plaintiffs' federal constitutional claims in this Court then will be able to benefit from the views of the Wisconsin Supreme Court on these important state-law issues," id. at 6;

- "[T]he Wisconsin Supreme Court will soon issue a decision in Appling which is expected to address the intent and purposes behind the passage of the Marriage Amendment, the contours of the restrictions on the legal status of marriage under Wisconsin state law, and the scope and severity of any claimed legal disabilities that Wisconsin's marriage laws may impose on same-sex couples. Under the Pullman doctrine, therefore, it is appropriate for this Court to abstain from addressing the federal constitutional issues raised by Plaintiffs in this case until the Wisconsin Supreme Court has decided Appling," id. at 8.

Even if I accept the state defendants' view of the issues likely to be decided in Appling, missing from their argument is any discussion of how those issues will have any bearing on the question whether Wis. Const. art. XIII. § 13 violates the United States Constitution. Although the state defendants list what they view as important issues in this case, they do not tie those issues to any particular argument they intend to make and they do not point to any discussion in the Wisconsin Court of Appeals' decision in Appling suggesting that the Wisconsin Supreme Court's decision is likely to provide useful guidance.

In their reply brief, the state defendants focus for the first time on the question in Appling whether "the term 'legal status' [in Wis. Const. art XIII, § 13] encompasses only the eligibility and formation requirements of marriages and domestic partnerships" rather than "the rights and obligations that come with these relationships." Appling, 2013 WI App 3, at ¶ 19. They argue that the resolution of that issue will "mak[e] a significant difference" in this case, Dfts.' Reply Br., dkt. #64, at 4, but, again, they never explain why. It is telling

6

that the state defendants did not cite the Wisconsin Court of Appeals' decision in Appling even once in the motion to dismiss they filed on March 20, 2014. Dkt. #67. One would think that, if the issues in Appling were as important to this case as the state defendants say, they would rely on the court of appeals' decision to support their arguments. My own review of that decision reveals nothing that would help resolve the issues raised in this case.

As plaintiffs point out, if the Wisconsin Supreme Court upholds the domestic partnership law, nothing changes. If the court invalidates the law, the only effect is to make the deprivation imposed on plaintiffs by Wis. Const. art XIII, § 13 *more* severe. Thus, it is difficult to envision any scenario in which the state defendants could rely on the supreme court's decision to strengthen their position. In any event, the state defendants have not met their burden to show that exceptional circumstances exist that would justify a stay under Pullman.

With respect to Burford abstention, the state defendants argued initially that abstention was appropriate "to protect the State of Wisconsin's important interest in the uniform and coherent administration of its marriage laws" because plaintiffs named only three county clerks in their complaint. Dfts.' Br., dkt. #58, at 12. In particular, the state defendants said, "Because the county clerks in Wisconsin issue all marriage licenses, see Wis. Stat. § 765.12(1), a judgment in plaintiffs' favor in this case could create a situation in which the three defendant county clerks would be required to issue marriage licenses to same-sex couples, while other county clerks would not be subject to that requirement and could continue to issue marriage licenses only to opposite-sex couples." Id. at 13. In

addition, the state defendants argued that plaintiffs had failed to show that "any of the State Defendants has any legal power to direct the actions of Wisconsin's county clerks with regard to the issuance of marriage licenses, nor are the State Defendants independently aware of any such power." Id. at 14.

In their reply brief, the state defendants acknowledge that they cannot satisfy the requirements of Burford abstention because Wisconsin does not have a "specialized forum related to the administration of state marriage laws." Dfts.' Reply Br., dkt. #64, at 6. Instead, the state defendants ask the court to "take steps to address the uniformity concern they have raised." Id.

Both plaintiffs and defendants Joseph Czarnezki, Wendy Christensen and Scott McDonell (the three county clerk defendants) say that the concern is speculative. They argue that other county clerks likely would comply with any orders in this case, either through defendant Oskar Anderson (the state registrar of vital statistics, who establishes the form for marriage licenses that clerks must use, Wis. Stat. § 765.20(1)) or through the doctrine of claim preclusion (because the other clerks are in privity with the state defendants).

I need not resolve the debate in this order because the state defendants' argument has other problems. First, although defendants acknowledge that abstention is not appropriate, they do not say what they want the court to do in the alternative. They raise an argument in their reply brief about Fed. R. Civ. P. 19(a)(1)(B)(ii), which requires joinder of additional parties if the absence of those parties may "leave an existing party subject to a substantial

risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  This suggests that the state defendants are asking the court to force plaintiffs to join as a defendant *every* county clerk in the state of Wisconsin.  However, because plaintiffs are not seeking marriage licenses from each county clerk, it is questionable whether they would have standing to sue other clerks.  In any event, the state defendants do not suggest that a judgment in plaintiffs' favor would subject any existing party to inconsistent obligations.

Second, the state defendants are seeking to place an extraordinary burden on plaintiffs without any authority for doing so.  In essence, defendants are asking the court to require plaintiffs to forfeit their case unless they join other same-sex couples who wish to marry in every Wisconsin county or replead their case as a class action.  Plaintiffs have the right under 42 U.S.C. § 1983 to bring a lawsuit to vindicate their own constitutional rights. I am aware of no authority that would impose as a prerequisite to obtaining relief a guarantee that every other Wisconsin citizen obtain the same outcome.  The only case the state defendants cite in support of their request is McGee v. Cole, CIV. 3:13-24068, 2014 WL 321122 (S.D.W. Va. Jan. 29, 2014), but that court relied on Burford abstention, which defendants admit does not apply to the circumstances of this case.  Thus, even if I assume that state defendants are correct that the judgment in this case would not bind nonparty county clerks, I see no legal grounds for granting the state defendants' request.

9

ORDER

IT IS ORDERED that the motion to stay filed by defendants Scott Walker, J.B. Van Hollen, Richard G. Chandler, Oskar Anderson, Gary King and John Chisholm, dkt. #57, is DENIED.

Entered this 24th day of March, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge