IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VIRGINIA WOLF and CAROL
SCHUMACHER, KAMI YOUNG and
KARINA WILLES, ROY BADGER and
GARTH WANGEMANN, CHARVONNE
KEMP and MARIE CARLSON, JUDITH
TRAMPF and KATHARINA HEYNING,
SALUD GARCIA and PAM KLEISS,
WILLIAM HURTUBISE and LESLIE
PALMER, and JOHANNES
WALLMANN and KEITH BORDEN,

       Plaintiffs,

     v.

SCOTT WALKER, J.B. VAN HOLLEN,
RICHARD G. CHANDLER, OSKAR
ANDERSON, GARY KING, JOHN
CHISHOLM, JOSEPH CZARNEZKI,
WENDY CHRISTENSEN, and
SCOTT MCDONELL,

       Defendants.

Case No. 14-C-00064-SLC

---

**REPLY IN SUPPORT OF
STATE DEFENDANTS' MOTION TO DISMISS**

---

Plaintiffs and State Defendants agree that Defendants Gary King and John Chisholm should be dismissed from this litigation as soon as practicable.  The Court should also declare that Wis. Stat. § 765.30(1) does

not apply to same-sex marriage.  Plaintiffs neither objected nor responded to this argument.

The Court should also dismiss the Amended Complaint for four other reasons.  *First*, Plaintiffs failed to identify the statutes claimed unconstitutional and therefore did not comply with the pleading requirements of *Iqbal* and *Twombly*.  *Second*, claims against Secretary of Revenue Chandler and State Registrar Anderson fail because Plaintiffs did not plead that either has any authority to enforce the statutes Plaintiffs say are unconstitutional.  *Third*, Counts One through Four should be dismissed for failure to state a claim.  *Fourth*, Plaintiffs' claims are foreclosed by *Baker v. Nelson*, 409 U.S. 810 (1972).

## ARGUMENT

### I.   The Parties Agree That Claims Against Defendants Chisholm And King Should Be Dismissed.

Plaintiffs' claims under Wis. Stat. § 765.30(1) should be dismissed for two reasons: (1) any claims based upon Wis. Stat. § 765.30(1) are moot, and (2) Wis. Stat. § 765.30(1) does not apply to same-sex marriage.

First, "Plaintiffs agree that Defendants King and Chisholm . . . can be dismissed as defendants."  (*See* Dkt. #95 at 2-3).  The Court should dismiss Defendants King and Chisholm pursuant to the parties' agreement.

Second, Plaintiffs did not respond to argument that Wis. Stat. § 765.30(1) does not apply to same-sex marriage and have therefore waived it. *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiffs] have done here—results in waiver"). The Court should therefore declare that Wis. Stat. § 765.30(1) does not apply to same-sex marriage for all of the reasons discussed in the motion to dismiss.

## II. The Amended Complaint Should Be Dismissed As Impermissibly Vague.

The Amended Complaint fails to identify the particular Wisconsin statutes claimed unconstitutional. Although the Amended Complaint unquestionably attacks the constitutionality of the Marriage Amendment, it does not allege that any other specific statutes are unconstitutional.

The term "marriage ban" used in the Amended Complaint is broadly defined and indefinite, and therefore insufficient to withstand scrutiny under *Twombly* and *Iqbal*. Plaintiffs' response makes no effort to clarify. (Dkt. #95 at 3-7).

Instead, Plaintiffs simply claim they provided "fair notice of their claims," because they have "clearly identified" the "provisions of Wisconsin's marriage statutes" operating as a ban on same-sex marriages. (*Id.* at 4). Plaintiffs, however, have not clearly identified any such statutes and have not complied

with *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009) (a plaintiff must plead enough allegations of fact to make a claim for relief plausible on its face); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) (same).

