IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

VIRGINIA WOLF and CAROL SCHUMACHER,
KAMI YOUNG and KARINA WILLES,
ROY BADGER and GARTH WANGEMANN,
CHARVONNE KEMP and MARIE CARLSON,
JUDITH TRAMPF and KATHARINA HEYNING,
SALUD GARCIA and PAM KLEISS,
WILLIAM HURTUBISE and LESLIE PALMER,
and JOHANNES WALLMANN and
KEITH BORDEN,

     Plaintiffs,

  v.             Case No. 14-C-00064-SLC

SCOTT WALKER, J.B. VAN HOLLEN, OSKAR
ANDERSON, JOSEPH CZARNEZKI, WENDY
CHRISTENSEN, and SCOTT MCDONELL,

     Defendants.

---

**STATE DEFENDANTS WALKER, VAN HOLLEN, AND ANDERSON'S
PROPOSED FINDINGS OF FACT IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to § II.B. of the Court's Procedure to be Followed on Motions for Summary Judgment, Defendants Scott Walker, J.B. Van Hollen, and Oskar Anderson (collectively, "State Defendants"), by their attorneys, Assistant Attorneys General Timothy C. Samuelson, Thomas C. Bellavia, and Clayton P. Kawski, respectfully submit their Proposed Findings of Fact in Opposition to Plaintiffs' Motion for Summary Judgment.

**I.  Marriage in the United States and Across the Globe.**

1.  No country allowed same-sex couples to marry until the Netherlands in 2000. *U.S. v. Windsor*, 133 S. Ct. 2675, 2715 (2013) (Alito, J., dissenting).

2.      In 2000, the Vermont Legislature created the status of civil unions that granted "all the same benefits, protections, and responsibilities under law . . . as are granted to spouses in a civil marriage."  Vt. Stat. Ann. tit. 15, § 1204(a).

3.      Same-sex marriage was first recognized by a United States jurisdiction on November 18, 2003, pursuant to the ruling of the Massachusetts Supreme Judicial Court.  *See Goodridge v. Dep't of Public Health*, 440 Mass. 309 (2003).

4.      Currently, four states prohibit same-sex civil marriage by statute Indiana (Ind. Code § 31-11-1-1), Pennsylvania (Pa. Cons. Stat. § 1102), West Virginia (W. Va. Code § 48-2-104), and Wyoming (Wyo. Stat. § 20-1-106).

5.      A majority of states retain Constitutional provisions defining marriage as the union of a man and a woman.  S*ee* Alabama (Ala. Const. art. I, § 36.03), Alaska (Alaska Const. art. 1, § 25), Arizona (Ariz. Const. art. XXX, § 1), Arkansas (Ark. Const. amend. 83, §§ 1-3), Colorado (Colo. Const. art. II, § 31), Florida (Fla. Const. art. I, § 27), Georgia (Ga. Const. art. I, § IV, ¶ I), Idaho (Idaho Const. art. III, § 28), Kansas (Kan. Const. art. XV, § 16), Kentucky (Ky. Const. § 233a), Louisiana (La. Const. art. XII, § 15), Michigan (Mich. Const. art I, § 25), Mississippi (Miss. Const. art. XIV), Missouri (Mo. Const. art. I, § 33), Montana (Mont. Const. art. XIII, § 7), Nebraska (Neb. Const. art. I, § 29), North Carolina (N.C. Const. art. XIV, § 6), North Dakota (N.D. Const. art. XI, § 28), Ohio (Ohio Const. art. XV, § 11), Oklahoma (Okla. Const. art. II, § 35), Oregon (Or. Const. art. XV, § 5a), South Carolina (S.C. Const. art. XVII, § 15), South Dakota (S.D. Const. art. XXI, § 9), Tennessee (Tenn. Const. art. XI, § 18), Texas (Tex. Const. art. I, § 32), Utah (Utah Const. art. I, § 29), Virginia (Va. Const. art. I, § 15-A), and Wisconsin (Wis. Const. art. XIII, § 13).

