IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VIRGINIA WOLF and CAROL
SCHUMACHER, KAMI YOUNG and
KARINA WILLES, ROY BADGER and
GARTH WANGEMANN, CHARVONNE
KEMP and MARIE CARLSON, JUDITH
TRAMPF and KATHARINA HEYNING,
SALUD GARCIA and PAM KLEISS,
WILLIAM HURTUBISE and LESLIE
PALMER, and JOHANNES
WALLMANN and KEITH BORDEN,

        Plaintiffs,

        v.                       Case No. 14-C-00064-SLC

SCOTT WALKER, J.B. VAN HOLLEN,
OSKAR ANDERSON, JOSEPH
CZARNEZKI, WENDY CHRISTENSEN,
and SCOTT MCDONELL,

        Defendants.

---

## STATE DEFENDANTS' MEMORANDUM
## IN SUPPORT OF THEIR CONTINGENT MOTION TO STAY

---

If the Court grants Plaintiffs' motion for summary judgment and enjoins

enforcement of Wis. Const. art. XIII, § 13 (the "Marriage Amendment") or any

other Wisconsin marriage laws, State Defendants[1] request that the Court

immediately stay any relief at the time such relief is ordered, which will

---

[1]Defendants Scott Walker, J.B. Van Hollen, and Oskar Anderson are collectively
referred to as the "State Defendants."

preserve the status quo for when an appeal is filed.  *See Herbert v. Kitchen*, 134 S. Ct. 893 (Jan. 6, 2014).

## ARGUMENT

### I.   The Supreme Court Has "Virtually Instructed" Courts To Grant Stays Under These Circumstances.

The Supreme Court stayed a permanent injunction issued by the District of Utah in *Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013), pending appeal.  *Herbert*, 134 S. Ct. 893.  The district court entered a permanent injunction requiring Utah officials to issue marriage licenses to same-sex couples and to recognize same-sex marriages validly performed in other states.  *Kitchen*, 961 F. Supp. 2d at 1215.  Both the district court and the Tenth Circuit denied Utah's motions to stay.  The Supreme Court, however, granted a stay pending final disposition of the appeal to the Tenth Circuit.  *Herbert*, 134 S. Ct. 893; *see also* Dkt. #53 (discussing Plaintiffs' motion for preliminary injunction and the Supreme Court's stay in *Herbert*).

In the ensuing months, other district courts have followed the Supreme Court's lead.  *See, e.g., Bourke v. Beshear*, No. 3:13-CV-750-H, 2014 WL 556729 at *14 (W.D. Ky. Feb. 12, 2014) (stating that "the Supreme Court has sent a strong message by its unusual intervention and [stay] order

in [*Herbert*]"); *see also Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252, 1296 (N.D. Okla. 2014); *Bostic v. Rainey*, 970 F. Supp. 2d 456, 483-84 (E.D. Va. Feb. 13, 2014); *De Leon v. Perry*, No. SA-13-CA-00982-OLG, 2014 WL 715741, at *28 (W.D. Tex. Feb. 26, 2014); Dkt. #53 at 2-3 (collecting cases).

Where district courts have refused to grant stays, Circuit Courts of Appeals have granted them. *See, e.g., Latta v. Otter*, No. 14-35420 (9th Cir. May 20, 2014); *Tanco v. Haslam*, No. 14-5297 (6th Cir. Apr. 25, 2014); *DeBoer v. Snyder*, No. 14-1341 (6th Cir. Mar. 25, 2014).

Most recently in *Latta*, the District of Idaho permanently enjoined enforcement of the Idaho Marriage Amendment without entering a stay. *Latta v. Otter*, No. 1:13-CV-00482-CWD, 2014 WL 1909999, at *29 (D. Idaho May 13, 2014). After first entering a temporary stay, the Ninth Circuit granted the state's motion to stay pending appeal. *Latta*, No. 14-35420. (*See* Samuelson Declaration ("Decl."), ¶ 3, Ex. A). In a concurrence to the court's stay order, Circuit Judge Hurwitz found that the Supreme Court in *Herbert* "has virtually instructed courts of appeals to grant stays in the circumstances before us today." (*Id.* at 3). He further reasoned that

> [a]lthough the Supreme Court's terse two-sentence order [in *Herbert*] did not offer a statement of reasons, I cannot identify any relevant differences between the situation before us today and *Herbert*. And, although the Supreme Court's order in *Herbert* is not in the strictest sense precedential, it provides a clear message—the Court (without

> noted dissent) decided that district court injunctions against the
> application of laws forbidding same-sex unions should be stayed at the
> request of state authorities pending court of appeals review.

