IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VIRGINIA WOLF, *et al.*,

      Plaintiffs,

    v.                         Case No. 14-C-00064-SLC

SCOTT WALKER, *et al.*,

      Defendants.

---

**PLAINTIFFS' OPPOSITION TO STATE
DEFENDANTS' MOTION FOR STAY**

---

"A request for a stay is a request for extraordinary relief." *Chan v. Wodnicki*, 67 F.3d 137, 139 (7th Cir. 1995). Moreover, a stay is "an exercise of judicial discretion" rather than "a matter of right," *Nken v. Holder*, 556 U.S. 418, 433 (2009), and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34. State Defendants ("Defendants") here have not met that burden, since they have not demonstrated that any of the four factors used in determining the propriety of a stay weighs in their favor.

Furthermore, the stay issued by the Supreme Court in *Herbert v. Kitchen*, 134 S. Ct. 893 (Jan. 6, 2014), need not control here. That stay was issued before the striking consensus emerged among the district courts that, in light of the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), state laws excluding same-sex couples from marriage cannot survive constitutional review. That stay was also issued without the benefit of Utah's own experience with marriages contracted under the district court's decision, which shows that

allowing same-sex couples to marry and then suspending that right does not lead to confusion or chaos.

Because Defendants have failed to meet their burden for a stay and circumstances have changed since the Supreme Court issued the stay in *Kitchen,* their motion for a stay (Dkt. # 116, "Motion") should be denied if this Court grants summary judgment in favor of Plaintiffs.

## I.   Defendants Have Not Shown That A Stay Is Justified Here.

In determining whether to exercise its discretionary authority to issue a stay, this Court must consider four factors:

> (1) whether appellant has made a showing of likelihood of success on appeal, (2) whether appellant has demonstrated a likelihood of irreparable injury absent a stay, (3) whether a stay would substantially harm other parties to the litigation, and (4) where the public interest lies.

*Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985) (citation omitted).   "The first two factors of the traditional standard are the most critical."   *Nken*, 556 U.S. at 434.   The Seventh Circuit has held that the party seeking a stay "must establish irreparable harm and a *significant probability* of success on the merits."   *Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997) (emphasis added).

Courts have therefore acknowledged that "[b]ecause the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied."   *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2904, at 503-05 (2d ed.1995) (footnotes omitted)).

## A.   Defendants Cannot Show A Likelihood Of Success On The Merits On Appeal.

The first factor, likelihood of success on the merits, weighs heavily against Defendants, as they must show a "significant probability" of success on appeal, *Bradford-Scott Data Corp.*, 128 F.3d 504, 505 (7th Cir. 1997)—a standard which they cannot meet.

Since the Supreme Court's decision last year in *United States v. Windsor*, 133 S. Ct. 2675 (2013), thirteen federal district courts across the country have reached the same conclusion:  the U.S. Constitution requires that states permit same-sex couples the freedom to marry.[1]  Not a single court has held otherwise.  This unanimous view of the law is a strong indication that if this Court rules in favor of Plaintiffs, Defendants are unlikely to succeed on the merits of their appeal.  At a minimum, this consensus forces the conclusion that Defendants cannot show a "significant probability" that the Court's decision will be reversed.

Further, as explained in Plaintiffs' Brief in Support of Their Motion for Summary Judgment (Dkt. # 71), the Defendants cannot even show a rational relationship between any legitimate government purpose and Wisconsin's marriage ban. Dkt. # 71 at 26-40; *see also* Dkt. # 111, Plaintiffs' Reply Brief in Support of Their Motion for Summary Judgment, at 22-47.

---

[1]      *See Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013); *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013); *Bishop v. United States ex rel Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014); *Bourke v. Beshear*, --- F. Supp. 2d ---, 2014 WL 556729 (W.D. Ky. Feb. 12, 2014); *Bostic v. Rainey*, 970 F. Supp. 2d 456 (E.D. Va. 2014); *Lee v. Orr*, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014); *De Leon v. Perry*, --- F. Supp. 2d ---, 2014 WL 715741 (W.D. Tex. Feb. 26, 2014); *Tanco v. Haslam*, --- F. Supp. 2d ---, 2014 WL 997525 (M.D. Tenn. Mar. 14, 2014) (issuing preliminary injunction); *DeBoer v. Snyder*, --- F. Supp. 2d. ----, 2014 WL 1100794 (E.D. Mich. Mar. 21, 2014); *Henry v. Himes*, --- F. Supp. 2d ---, 2014 WL 1418395 (S.D. Ohio Apr. 14, 2014); *Baskin v. Bogan*, --- F. Supp. 2d ---, 2014 WL 1568884 (S.D. Ind. Apr. 18, 2014) (issuing temporary restraining order); *Latta v. Otter*, --- F. Supp. 2d ---, 2014 WL 1909999 (D. Idaho May 13, 2014); *Geiger v. Kitzhaber*, No. 6:13-cv-01834 (D. Ore. May 19, 2014); *Whitewood v. Wolf*, --- F. Supp. 2d ---, 2014 WL 2058105 (M.D. Penn. May 20, 2014). There are fourteen decisions, but two of them – *Obergefell* and *Henry* – are from the same court and both address the Ohio marriage ban. *See also Wright v. Arkansas*, No. 60CV-13-2662 (Pulaski Cty. (Ark.) Cir. Ct., May 9, 2014);