The issue for the Court is whether paragraph 1 of the Amended Complaint sufficiently identifies the laws challenged as unconstitutional. Paragraph 1 of the Amended Complaint states in pertinent part:

> [Plaintiffs] bring this action pursuant to 42 U.S.C. § 1983 to challenge the validity under the United States Constitution of Article XIII, § 13 of the Constitution of Wisconsin. That provision bars marriage between two people of the same sex and further bars the recognition of any legal status substantially similar to marriage for same-sex couples. Plaintiffs further challenge, on the same basis, any and all provisions of Wisconsin's marriage statutes (Wis. Stat. ch. 765) that refer to marriage as a relationship between a "husband and wife," if and to the extent that such provisions constitute a statutory ban on marriage for same-sex couples (collectively with Article XIII, § 13, the "marriage ban"). Plaintiffs seek declaratory and injunctive relief for violations of the Equal Protection and Due Process Clauses of the U.S. Constitution (U.S. Const. amend. xiv, § 1).

(Dkt. #26, ¶ 1).

Plaintiffs' general reference to the "marriage ban" without identifying any particular statutes does not notify State Defendants of Plaintiffs' claims. The "marriage ban" becomes even less clear when viewed in conjunction with other allegations (*see, e.g.*, *id.*, ¶ 114(a)-(j)) and the broad prayer for relief. (*See* Dkt. #67 at 13). At the very least, State Defendants are entitled to know the laws that Plaintiffs claim violate the Due Process and Equal Protection

Clauses so they can properly respond and defend, if necessary. These allegations must be made in a *complaint*, not a *brief*.

The failure to identify the particular statutes claimed unconstitutional unfairly disadvantages State Defendants. For example, since the Amended Complaint fails to identify the statutes, it is impossible for State Defendants to determine, for example, whether Secretary Chandler or Registrar Anderson have enforcement authority for the statutes at issue. *See* § III, *infra*. This detail is significant because it controls whether Secretary Chandler or Registrar Anderson are proper defendants. *Id.* Only in their response brief—and not in their Amended Complaint—do Plaintiffs identify the statutes purportedly giving rise to claims against Secretary Chandler (Dkt. #95 at 9-10) and Registrar Anderson (*id.* at 10-11). This is insufficient because it leaves State Defendants and the Court guessing as to what statutes are at issue and whether Secretary Chandler or Registrar Anderson have anything to do with their enforcement.

For all of the reasons discussed here and in the Memorandum in Support of the Motion to Dismiss (Dkt. #67), the Court should dismiss the Amended Complaint as impermissibly vague.[1]

### III. Claims Against Registrar Anderson And Secretary Chandler Should Be Dismissed Because Plaintiffs Failed To Plead A Connection Between The Allegedly Unconstitutional Statutes And Secretary Chandler And Registrar Anderson.

Plaintiffs claim they sufficiently pled claims against Registrar Anderson and Secretary Chandler because certain statutes—identified only in their brief, not their Amended Complaint—provide these State officials with enforcement authority over purportedly unconstitutional statutes. Ignoring that such allegations must be made in a complaint rather than a brief (*see* § II, *supra*), this claim nonetheless fails as a matter of law.

While suits against a state seeking prospective injunctive relief only may in some instances be appropriate as a narrow exception to sovereign

---

[1]Plaintiffs' suggest that "any ambiguity . . . is attributable to the State of Wisconsin," and cite former Attorney General Peggy Lautenschlager's explanatory statement for 2006 Wisconsin Referendum 1. (Dkt. #95 at 7). *See also* Wis. Legis. Ref. Bureau, "Constitutional Amendment & Advisory Referendum to Be Considered by Wisconsin Voters, Nov. 7, 2006," *Wisconsin Briefs* 06-12 at 2 (Sept. 2006), available at *http://legis.wisconsin.gov/lrb/pubs/wb/06wb12.pdf*, last checked 4/25/14. This is a non-starter. Plaintiffs unquestionably have the burden to properly plead their claims, regardless of the former Attorney General's comments.

immunity, *see Ex parte Young,* 209 U.S. 123, 159–60 (1908),[2] a state official may be sued to enjoin enforcement of an allegedly unconstitutional statute, only when "such officer . . . [has] some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157.   Plaintiffs failed to plead such a connection here.