## II.     Marriage in Wisconsin and the Wisconsin Marriage Amendment.

6.     Wisconsin has never recognized same-sex marriage, either at common law or by statute.  *See* Wis. Legis. Ref. Bureau, "Constitutional Amendment & Advisory Referendum to Be Considered by Wisconsin Voters, Nov. 7, 2006," *Wisconsin Briefs* 06-12 (Sept. 2006), at 2 (before the Marriage Amendment, "only a marriage between a husband and wife is recognized as valid in this state"), available *at http://legis.wisconsin.gov/lrb/pubs/wb/06wb12.pdf*, last checked 4/28/14.  *See also* App. Tab No. 1.[1]

7.     The Wisconsin Family Code has included a language referring to marriage as between "a husband and wife" since 1983.  *See* 1983 Wisconsin Act 186, available at *https://docs.legis.wisconsin.gov/document/acts/1983/186*, last checked 4/28/14.  *See also* App. Tab No. 2.

8.     2003 Assembly Joint Resolution 66 "provide[d] that only a marriage between one man and one woman shall be valid or recognized as a marriage in this state and that a   legal status identical   or   substantially   similar   to   that   of   marriage   for unmarried individuals shall not   be   valid or   recognized   in   this   state."   Available   at *http://docs.legis.wisconsin.gov/2003/related/proposals/ajr66*, last checked 4/28/14.  *See also* App. Tab No. 3.

9.     On   March   4,   2004,   the   Wisconsin   State   Assembly   approved 2003 Assembly Joint Resolution   66   by   a   vote   of   68-27.   Available   at *http://docs.legis.wisconsin.gov/2003/proposals/ajr66*, last checked 5/9/14.  *See also* App. Tab No. 4.

---

[1]State Defendants' are including certain documents (*i.e.*, documents other than published legal and statutory authority) in an Appendix to their Proposed Findings of Fact in Opposition to Plaintiffs' Motion for Summary Judgment, filed contemporaneously herein, referred to as "App.".

10.     On March 11, 2004, the Wisconsin State Senate approved 2003 Assembly Joint Resolution 66 by a vote of 20-13.  *See id.*

11.     2005 Senate Joint Resolution 53 "provide[d] that only a marriage between one man and one woman shall be valid or recognized as a marriage in this state and that a legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state."  Available at *http://docs.legis.wisconsin.gov/2005/related/proposals/sjr53*, last checked 4/28/14.  *See also* App. Tab No. 5.

12.     On December 6, 2005, the Wisconsin State Senate approved 2005 Senate Joint Resolution 53 by a vote of 19-14.  Available at *http://docs.legis.wisconsin.gov/2005/proposals/sjr53*, last checked 5/9/14.  *See also* App. Tab No. 6.

13.     On February 28, 2006, the Wisconsin State Assembly approved 2005 Assembly Joint Resolution 53 by a vote of 62-31.  *See id.*

14.     2006 Wisconsin Referendum 1 allowed Wisconsin voters to ratify the Marriage Amendment.  *See* Wis. Legis. Ref. Bureau, "Constitutional Amendment & Advisory Referendum to Be Considered by Wisconsin Voters, Nov. 7, 2006," at 2.  *See also* ¶ 6, *supra*.

15.     The ballot question read: "**Marriage.** Shall section 13 of article XIII of the constitution be created to provide that only a marriage between one man and one woman shall be valid or recognized as a marriage in this state and that a legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state?"  *See id.* (emphasis in original).

16.     The proposed language of the constitutional amendment read: "Only a marriage between one man and one woman shall be valid or recognized as a marriage in this state. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized in this state." *See id.*

17.     The people of Wisconsin voted to approve 2006 Wisconsin Referendum 1. *See* Wis. State Elections Bd. Canvass Summary, Fall General Election (Nov. 7, 2006), available at *http://elections.state.wi.us/docview.asp?docid=10049&locid=47*, last checked 4/28/14. *See also* App. Tab No. 7.

18.     1,264,310 Wisconsin citizens voted for 2006 Wisconsin Referendum 1 and 862,924 voted against Wisconsin Referendum 1, passing at a rate of 59.4% to 40.6%. *See id.*

19.     2006 Wisconsin Referendum 1 passed in every Wisconsin county except Dane County. *See id.*

20.     On February 28, 2014, 2013 Assembly Joint Resolution 109 was introduced to amend section 13 of article XIII of the Wisconsin Constitution, relating to eliminating constitutional restrictions on marriage. *See* Wis. Legis. Docs. relating to 2013 Assembly Joint Resolution 109, available at *https://docs.legis.wisconsin.gov/2013/proposals/ajr109*, last checked 4/28/14; 2013 Assembly Joint Resolution 109, available at https://docs.legis.wisconsin.gov/2013/related/proposals/ajr109.pdf, last checked 4/28/14. *See also* App. Tab No. 8.