(*Id.* at 5).

In *Tanco*, the Middle District of Tennessee permanently enjoined enforcement of the Tennessee Marriage Amendment. *Tanco v. Haslam*, No. 3:13-CV-01159, 2014 WL 997525 (M.D. Tenn. Mar. 14, 2014). The district court denied defendants' motion to stay. *Jesty v. Haslam*, No. 3:13-CV-01159, 2014 WL 1117069 at *5 (M.D. Tenn. Mar. 20, 2014). The Sixth Circuit, however, granted defendants' motion to stay. *Tanco v. Haslam*, No. 14-5297 at 1-2 (6th Cir. Apr. 25, 2014) ("a stay of the district court's order pending consideration of this matter by a merits panel of this Court is warranted"). (*See* Samuelson Decl., ¶ 4, Ex. B).

In *DeBoer*, the Eastern District of Michigan permanently enjoined enforcement of the Michigan Marriage Amendment without entering a stay. *See DeBoer v. Snyder*, 973 F. Supp. 2d 757, 775 (E.D. Mich. Mar. 21, 2014). The very next day, the Sixth Circuit temporarily stayed the district court's judgment and three days later, entered a stay pending final disposition on appeal. *DeBoer*, No. 14-1341 at 1. (*See* Samuelson Decl., ¶ 5, Ex. C). The Sixth Circuit found that

> [t]here is no apparent basis to distinguish this case or to balance the
> equities any differently than the Supreme Court did in [*Herbert*].
> Furthermore, several district courts that have struck down laws
> prohibiting same-sex marriage similar to the Michigan amendment at

issue here have also granted requests for stays made by state defendants.

*DeBoer*, No. 14-1341 at 3 (collecting cases).

The courts in *Latta* and *DeBoer* both recognized that the Supreme Court has already weighed in on the issue, ruling that injunctions against the application of laws forbidding same-sex marriage should be stayed. This Court previously alluded to the Supreme Court's instruction in *Herbert* when it invited Plaintiffs to withdraw their motion for preliminary injunction because any relief would likely be stayed. (*See* Dkt. #53 at 3). When Plaintiffs responded to the Court's March 4, 2014, order, they made no effort to distinguish the stay in *Herbert* or otherwise dispute the possibility that any "preliminary injunction must be stayed as soon as it is entered." (*See id.*; Dkt. #55 at 2). Consistent with its prior reasoning, and that of the Supreme Court in *Herbert*, the Court should immediately stay any injunctive relief to preserve the status quo for appeal.

## II.    The Court Should Grant A Stay Pursuant To Fed. R. Civ. P. 62(c).

### A.    Legal standards for granting a stay.

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may suspend [that] injunction . . . ." The purpose of a stay is to "maintain the status quo pending appeal, thereby preserving the

ability of the reviewing court to offer a remedy and holding at bay the reliance interests in the judgment that otherwise militate against reversal." *In re CGI Indus., Inc.*, 27 F.3d 296, 299 (7th Cir. 1994).  If a stay is not granted and action is taken in reliance on the judgment, "the positions of the interested parties have changed, and even if it may yet be *possible* to undo the transaction, the court is faced with the unwelcome prospect of 'unscrambl[ing] an egg.'"  *Id.* (emphasis in original; citation omitted).

Courts "consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other."  *See In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014) (citations omitted).

The nature of the showing required to justify a stay varies with the facts of each case. The "[p]robability of success is inversely proportional to the degree of irreparable injury evidenced.  A stay may be granted with either a high probability of success and some injury, or *vice versa*."  *Cuomo v. NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985) (emphasis in original); *see also FTC v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003) (per curiam) (granting stay of injunction and holding that if the moving party can establish "that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed").

These factors all point to the same conclusion: that the Court should "suspend[ ] judicial alteration of the status quo" on the important issues at stake here by staying any relief.  *See Nken v. Holder*, 556 U.S. 418, 429 (2009) (quotation marks omitted).

### B.   State Defendants are reasonably likely to succeed on the merits.

With respect to success on the merits, the Supreme Court has held that there must be a "strong showing" of likely success, not necessarily a *definitive* "likelihood of success" as in the preliminary injunction context.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Indeed, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay."  *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) (citations and internal quotations omitted).  State Defendants have, at the very least, established the existence of a substantial case on the merits for three reasons.  (*See also* Dkt. #102).