However, Plaintiffs have shown that the marriage ban should be reviewed under a heightened standard of scrutiny, Dkt. # 71 at 8-15, 21-26; Dkt. # 111 at 8-22, a standard Defendants have not even attempted to satisfy.  *See* Dkt. #102, State Defendants' Brief In Opposition To Plaintiffs' Motion For Summary Judgment.

Defendants' arguments for why they are likely to succeed are extremely weak.  They first argue that states have traditionally regulated domestic affairs, so deference to state prerogatives in this area "favors upholding the constitutionality of state marriage definitions."  Motion at 7-8. Defendants rely on nothing more than the Chief Justice's dissent in *Windsor*, *id*. at 8, failing to note that the majority in that case reaffirmed the principle that "[s]tate laws defining and regulating marriage, of course, must respect the constitutional rights of persons."  *Windsor*, 133 S. Ct. at 2691. They next argue that because *Windsor* did not directly address marriage bans, it cannot "undermine other decisions upholding traditional marriage laws."  Motion at 8.  But thirteen federal district courts have found *Windsor*'s reasoning highly persuasive in deciding that excluding same-sex couples from marriage violates the U.S. Constitution.

Finally, Defendants simply note that the Supreme Court issued a stay in *Kitchen* and other courts have followed suit.  Motion at 8.  But as discussed further in Section II, *infra*, the circumstances that motivated the *Kitchen* stay no longer exist.

**B.      Defendants Cannot Show That They Will Suffer Irreparable Harm.**

Similarly, Defendants are unable to establish that they will suffer irreparable harm if a stay is not granted.  State Defendants' burden here is especially high.  As with preliminary injunctions, the Seventh Circuit applies a "sliding scale" approach to stays.  Thus, "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, *and vice versa*."  *In re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).  With slim chances of prevailing on appeal, State Defendants are obliged to show that

4

the balance of harms weighs very heavily in their favor, but they cannot show that **any** harm will result from allowing this Court's order to take effect.

Defendants cite the Seventh Circuit's statement in *Illinois Liberty PAC v. Madigan*, 902 F. Supp. 2d 1113, 1127 (N.D. Ill. 2012), that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Motion at 8. If this were sufficient harm to warrant a stay, then a state would always be entitled to a stay when a plaintiff has successfully challenged the constitutionality of a state statute. Clearly, this is not the law. *See Wisconsin Educ. Ass'n Council v. Walker*, 824 F. Supp. 2d 856, 876 (W.D. Wis. 2012) *aff'd in part, rev'd in part on other grounds*, 705 F.3d 640 (7th Cir. 2013) (overturning state statute without issuing a stay).

Moreover, citizens of Wisconsin have "no cognizable interest in enforcing laws that are unconstitutional. Indeed, the public interest is best served by preventing unconstitutional enforcement." *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009) (internal citations omitted). *See also Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest.").

State Defendants further claim that a stay is necessary to avoid the "chaos, confusion, uncertainty, and ultimately, further litigation," Motion at 9, that they claim resulted when district courts in Utah and Michigan declined to stay their orders overturning marriage bans, and same-sex couples were allowed to marry for a short interval. However, State Defendants fail to make a showing that either Utah or Michigan are or were in "chaos" as a result of the brief legalization of marriage for same-sex couples. If anything, the experiences of states like Utah, Michigan and California—where courts quickly confirmed the legality of marriages contracted in the interim

5

period before marriage bans were reestablished—show that the alleged confusion surrounding such marriages is minimal.  *See*, *e.g.*, *Evans v. Utah*, 2014 WL 2048343 (D. Utah May 19, 2014) (concluding that approximately 1,000 marriages of same-sex couples entered into under the District Court's decision in *Kitchen* were valid under Utah law); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 928, 1003 (N.D. Cal. 2010) (finding that "California . . . has not suffered any demonstrated harm as a result" of the issuance of 18,000 marriage licenses to same-sex couples before reinstatement of that state's marriage ban), *aff'd* 671 F.3d 1052 (9th Cir. 2012).[2]