State Registrar Anderson has no enforcement authority for any Wisconsin marriage laws.   Plaintiffs have not alleged otherwise.   (Dkt. #26, ¶ 23). Although Secretary Chandler admittedly has enforcement authority over certain Wisconsin tax laws (*see, e.g.*, Wis. Stat. § 73.03), Plaintiffs made no allegations regarding the unconstitutionality of these laws in their Amended Complaint.   (*See, e.g.,* Dkt. #26, ¶ 22).   Registrar Anderson and Secretary Chandler have, therefore, only been sued as nominal representatives of the State, as opposed to their personal capacities.

Where a state official is named as a nominal representative, merely as a device to bring suit against the State itself, the suit is barred if the official

---

[2]State Defendants did not cite *Ex parte Young* in their motion to dismiss or memorandum in support.   However, this case was the authority upon which *Ameritech Corp. v. McCann*, 297 F.3d 582 (7th Cir. 2002), and *Entm't Software Ass'n v. Blagojevich,* 469 F.3d 641 (7th Cir. 2006), Plaintiffs' key authorities, were based.

has no enforcement authority over the purportedly unconstitutional law.

*See Ex parte Young,* 209 U.S. at 159–60.  The Court explained:

> "In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional.  They were not expressly directed to see to its enforcement.  **If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes.**  That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."

*Id.* at 157 (emphasis added) (quoting *Fitts v. McGhee,* 172 U.S. 516 (1899)).

Plaintiffs claim in their response brief that they pled "some connection" between Registrar Anderson and Secretary Chandler and the complained-of harms.  (Dkt. #95 at 9).  These so-called connections, however, are only identified in the response brief, not the Amended Complaint.  This is insufficient.  *See* § II, *supra.*

Regarding Registrar Anderson, Plaintiffs at most argue that "[t]he *implications*" of the Registrar's office are "plain."  (Dkt. #95 at 11) (emphasis added).  This is insufficient under *Ex parte Young.*  Plaintiffs fail to allege

that Registrar Anderson has any role in enforcing any law that Plaintiffs say is unconstitutional.

Regarding Secretary Chandler, in their response brief only—and not in their Amended Complaint—Plaintiffs allude to certain provisions of Wisconsin tax laws "that must be enforced in accordance with the marriage ban, and thus disadvantage Plaintiffs." (Dkt. #95 at 10). The Amended Complaint, however, does not allege that any such statutes are being enforced or that Secretary Chandler has authority to enforce them.[3] Plaintiffs' generalized view that laws theoretically disadvantaging Plaintiffs could possibly be enforced by Secretary Chandler is insufficient to establish the nexus between the violation of federal law and the individual accused of violating that law. *See Tadder v. Univ. of Wisconsin-Rock Cnty.*, Case No. 13-C-105-wmc, 2013 WL 3943498, at *5 (W.D. Wis. Jul 30, 2013) ("While the Supreme Court has not elaborated on the meaning of the phrase 'some connection' in concrete terms, it seems clear that a state official's generalized duty to uphold the law is insufficient by itself to establish 'some connection' to an illegal state practice or law."). Thus, claims against Secretary Chandler should also be dismissed.

---

[3] Paragraph 114(e)-(f) of the Amended Complaint generally alludes to "certain tax deductions," but fails to identify the particular statutes or that Secretary Chandler has anything to do with enforcing them. (Dkt. #26, ¶ 114(e)-(f)).

## IV. All Counts Of The Amended Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6).

Plaintiffs' claims fail because neither the Supreme Court nor the Seventh Circuit has held that the fundamental right to marry includes a fundamental right to marry someone of the same sex.

### A. No Supreme Court or Seventh Circuit authority extends the fundamental right to marry to include a fundamental right to marry someone of the same sex.

Plaintiffs assert that marriage is a fundamental right (*see* Dkt. #95 at 12) and suggest that State Defendants' motion is flawed because it is "based on a distinction between the right to marriage and the 'right to same-sex marriage' that is not supported by either Supreme Court or Seventh Circuit precedent." (*Id.* at 13).[4]  Despite Plaintiffs' earnest belief that such a right to same-sex marriage exists, saying it is so does not make it so.  None of the Supreme Court authority cited in the response brief has extended the right to marry to include a fundamental right to marry someone of the same sex. And, no decision by the Supreme Court or the Seventh Circuit ever has held that the guarantee of due process includes the right to marry a person of one's own gender.