21.     On February 17, 2014, 2013 Senate Joint Resolution 74 was introduced to amend section 13 of article XIII of the Wisconsin Constitution, relating to eliminating constitutional restrictions on marriage. *See* Wis. Legis. Docs. relating to 2013 Senate Joint Resolution 74, available at *https://docs.legis.wisconsin.gov/2013/proposals/sjr74*,

last checked 4/28/14 and 2013 Senate Joint Resolution 74, available at *http://docs.legis.wisconsin.gov/2013/related/proposals/sjr74*, last checked 4/28/14. *See also* App. Tab No. 9.

### III. Polling Data Regarding Marriage Laws.

22.    According to polling data from July 20, 2012, Wisconsin citizens opposed same-sex marriage by a 47% - 43% margin. *See* Public Policy Polling, Wisconsin narrowly opposes gay marriage (July 20, 2012), available at *http://www.publicpolicypolling.com/main/2012/07/wisconsin-narrowly-opposes-gay-marriage.html*, last checked 4/28/14. *See also* App. Tab No. 10.

23.    According to "the most extensive independent statewide polling project in Wisconsin history," "[f]orty-eight percent of respondents favor allowing marriage of gay couples, 24 percent support civil unions but not marriage and 24 percent prefer no legal recognition for same sex couples." *See* "Wisconsin Gov. Scott Walker Holds Lead Over Challenger Mary Burke In New Marquette Law School Poll," Marquette Law School Poll (March 26, 2014), available at *https://law.marquette.edu/poll/*, last checked 4/28/14. *See also* App. Tab No. 11.

24.    According to polling data from April 2014, 51% of Wisconsin citizens favor the Wisconsin Marriage Amendment. *See* Patty Murray, "Poll: Most Wisconsinites Support Marriage Amendment But Also Back Granting Civil Rights," Wisconsin Public Radio News (April 9, 2014), available at *http://www.wpr.org/poll-most-wisconsinites-support-marriage-amendment-also-back-granting-civil-rights*, last checked 5/9/14. *See also* App. Tab No. 12.

25.    According to Gallup Poll, in 1996, 68% of those polled believed that marriages between same-sex couples should not be recognized by the law as valid with the same rights as traditional marriage; in 2013, 54% favored recognizing same-sex marriage. *See* "Gay and

Lesbian Rights," Gallup Poll, available at *http://www.gallup.com/poll/1651/Gay-Lesbian-Rights.aspx*, last checked 4/28/14. *See also* App. Tab No. 13.

26.    By 2020, 64% of Wisconsinites will likely favor same-sex marriage laws. *See* Nate Silver, "How Opinion on Same-Sex Marriage Is Changing, and What It Means," New York Times FiveThirtyEight blog (March 26, 2013), available at *http://fivethirtyeight.blogs.nytimes.com/2013/03/26/how-opinion-on-same-sex-marriage-is-changing-and-what-it-means/?_php=true&_type=blogs&_r=0*, last checked 5/9/14. *See also* App. Tab No. 14.

## IV.    Same-Sex Marriage in Other States.

27.    Minnesota voters rejected a constitutional ban on same-sex marriage in November 2012. *See* Minnesota Secretary of State, "Results for Constitutional Amendments," (last updated 12/07/12), available at *http://minnesotaelectionresults.sos.state.mn.us/Results/AmendmentResultsStatewide/1*, last checked 4/28/14. *See also* App. Tab No. 15.

## V.    Presidential and Supreme Court Justice Statements Regarding Same-Sex Marriage.

28.    President Clinton signed the Defense of Marriage Act ("DOMA") on September 21, 1996. His signing statement on DOMA was:

> Throughout my life I have strenuously opposed discrimination of any kind, including discrimination against gay and lesbian Americans. I am signing into law H.R. 3396, a bill relating to same-gender marriage, but it is important to note what this legislation does and does not do.
>
> I have long opposed governmental recognition of same-gender marriages and this legislation is consistent with that position. The Act confirms the right of each state to determine its own policy with respect to same gender marriage and clarifies for purposes of federal law the operative meaning of the terms "marriage" and "spouse".
>
> This legislation does not reach beyond those two provisions. It has no effect on any current federal, state or local anti-discrimination law and does not constrain the right of Congress or any state or locality to enact anti-discrimination laws. I therefore would take

> this opportunity to urge Congress to pass the Employment Non-Discrimination Act, an act which would extend employment discrimination protections to gays and lesbians in the workplace. This year the Senate considered this legislation contemporaneously with the Act I sign today and failed to pass it by a single vote. I hope that in its next Session Congress will pass it expeditiously.
>
> I also want to make clear to all that the enactment of this legislation should not, despite the fierce and at times divisive rhetoric surrounding it, be understood to provide an excuse for discrimination, violence or intimidation against any person on the basis of sexual orientation. Discrimination, violence and intimidation for that reason, as well as others, violate the principle of equal protection under the law and have no place in American society.