First, as discussed in greater detail in State Defendants' response brief (Dkt. #102), the Supreme Court emphasized in *U.S. v. Windsor* that the "'regulation of domestic relations' is 'an area that has long been regarded as a virtually exclusive province of the States.'"  133 S. Ct. 2675, 2691 (2013) (citations omitted).  This principle of deferring to the states in defining the

marital relation favors upholding the constitutionality of state marriage definitions. *Id.* at 2697 (Roberts, C. J., dissenting).

Second, *Windsor* carefully avoided opining directly on the constitutionality of state marriage laws. *See id.* at 2696 ("This opinion and its holding are confined to those [same-sex] marriages [made lawful by the State]."). *Windsor* cannot, therefore, undermine other decisions upholding traditional marriage laws. *See, e.g., Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006); *Jackson v. Abercrombie*, 884 F. Supp. 2d 1065 (D. Haw. 2012); *Sevcik v. Sandoval*, 911 F. Supp. 2d 996 (D. Nev. 2012).

Third, as discussed above, the Supreme Court has already stayed a permanent injunction issued by the District of Utah in *Kitchen* pending appeal.  134 S. Ct. 893.  And, other district courts and circuit courts of appeals have followed suit.  *See* 2-3, *supra*.

### C.    Irreparable harm will result absent a stay.

If the Court enters injunctive relief without an immediate stay, the State of Wisconsin and its citizens will be irreparably harmed.  "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Illinois Liberty PAC v. Madigan*, 902 F. Supp. 2d 1113, 1127 (N.D. Ill. 2012) (citing *Maryland v. King,* 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers)

(quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977) (Rehnquist, C.J., in chambers)); *Aid for Women v. Foulston,* 441 F.3d 1101, 1119 (10th Cir. 2006) (same); *Coalition for Econ. Equality v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (same)).   An injunction would not just enjoin Wisconsin from enforcing several of its statutes, but also a constitutional provision overwhelmingly approved by the people of this State in the core exercise of their sovereignty.   This supports a finding of irreparable injury.

Moreover, absent an immediate stay, clerks in Dane, Milwaukee, and Racine Counties (and possibly other counties) would be permitted to issue marriage licenses to same-sex couples.  The failures of the district courts in Utah and Michigan to immediately enter stays to preserve the status quo for appeal lead to chaos, confusion, uncertainty, and ultimately, further litigation.  State Defendants request this Court stay any injunctive relief to avoid similar results and their associated administrative burdens.  *See I.N.S. v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Labor*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (citing the "considerable administrative burden" on the government as a reason to grant a stay).

**D.      Public interests weigh in favor of a stay.**

In reversing the Middle District of Tennessee, the Sixth Circuit found "that the public interest requires granting a stay." *See Tanco*, No. 14-5297 at 2.      The Sixth Circuit quoted *Henry v. Himes*, No. 1:14-CV-129, 2014 WL 1512541 at *1 (S.D. Ohio Apr. 16, 2014):

> "[R]ecognition of same-sex marriages is a hotly contested issue in the contemporary legal landscape, and, if [the state's] appeal *is* ultimately successful, the absence of a stay as to [the district court's] ruling of facial unconstitutionality is likely to lead to confusion, potential inequity, and high costs.   These considerations lead the Court to conclude that the public interest would best be served by granting of a stay.   Premature celebration and confusion do not serve anyone's best interests.   The federal appeals courts need to rule, as does the United States Supreme Court."

*Tanco*, No. 14-5297 at 2.   These same public interest concerns are true here.

## CONCLUSION

In their response to Plaintiffs' motion for summary judgment, State Defendants explained Wisconsin's rational bases for its traditional marriage laws.   (*See* Dkt. #102).   If, however, this Court grants Plaintiffs' motion for summary judgment and enjoins enforcement of Wisconsin's marriage laws, it should at the same time immediately stay any relief which will preserve the status quo for when an appeal is filed.   If this Court declines to do so it should, at the very least, enter a limited stay so State Defendants may seek

an immediate stay from the Seventh Circuit or, if necessary, the United States Supreme Court.

Dated this 23rd day of May, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General

s/Timothy C. Samuelson
TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

THOMAS C. BELLAVIA
Assistant Attorney General
State Bar #1030182

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants,
Scott Walker, J.B. Van Hollen,
and Oskar Anderson

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 266-8690 (Bellavia)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*
*bellaviatc@doj.state.wi.us*