State Defendants' argument is founded on the assumption that if this Court fails to stay its ruling, the Seventh Circuit or the U.S. Supreme Court will grant a stay, but neither court's decision is a certainty.  Further, Defendants' argument fails to acknowledge the uncertainty that same-sex couples confront daily in the absence of the freedom to marry.  These couples can never be completely confident that the arrangements they have made for themselves and their families will be respected when it most matters.  To take one particularly painful example, Karina Willes cannot be certain that the state or anyone else will respect her parental relationship with her and Kami Young's infant daughter in light of the State's refusal to place Karina's name on their daughter's birth certificate.  *See* Dkt. # 112-2 (Karina Willes' Responses to State Defendants' First Set of Interrogatories, at 16).  The harm alleged by the Defendants pales in comparison.

### C.    A Stay Would Substantially Harm Plaintiffs.

When a party seeks a stay pending appeal, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

---

[2]    Michigan couples who were married there have also sought recognition of their valid marriages, which the state has placed "on hold."  See *Caspar v. Snyder*, Case No. 14-CV-11499 (E.D. Mich., filed April 14, 2014).  Michigan's refusal to recognize those legal marriages does not constitute the "confusion" and "chaos" posited by Defendants.

requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987).  Karina's predicament vividly illustrates that any serious balancing of harms weighs decidedly in favor of Plaintiffs here.  A stay would inflict irreparable harms by prolonging the denial of Plaintiffs' rights under the Constitution.  A deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  *See also Doe v. Mundy*, 514 F.2d 1179 (7th Cir. 1975) (finding a constitutional violation of due process was an irreparable harm); *Milwaukee Cnty. Pavers Ass'n v. Fiedler*, 707 F. Supp. 1016, 1032 (W.D. Wis. 1989) (where violations of constitutional rights are alleged, a further showing of irreparable injury may not be required); *Back v. Carter*, 933 F. Supp. 738, 754 (N.D. Ind. 1996) ("[E]qual protection rights are so fundamental to our society that any violation of those rights causes irreparable harm."); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 743 F. Supp. 977, 996 (N.D.N.Y. 1990) ("When an alleged deprivation of a constitutional right is involved … no further showing of irreparable injury is necessary." (quotation marks and citations omitted)).

But as Karina's case shows, partners in a same-sex couple face daily harm from their inability to secure the protections and obligations of marriage, including the greater security marriage brings them in the event of illness, accident, death, or some other unanticipated crisis.  A stay would only prolong this harm, as it would prolong the harm of denying to Plaintiffs the full complement of federal benefits that come with marriage.  Further, a stay would allow the stigmatization of the Plaintiffs and their families from the marriage ban to continue.  Continued enforcement would "demean[] [same-sex] couple[s], whose moral and sexual choices the Constitution protects."  *Windsor*, 133 S. Ct. at 2694.  It would also "humiliate[]" Kami and Karina's daughter, along with all of Plaintiffs' children and all "children now being raised by

same-sex couples," by denying that one of the committed parents raising them is a parent at all. *Id*. Those dignitary harms cannot be undone, and will continue under a stay.

### D.     The Public Interest Is Best Served By Denying A Stay.

The fourth factor to be weighed in considering whether to grant a stay is "[w]here the public interest lies."  "[W]hen a Plaintiff sues a government entity to enjoin enforcement of a statute," the public interest and the balancing of harms "largely overlap." *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009) (internal quotation marks omitted), *aff'd sub nom. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010). The public has no interest in enforcing an unconstitutional statute.  *See Midwest Title Loans*, 616 F. Supp. 2d at 908 (S.D. Ind. 2009) ("[T]he public has no cognizable interest in enforcing laws that are unconstitutional.   Indeed, the public interest is best served by preventing unconstitutional enforcement.").  *See also Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) (ending a constitutional violation "would serve the public interest.").   At the same time, the public has no interest in depriving the Plaintiffs of the stability and benefits that marriage provides nor in perpetuating the legal and financial vulnerability to which Plaintiffs and their families are exposed. The diminished status accorded to same-sex couples and their families serves no one, and should not be allowed to continue.