---

[4]The issue before the Court is whether "the fundamental right to marry has [ ] been extended to include a fundamental right to marry someone of the same sex." (*See* Dkt. #67 at 18).  Regardless of how Plaintiffs attempt to frame the issue, they fail to cite Supreme Court or Seventh Circuit authority finding such a right.

All of the marriage decisions cited by Plaintiffs were premised on the relationship between a man and a woman. (*Id*. at 2). *Loving v. Virginia*, 388 U.S. 1, 10-12 (1967), is wholly unlike this case. *Loving* involved criminal anti-miscegenation laws that were intended to keep opposite-sex persons of different races separate. The fact that Virginia's overtly racial anti-miscegenation laws violated the Lovings' fundamental right to an opposite-sex marriage says nothing about Plaintiffs' alleged right to same-sex marriage or the constitutionality of Wisconsin laws defining marriage as an opposite-sex institution.

*Zablocki* and *Turner* are not on point. (*See* Dkt. # 95 at 12). Each case invalidated a prison regulation or state law withholding marriage from opposite-sex couples for reasons that have nothing to do with this case. *See Turner v. Safley*, 482 U.S. 78, 95-96 (1987) (regulation prohibiting prison inmates from marrying without the permission of the warden held unconstitutional); *Zablocki v. Redhail*, 434 U.S. 374, 384-85 (1978) (statute preventing issuance of a marriage license to a noncustodial parent where he was in arrears on child support held unconstitutional).

*Lawrence* is likewise irrelevant to the issue of legal recognition of same-sex unions. The Court majority expressly stated the case "does *not* involve whether the government must give formal recognition to any

relationship that homosexual persons seek to enter." *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (emphasis added). *Lawrence* recognized a liberty interest in private adult consensual homosexual conduct, but the Court did not declare the freedom to engage in such conduct a fundamental right. *Id.* at 586 (Scalia, J., dissenting) ("nowhere does the Court's opinion declare that homosexual sodomy is a 'fundamental right' under the Due Process Clause").

In her concurring opinion, Justice O'Connor pointed out that *Lawrence* did "not involve public conduct . . . . It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Id.* at 585 (O'Connor, J., concurring). Justice O'Connor also emphasized that in such a case, "preserving the traditional institution of marriage" *would itself* constitute a legitimate state interest under rational basis review and that "other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group." *Id.*

Counts One and Two fail to state claims upon which relief can be granted because no Supreme Court or Seventh Circuit authority holds that the Due Process Clause extends the fundamental right to marry to include a fundamental right to marry someone of the same sex. None of the cases cited by Plaintiffs holds otherwise.

## B.     Count Two must be dismissed because Wisconsin law does not nullify Plaintiffs' out-of-state marriages.

Although Counts One and Two both sound in substantive due process, Count Two is different from Count One because, although styled as "freedom to remain married," it seeks limited redress based solely on the State's alleged "nullification" and "voiding" (*see* Dkt. #26, ¶ 136) of Plaintiffs Wallmann's and Borden's marriage.  Thus, the only issue in Count Two not addressed in Count One is the intangible benefit associated with Wisconsin— and only Wisconsin—"recognizing" Plaintiffs Wallmann and Borden's out-of-state marriage.[5]  Count Two fails for both legal and factual reasons.

First, Count Two fails as a matter of law.  Plaintiffs do not meaningfully respond to State Defendants' argument based on Section 2 of DOMA, which permits Wisconsin to decline recognition of out-of-state same-sex marriages pursuant to its policies as a sovereign state.[6]  Rather than a developed argument, Plaintiffs provide a string cite.  (Dkt. #95 at 16-17).  This Court cannot grant Plaintiffs the relief they seek unless it invalidates this controlling federal statute.  Yet Plaintiffs do not argue that Section 2 of

---

[5]All other "harms" complained of by Plaintiffs allegedly resulting from Wisconsin's marriage laws (*e.g.*, tax benefits, visitation rights, etc.) are addressed in Count One.

[6]Nor are Plaintiffs challenging the constitutionality of Section 2 of DOMA in this litigation.

DOMA is unconstitutional or otherwise unenforceable.  This alone provides sufficient basis for dismissing Count Two.