Available at *http://www.cs.cmu.edu/afs/cs/user/scotts/ftp/wpaf2mc/clinton.html*, last checked 4/28/14. *See also* App. Tab No. 16.

29.     President Obama endorsed same-sex marriage on May 9, 2012, after nearly two years of saying that his views on same-sex marriage were "evolving." *See* "Obama Says Same-Sex Marriage Should Be Legal," New York Times (5/9/12), available at, *http://www.nytimes.com/2012/05/10/us/politics/obama-says-same-sex-marriage-should-be-legal.html*, last checked 4/28/14. *See also* App. Tab No. 17.

30.     Taking the prudent, cautious approach to a divisive social has also been endorsed by Justice Ginsburg in speeches; she stressed the virtues of "judicial restraint," and allowing "change [to] develop in the political process." *See* Jason Keyser, "Ginsburg Says Roe gave Abortion Opponents Target," *Associated Press* (May 11, 2013), available at *http://bigstory.ap.org/article/ginsburg-says-roe-gave-abortion-opponents-target*, last checked 4/28/14. *See also* App. Tab No. 18.

31.     In oral arguments for *Hollingsworth v. Perry* before the Supreme Court, Justice Sotomayor asked Respondents' counsel Theodore Olsen the following question:

> JUSTICE SOTOMAYOR: Mr. Olson, the bottom line that you're being asked -- and -- and it is one that I'm interested in the answer: If you say that marriage is a fundamental right, what State restrictions could ever exist? Meaning, what State restrictions with respect to the number of people, with respect to -- that could get married -- the incest laws, the mother and child, assuming that they are the age -- I can -- I can accept that the

> State has probably an overbearing interest on -- on protecting a child until they're of age to marry, but what's left?

*See* Transcript of Proceedings, *Hollingsworth v. Perry*, No. 12-144 (Supreme Court), at 46:9-19, available at *http://www.supremecourt.gov/oral_arguments/argument_transcripts/12-144a.pdf*, last checked 4/28/14. *See also* App. Tab No. 19.

## VI. Social Science Research.

32. No meaningful conclusions can be drawn from social science research into the effect that being raised by same-sex parents has on children because of serious methodological flaws in the research. Douglas W. Allen, *More Heat Than Light: A Critical Assessment of the Gay Parenting Literature, 1995-2010* (April 2012), at 1, available at *http://www.ruthinstitute.org/ITAF12/faculty/readings/SSParentingHJLPP.pdf*, last checked 5/7/14. *See also* App. Tab No. 20.

33. Because the conclusions from social science research are not empirically warranted, any consensus in social science on gay parenting outcomes is premature. *See id.*

34. The newness and complexity of same-sex parenting means social scientists are currently unable to draw meaningful conclusions about its impact on children. *See* Loren Marks, "Same-sex parenting and children's outcomes: a closer examination of the American psychological associations brief on lesbian and gay parenting," Social Science Research 41 (2012) 735-751, available at *www.baylorisr.org/wp-content/uploads/Marks.pdf*, last checked 5/7/14. *See also* App. Tab No. 21.

35. "[I]t is not simply the presence of two parents, . . . but the presence of *two biological parents* that seems to support children's development." Kristen Anderson Moore, Susan M. Jekielek, and Carol Emig, "Marriage from a Child's Perspective: How Does Family

Structure Affect Children, and What Can We Do about It?" *Child Trends Research Brief* (June 2002), at 1-2 (emphasis in original), available at *http://www.childtrends.org/wp-content/uploads/2013/03/MarriageRB602.pdf*, last checked 5/7/14. *See also* App. Tab No. 22.

36. "[R]esearch clearly demonstrates that family structure matters for children, and the family structure that helps children the most is a family headed by two biological parents in a low-conflict marriage. . . . There is . . . value for children in promoting strong, stable marriages between biological parents." *Id.* at 6.