## II.    The Court Need Not Be Bound By The Supreme Court's Stay In *Herbert v. Kitchen*.

As the foregoing discussion shows, actual consideration of the four factors pertinent to the issuance of a stay weighs in favor of denying State Defendants' motion.  State Defendants therefore lean heavily on the Supreme Court's decision to issue a stay in *Kitchen*.  This Court has likewise indicated that it is strongly influenced by that ruling.  Dkt. # 53 at 2-3.   But as State Defendants point out, "'the Supreme Court's order in *Herbert* is not in the strictest sense precedential.'"   Dkt. # 116 at 3 (*quoting Latta v. Otter*, No. 14-35420 (9th Cir. May 20, 2014)).

This Court is not obliged to follow the Supreme Court's lead, and should not do so for two reasons.

The stay in *Kitchen* was issued on January 6, 2014. *See Kitchen*, 134 S.Ct. 893. At that time, *Kitchen* was one of only two federal district court decisions overturning state marriage bans in the wake of *Windsor*.[3] Since that time, eleven more courts have ruled on the issue and as explained above, all of them have come out the same way: marriage bans are unconstitutional. Additionally, Utah's experience with valid marriages prior to the stay counsels a different result here. These subsequent developments mean that whatever assessment the Supreme Court in *Kitchen* may have implicitly made about the potential harm to the defendants from denying a stay, that analysis has now changed for two reasons.

First, the total uniformity of opinion in the district courts makes it far less likely that a reviewing court will come to a different conclusion regarding the constitutionality of denying same-sex couples the freedom to marry.

Second, according to State Defendants, the Supreme Court was motivated by the "confusion, potential inequity, and high costs" that might result from reversal of the district court's decision. But these dire predictions have not been borne out by experience. In Utah itself, where a thousand same-sex couples were married before the Supreme Court's stay effectively reinstated Utah's marriage ban, the issue of the status of those marriage has been resolved—they remain valid and must be recognized. *See Evans*, 2014 WL 2048343 (concluding that approximately 1,000 marriages of same-sex couples entered into under the District Court's decision in *Kitchen* were valid under Utah law and must be recognized by the state). The federal government also recognizes the Utah and Michigan marriages for purposes of

---

[3]     In the other case, *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013), the district court's ruling was not stayed.

federal protections and obligations.[4]   Utah's experience echoes California's, where 18,000 same-sex couples were married before the state reinstated a marriage ban by referendum.  The status of those marriages was resolved without "any demonstrated harm" to the state.   *See Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 928, 1003 (N.D. Cal. 2010), *aff'd* 671 F.3d 1052 (9th Cir. 2012).   These cases show that the concern about "confusion, potential inequity, and high costs" from a reversal of the Court's opinion in the absence of a stay is overstated, since they demonstrate that no confusion would result if the Seventh Circuit or the Supreme Court were to reverse a favorable ruling for the Plaintiffs in this case.   Any concern that a future cessation of marriages for same-sex couples would cause confusion is no longer warranted.

Because the Supreme Court's stay in *Herbert v. Kitchen* was issued before the legal consensus regarding marriage bans emerged and before Utah's own experience with interim marriages showed that the existence of such marriages does not create significant problems for the state, its persuasive force is diminished.  If the likelihood of success and the balance of harms favored a stay in *Kitchen*, they no longer do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny State Defendants' contingent motion for a stay, and allow any grant of summary judgment in favor of Plaintiffs to take immediate effect.


Dated: May 30, 2014                              By: /s Frank Dickerson
                                                 Counsel for Plaintiffs

---

[4]      *See* Statement by Attorney General Eric Holder on Federal Recognition of Same-Sex Marriages in Utah (Jan. 10, 2014), *available at* http://www.justice.gov/opa/pr/2014/January/14-ag-031.html; Statement by Attorney General Eric Holder on Federal Recognition of Same-Sex Marriages in Michigan (March 28, 2014), *available at* http://www.justice.gov/opa/pr/2014/March/14-ag-320.html.

JOHN A. KNIGHT
American Civil Liberties Union Foundation
Lesbian Gay Bisexual Transgender Project
180 North Michigan Avenue
Suite 2300
Chicago, Illinois 60601
(312) 201-9740
jaknight@aclu.org

LAURENCE J. DUPUIS
SBN: 1029261
American Civil Liberties Union of
Wisconsin Foundation
207 E. Buffalo Street, Suite 325
Milwaukee, Wisconsin 53202
(414) 272-4032
ldupuis@aclu-wi.org

JAMES D. ESSEKS
American Civil Liberties Union Foundation
Lesbian Gay Bisexual Transgender Project
125 Broad Street
New York, New York 10004
(212) 549-2623
jesseks@aclu.org

HANS J. GERMANN
GRETCHEN E. HELFRICH
FRANK DICKERSON
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
(312) 782-0600
hgermann@mayerbrown.com
ghelfrich@mayerbrown.com
fdickerson@mayerbrown.com