Second, Plaintiffs state that "[t]he validity of Plaintiffs' [Wallmann and Borden] marriage in California is not at issue, and is not affected by Wisconsin's marriage ban." (*Id.* at 16).  This is not in dispute.  Plaintiffs nonetheless maintain that the distinction between failing to recognize a marriage and legally nullifying it is "semantic, not substantive." (*Id.* at 15).  Here, State Defendants disagree; a vast difference exists between having a marriage annulled "[i]n *practical effect*" (*see id.* at 14) (emphasis added) and annulled legally.  Plaintiffs Wallmann's and Borden's California marriage is admittedly not an absolute nullity; all rights, benefits, and obligations associated with it remain intact in California and Wisconsin law does nothing to change that.  The difference is more than mere semantics, it is as between night and day.

Finally, Plaintiffs made no effort to respond to or even address State Defendants' argument based on *Windsor* and have therefore waived any response to this argument.  *See Bonte*, 624 F.3d at 466.  (*See* Dkt. #67, § IV.B.).

Count Two should be dismissed for failure to state a claim upon which relief can be granted because Wisconsin law does not nullify Plaintiffs existing same-sex marital relationships or otherwise formally invalidate

existing marriages validly contracted in other jurisdictions. Moreover, Section 2 of DOMA forecloses Plaintiffs' Count Two claims.

### C. Count Three must be dismissed because the Marriage Amendment does not create classifications based on sexual orientation and even if it did, homosexuality is not a suspect class.

Count Three must be dismissed because the Marriage Amendment does not create classifications based on sexual orientation and even if it did, homosexuality is not a suspect class. In their opening memorandum, State Defendants argued that the Marriage Amendment does not, by its plain language, create a classification based upon sexual orientation. (*See* Dkt. #67, § IV.C.). As explained before, the Marriage Amendment treats all individuals equally, regardless of their sexual orientation. (*Id.*). This is sufficient basis to warrant dismissal.

But in any event, homosexuality is not a suspect class. In their response, Plaintiffs admit that "in the past the Seventh Circuit has applied rational basis review in cases of discrimination based on sexual orientation." (Dkt. # 95 at 18). The Seventh Circuit has done so because sexual orientation is not a protected class warranting heightened scrutiny. *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 953-54 (7th Cir. 2002). Plaintiffs make no attempt to distinguish *Schroeder* other than pointing out that it predated *Lawrence*. (Dkt. #96 at 18). Regardless of Plaintiffs' suggestion that

homosexuality is a suspect class, the Court cannot ignore binding Seventh Circuit precedent holding otherwise. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (Seventh Circuit stating that district judges must follow decisions of that court regardless of whether the district courts agree with those decisions). This alone should end the inquiry.

But it is not just the Seventh Circuit that has refused to recognize homosexuality as a suspect class. The overwhelming majority of cases that had addressed the question have reached the same conclusion. *See, e.g.*, *Lofton v. Secretary of Dept. of Children & Family Servs.*, 358 F.3d 804, 818 n.16 (11th Cir. 2004) (collecting cases); *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012); *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1105 (10th Cir. 2008); *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 571-74 (9th Cir. 1990).

Plaintiffs rely on one of the outliers, the Second Circuit's *Windsor* decision, implicitly suggesting that the Second Circuit's ruling should control because the Supreme Court did not expressly overrule it. Significantly, the Supreme Court did not adopt the Second Circuit's holding. Moreover, Plaintiffs' flawed analysis ignores that the Supreme Court in *Windsor* did not apply heightened scrutiny, instead suggesting rational basis is appropriate. *See* 133 S. Ct. at 2696 (stating DOMA was invalid "for no legitimate purpose

overcomes" its discriminatory purpose and effect of injuring those whom New York state law had deemed married).

Plaintiffs cite two other Supreme Court decisions, neither of which addresses whether sexual orientation is a suspect or quasi-suspect class. *Romer* applied "conventional" rational basis review in holding that a Colorado amendment violated equal protection by placing a "[s]weeping" and "unprecedented" ban on state and local laws offering gays and lesbians common protections from discrimination. *Romer v. Evans*, 517 U.S. 620, 631-32, 627, 633 (1996). Likewise, *Lawrence* applied rational basis and struck down Texas' law criminalizing sodomy based on due process principles. *Lawrence*, 539 U.S. at 578 ("The Texas statute furthers no legitimate state interest.").