37. "The advantage of marriage appears to exist primarily when the child is the biological offspring of both parents." Wendy D. Manning and Kathleen A. Lamb, "Adolescent Well-Being in Cohabitating, Married, and Single-Parent Families," *Journal of Marriage and Family* 65, no. 4 (November 2003), 2003 WLNR 12921714. *See also* App. Tab No. 23.

38. "Seventeen of 24 recent empirical studies find that the introduction of no-fault divorce laws increased the divorce rate, by one estimate as much as 88 percent. More typically, studies estimate no fault divorce increased divorce rates on the order of 10 percent." *See* Prof. Douglas W. Allen and Maggie Gallagher, "Does Divorce Law Affect the Divorce Rate? A Review of Empirical Research, 1995-2006" Institute for Marriage and Public Policy (July 2007), at 1, available at *http://www.marriagedebate.com/pdf/imapp.nofault.divrate.pdf*, last checked 5/7/14. *See also* App. Tab No. 24.

39. "[T]he science of human sexuality is in its infancy and that there is currently little conclusive evidence that sexuality is genetically or hormonally induced. . . . [T]he innateness of sexual orientation is a poor metric upon which to formulate policy or law. Indeed, arguments for policies that affirm equal rights for all citizens, regardless

of sexuality, need not rely on questions of origin." *See* Joseph Osmundson, "'I Was Born this Way': Is Sexuality Innate, and Should it Matter?" LGBTQ Policy Journal at the Harvard Kennedy School: 2011 Edition, at Conclusion available at *http://isites.harvard.edu/icb/icb.do?keyword=k78405&pageid=icb.page414413*, last checked 4/28/14. *See also* App. Tab No. 25.

## VII. Lesbian, Gay, Bisexual, and Transgender (LGBT) Specific Laws in Wisconsin.

40. Wisconsin enacted domestic partnerships laws in 2009. *See* Wis. Stat. ch. 770.

41. Wisconsin provided hospital visitation rights to domestic partners in 2009. *See* Wis. Stat. § 50.36(3j).

42. Wisconsin extended other provisions in Chapter 50 to provide visitation rights for domestic partners. *See* Wis. Stat. §§ 50.09(1)(f)1. (nursing home or other residential facility); 50.94(1) (hospice); 50.032(2d) (adult family homes); 50.034(3)(e) (residential care apartment complexes); and 50.035(2)(d) (community-based residential facilities).

43. Wisconsin permitted adoptions by gay and lesbian individuals in 1983. *See* Wis. Stat. § 48.82.

44. Wisconsin prohibited employment discrimination based on sexual orientation in 1982. *See* Wis. Stat. §§ 111.31 (prohibition of unfair discrimination based on sexual orientation); 111.36(1)(d)1. (defines and prohibits employment discrimination based on sex to include discrimination based on an individual's sexual orientation).

45. Wisconsin prohibited housing discrimination based on sexual orientation in 1982. *See* Wis. Stat. §§ 106.50 (prohibits discrimination based on sexual orientation in housing set-ups); 106.52 (prohibits discrimination based on sexual orientation for places of public accommodation, such as hotels or other lodging).

46.    Wisconsin enacted hate crime legislation based on sexual orientation in 2002. *See* Wis. Stat. § 939.645(1)(b) (provides a penalty enhancement for individuals who commit crimes against another because of that individual's sexual orientation).

47.    Wisconsin prohibited bullying in schools based on sexual orientation in 2001. *See* Wis. Stat. §§ 118.13(1) (prohibits discrimination  based on sexual orientation in public schools relating to school services, activities, and benefits); 118.46 (outlines how schools should develop their anti-bullying policies; the Wisconsin Department of Public Instruction lists ways schools can create safe environments for LGBT students).

**VIII.   Plaintiffs' Requests for Admission.**

48.    Plaintiffs Wallman and Borden's California marriage is not "void" and has not been nullified.  (*See* Plaintiffs' Responses to State Defendants' First Set of Requests for Admission ("Rqst. Admit"), No. 30 (admitting they "subjectively consider themselves to be a married couple")).  *See also* App. Tab No. 26.

49.     Plaintiffs Wallman and Borden's California marriage has not been nullified. (*See* Dkt. #95 at 16) ("The validity of Plaintiffs' marriage in California is not at issue."); *see also* Rqst. Admit No. 32 (admitting Wisconsin has not annulled their marriage).

Dated this 9th day of May, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General


s/Timothy C. Samuelson
TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants,
Scott Walker, J.B. Van Hollen,
and Oskar Anderson

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 266-8690 (Bellavia)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*
*bellaviatc@doj.state.wi.us*