Even post- *Romer* and *Lawrence*, other circuit courts of appeals have unequivocally found that "the Supreme Court has never ruled that sexual orientation is a suspect classification for equal protection purposes." *See Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 866 (8th Cir. 2006); *see also Jackson v. Abercrombie*, 884 F. Supp. 2d 1065, 1071 (D. Haw. 2012) ("The United States Supreme Court has never held that heightened scrutiny applies to classifications based upon sexual orientation and every circuit that has addressed the issue, *i.e.*, all circuits but the Second

and Third Circuits, have unanimously declined to treat sexual orientation classifications as suspect").

Count Three fails because the Marriage Amendment does not create a classification based upon sexual orientation.

### D.   Count Four must be dismissed because Wisconsin's marriage laws do not single out either men or women as a class.

It is indisputable that Wisconsin's marriage laws do not single out either men or women as a class.  Wisconsin's laws do not differentiate between male same-sex couples and female same-sex couples.  Wisconsin's laws do not place additional burdens on only men or women.  And Wisconsin's laws do not rely on any stereotypes applicable to men or women.  As the district court put it in *Bishop v. U.S. ex rel. Holder,* the man-woman definition of marriage "has nothing to do with gender-based prejudice or stereotypes, and the law cannot be subject to heightened scrutiny on that basis."  962 F. Supp. 2d 1252, 1286 (N.D. Okla. 2014) (collecting cases).   *See also Jackson*, 884 F. Supp. 2d at 1098-99; *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1005 (D. Nev. 2012); *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1307-08 (M.D. Fla. 2005); *Smelt v. County of Orange*, 374 F. Supp. 2d 861, 877 (C.D. Cal. 2005); *In re Kandu*, 315 B.R. 123, 143 (Bankr. W.D. Wash. 2005).

Plaintiffs rely on *Loving*, suggesting that it rejected State Defendants"
arguments.  (Dkt. #95 at 25).  *Loving*, however, is inapposite.  *See* § IV.A.,
*supra*.  Unlike Wisconsin's marriage laws, which classify based on traditional
historical and sociological marital norms of gender complementarity, "[t]here
can be no question but that Virginia's miscegenation statutes rest *solely* upon
distinctions drawn according to race."  *Loving*, 388 U.S. at 11.  As the *Loving*
Court put it, "[t]he fact that Virginia prohibits only interracial marriages
involving white persons demonstrates that the racial classifications must
stand on their own justification, as measures designed to maintain White
Supremacy."  *Id.* (footnote omitted).  Here, by contrast, it cannot be said that
Wisconsin's laws were enacted to maintain male or female "supremacy."
*Turner,* 482 U.S. at 96.[7]

Nor are Wisconsin's marriage laws based on impermissible gender
stereotypes.  (*See* Dkt. #95 at 26).  These laws simply acknowledge that
women and men bring undeniably unique gifts to parenting, gifts that are
different and complementary.  *See, e.g., Nguyen v. INS*, 533 U.S. 53, 73 (2001)
("To fail to acknowledge even our most basic biological differences . . . risks

---

[7]Under Plaintiffs' interpretation of *Loving*, there would be no reasoned basis
for not further extending the right to marriage provided that the only requirements
are love and commitment.  If the desire for social recognition and validation of
self-defined loving, committed relationships are the bases for civil marriage, no
adult relationships could be excluded *a priori* from making claims upon the
government for recognition.

making the guarantee of equal protection superficial, and so disserving it."); *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("'a community made up exclusively of one [sex] is different from a community composed of both.'" (quoting *Ballard v. United States*, 329 U.S. 187, 193 (1946)).

Plaintiffs' Count Four fails as a matter of law because the Marriage Amendment does not discriminate on the basis of gender.  Accordingly, it must be dismissed pursuant to Fed. R. of Civ. P. 12(b)(6).

## V.   Plaintiffs' Claims Are Foreclosed By *Baker v. Nelson* Because It Is Controlling, On-Point Authority.

Plaintiffs argue that doctrinal developments preclude applying *Baker*. (Dkt. #95 at 29).  However, none of the Supreme Court cases Plaintiffs cite addressed the constitutionality of state laws defining marriage as Wisconsin has done here.

Contrary to Plaintiffs' suggestions, the Supreme Court has carefully *avoided* opining directly on the constitutionality of state marriage laws. *See Windsor*, 133 S. Ct. at 2696 ("This opinion and its holding are confined to those [same-sex] marriages [made lawful by the State].")); *Lawrence*, 539 U.S. at 578 ("The present case . . . does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.").  Significantly, the *Windsor* majority did not address *Baker* or

- 20 -

criticize it.  Moreover, neither *Romer* nor *Lawrence* addressed *Baker* or the constitutionality of state marriage laws.

When the First Circuit recently applied *Baker*, it did so only after citing and discussing *Romer* and *Lawrence*, suggesting that neither of those holdings precluded it from applying *Baker*.  *See Massachusetts v. U.S. Dep't Health & Human Servs.*, 682 F.3d 1, 8 (1st Cir. 2012) (concluding that, notwithstanding *Romer* and *Lawrence*, *Baker* forecloses arguments that "presume or rest on a constitutional right to same-sex marriage").

As the Supreme Court has made clear, "[i]f a precedent of th[e] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."  *Rodriguez de Quijas v. Shearson / Am. Exp., Inc.*, 490 U.S. 477, 484 (1989); *accord Agostini v. Felton*, 521 U.S. 203, 237 (1997).  A district court "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."  *Rodriguez de Quijas*, 490 U.S. at 484.

Plaintiffs argue that *Baker* was not on point.  (Dkt. #95 at 29).  The petitioners in *Baker* appealed the Minnesota Supreme Court's decision holding that its state marriage laws, which defined marriage as a man-woman union, did not violate the Due Process or Equal Protection

Clause. *Baker v. Nelson*, 291 Minn. 310, 312-14 (1971). These are precisely the issues before the Court in the present case. Even the *Bishop* court acknowledged that *Baker* was directly on point:

> *Baker* presented the precise legal issues presented in this case—namely, whether a state law limiting marriage to opposite-sex couples violates due process or equal protection rights guaranteed by the U.S. Constitution. This is evidenced by the jurisdictional statements submitted to the Supreme Court. In relevant part, the appellants phrased the issues as whether Minnesota's "refusal to sanctify appellants' marriage deprives appellants of liberty and property in violation of the due process and equal protection clauses." . . . Therefore, barring application of an exception, *Baker* is binding precedent in this case.

*Bishop*, 962 F. Supp. 2d at 1275 (collecting cases).[8] Plaintiffs' suggestion the *Baker* is not on point is simply wrong.

In sum, because *Baker* dismissed the precise legal claims at issue here, and this Court is obligated to follow *Baker* as directly controlling, Plaintiffs' Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, State Defendants respectfully request that the Court:

(1)   dismiss all claims asserted against Defendants Chisholm and King, as agreed by Plaintiffs;

---

[8]*Bishop* concluded that *Baker* "is no longer a binding summary dismissal." 962 F. Supp. 2d at 1277.

(2)   declare that Wis. Stat. § 765.30(1) does not apply to same-sex marriage;

(3)   dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failing to identify which Wisconsin statutes are claimed unconstitutional;

(4)   dismiss all claims asserted against Secretary of Revenue Richard G. Chandler and State Registrar Oskar Anderson pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead allegations against them sufficient to state plausible claims;

(5)   dismiss Counts I–IV of the Amended Complaint for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6);

(6)   dismiss the Amended Complaint because Plaintiffs' claims are foreclosed by the Supreme Court's controlling ruling in *Baker v. Nelson*, 409 U.S. 810 (1972); and

(7)   for all other and further relief that justice requires.

Dated this 25th day of April, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General


s/Timothy C. Samuelson
TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants,
Scott Walker, J.B. Van Hollen,
Richard G. Chandler, Oskar Anderson,
Gary King, and John Chisholm

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 266-8690 (Bellavia)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*
*bellaviatc@doj.state.wi.us*