IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

VIRGINIA WOLF, *et al.*,

      Plaintiffs,

     v.                                  Case No. 14-CV-64

SCOTT WALKER, *et al.*,

      Defendants.

## STATE DEFENDANTS' RESPONSE
## IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES

## INTRODUCTION

On January 16, 2015, the U.S. Supreme Court granted petitions for certiorari in four cases involving state bans on same-sex marriage. (*See* Dkt. #179.)   The Supreme Court is likely to resolve the issue of the constitutionality of state bans on same-sex marriage this June.   Given the timing of the Supreme Court's action, this Court should not rule on Plaintiffs' attorneys' fees motion until it is clear that this Court's judgment need not be vacated.   If the Court chooses to dispose of Plaintiffs' motion now, it should consider the following response and reduce Plaintiffs' request accordingly.

For several months following the Seventh Circuit's decision affirming this Court's judgment, the parties negotiated Plaintiffs' statutory claim for

attorneys' fees, culminating in an unsuccessful mediation before Magistrate Judge Oppeneer. (Dkt. #162.) Although they do not generally contest that Plaintiffs are prevailing parties for purposes of an award of attorneys' fees under 42 U.S.C. § 1988, the State Defendants[1] oppose Plaintiffs' motion for an award of attorneys' fees, costs, and expenses primarily because their attorneys' stratospheric claimed hourly rates grossly exceed the prevailing market rate for civil rights attorneys in the Western District of Wisconsin.

Plaintiffs seek nearly $1.25 million in attorneys' fees for approximately 2,400 hours billed by more than a dozen attorneys from five different offices across the country. Those facts alone should give the Court pause. Plaintiffs' overreaching request is not justified by Plaintiffs' supporting papers, nor does it reflect prevailing market rates. Plaintiffs' motion should be denied in part, as explained in this response.

---

[1]Defendants Scott Walker, Brad D. Schimel, and Oskar Anderson are collectively referred to as the "State Defendants." Schimel is substituted for Van Hollen by Rule 25(d).

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 1988, the Court may, "in its discretion," award "a reasonable attorney's fee as part of the costs" to a fee applicant in an action to enforce a provision of 42 U.S.C. § 1983. "The amount of the fee . . . must be determined on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In deciding what constitutes a reasonable award of attorneys' fees, the starting point is the "lodestar" analysis, which requires the Court to multiply the number of hours reasonably spent by the applying party's attorneys by their reasonable hourly rates. *Id.* at 433.  The burden is on the applicant to present evidence of the reasonableness of the hours worked and the requested fees. *Id*. District courts have "discretion in determining the amount of the fee award." *Id.* at 437.

"'[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Connolly v. Nat'l Sch. Bus Serv., Inc.,* 177 F.3d 593, 596 (7th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In determining an attorney's rate, a court should look to the rate the attorney actually charges his paying clients. *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992). If an attorney's actual billing rate is unknown "because, for example, the attorney has no fee-paying

clients," a court should look to the next best evidence of the market rate. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999).

An attorney's rate must be reasonable. A reasonable hourly rate is "one that is derived from the market rate for services rendered." *Jimenez v. City of Chicago*, No. 09-C-8081, 2012 WL 5512266, at *1 (N.D. Ill. Nov. 12, 2012) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). An attorney's "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). In determining the market rate, a court should look to "the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Blum*, 465 U.S. at 895 n.11).

The Court must look to the rates charged by other lawyers in the community to establish a cap upon the allowable rate set at the prevailing market rate. *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) ("It is no more reasonable to pay a lawyer $1,000 an hour for services that can be obtained at $200 an hour than it is to pay $1,000 for an automobile hood ornament that you could buy elsewhere for $200"). Thus, an applicant may be entitled to the rate he or she would charge paying clients, but "the

reasonable fee is capped at the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought.*" *Id.* (emphasis in original).

Local market rates are used to evaluate the reasonableness of a prevailing party's attorneys' rates for fee shifting issues. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003).

If the fee applicant meets its burden of providing satisfactory evidence that their requested rates are those prevailing in the community, then the burden shifts to the defendant to prove that there is a good reason why a lower rate is warranted.  *Connolly*, 177 F.3d at 596 (citations omitted). The Court may make its own rate determination if the applicant fails to meet its evidentiary burden. *Uphoff*, 176 F.3d at 409.

The fee applicant must also submit evidence of the hours reasonably spent on the litigation. "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004); *see also Hensley*, 461 U.S. at 434 (noting that "[c]ases may be overstaffed"). The applicant must make a good faith effort to exclude from the fee request any hours that were unnecessary or redundant. *Hensley*, 461 U.S. at 434. "Put another way, hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute

- 5 -

such as" 42 U.S.C. § 1988. *Spegon*, 175 F.3d at 552. District courts "are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009).

Once the Court calculates the lodestar amount, it may discount that amount based upon a number of factors, including evidence of fee "awards in similar cases." *Hensley*, 461 U.S. at 430 n.3. The "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

# ARGUMENT

Plaintiffs request attorneys' fees totaling $1,237,632 based on 2,393.09 hours at rates up to $980/hr. Their fee request is excessive because the claimed hourly rates far exceed prevailing market rates in the Western District of Wisconsin, and the total time billed is unreasonable. The State Defendants are filing their proposal regarding recoverable fees under prevailing market rates as Exhibit A to the Declaration of Clayton P. Kawski. Exhibit A summarizes the State Defendants' position regarding fees.   The State Defendants do not object to Plaintiffs' claimed costs.

## I. Plaintiffs' attorneys' hourly rates exceed prevailing market rates for civil rights attorneys in the Western District of Wisconsin.

Plaintiffs' attorneys' hourly rates are unreasonable because they exceed the prevailing market rates for civil rights attorneys in the Western District of Wisconsin.

Some, but not all, of Plaintiffs' attorneys submitted declarations in support of their fee request. (*See* Dkts. #166, 167, 169, 170, 171.) Attorneys Dupuis, Esseks, and Knight filed declarations. (Dkts. #166, 167, 171.)  As public interest lawyers with the ACLU, they identify no clients who pay their claimed rates. Attorney Kadish filed a declaration on behalf of all Mayer Brown attorneys and staff. (*See* Dkt. #170.) The Kadish Declaration purports to substantiate the rates for current and former Mayer Brown attorneys,

paralegals, and staff at its Chicago and New York offices. Plaintiffs also submitted three declarations of attorneys not associated with this case in an attempt to justify their attorneys' rates. (*See* Dkts. #165, 168, 172.) None satisfy the burden of establishing that the rates requested are in line with the prevailing rates for civil rights attorneys in the Western District of Wisconsin.

### A. Plaintiffs have the burden of proving that their claimed rates are reasonable.

Plaintiffs have the burden of proving a reasonable hourly rate for purposes of attorneys' fees calculations under 42 U.S.C. § 1988:

> In seeking a fee award under § 1988, a lawyer must "do more than merely request an hourly rate; he must present evidence that the requested rate is his actual billing rate." Such evidence may be obtained from a variety of sources, including a small sample of the hours the lawyer has billed other clients or fee awards received in similar cases. However, an "attorney's self-serving affidavit alone cannot satisfy a plaintiff's burden of establishing market value for that attorney's services."

*Frami v. Ponto*, No. 02-C-515-C, 2003 WL 23120023, at *3 (W.D. Wis. July 7, 2003) (citations omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Teresa R. v. Madison Metro. Sch. Dist.*, 615 F. Supp. 2d 860, 862 (W.D. Wis. 2009) (internal quotation marks and citation omitted).

**B.    The relevant market is for civil rights attorneys within the Western District of Wisconsin.**

In evaluating the reasonableness of Plaintiffs' attorneys' claimed hourly rates, the relevant market is for civil rights attorneys within the Western District of Wisconsin.

Attorneys' fees awarded under 42 U.S.C. § 1988 are based on reasonable market rates for services rendered. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992). Although the general rule is that an attorney's actual billing rate is presumed reasonable, that is subject to two qualifications: the practice area and the location of the market.

**1.    Plaintiffs' rates are capped at prevailing market rates for civil rights practitioners.**

An "important qualification" to the general rule that an attorney's actual billing rate is presumed reasonable is that "the reasonable fee is capped at the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought.*" *Cooper*, 97 F.3d at 920 (emphasis in original). This case was a civil rights lawsuit brought under 42 U.S.C. § 1983. Thus, the reasonableness of Plaintiffs' attorneys' requested rates is measured against prevailing market rates for similar services, or, as is the case here, rates of comparable civil rights practitioners. *Id.*

*Cooper* discussed a hypothetical circumstance where an attorney's usual and customary rate was $1,000/hr for antitrust litigation, but he was entitled to an award of fees for successfully prosecuting a civil rights lawsuit where the prevailing market rate for civil rights practitioners was $200/hr. 97 F.3d at 920-21. Under such a circumstance, the recoverable rate would be $200/hr. *Id.* at 920 ("It is no more reasonable to pay a lawyer $1,000 an hour for services that can be obtained at $200 an hour than it is to pay $1,000 for an automobile hood ornament that you could buy elsewhere for $200. Judges have to be careful when they are spending other people's money.").[2]   As applied to this case, the hourly billing rates of Plaintiffs' attorneys' should be capped at the prevailing market rate for civil rights lawyers. *Id.*

## 2. The relevant market is the Western District of Wisconsin.

"A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community. Generally, the relevant community is one in which the district court sits." *Day v. Astrue*, No. 07-CV-507-BBC, 2009 WL 3757014, at *5 (W.D. Wis. Nov. 5, 2009)

---

[2]The Seventh Circuit identified two additional qualifications: billing efficiency that justifies a higher rate and "perfectly transferrable" skills resulting in "a much better outcome." *Cooper*, 97 F.3d at 920.  Neither applies here, as made evident by comparing the attorneys' fee bills, as well as the results in this matter, to similar same-sex marriage litigation in Idaho. *See Latta v. Otter*, No. 13-cv-00482-CWD, 2014 WL 7245631, at *6 (D. Idaho Dec. 19, 2014) (awarding $397,300 in attorneys' fees and $4,363.08 in litigation expenses to prevailing plaintiffs in same-sex marriage litigation). *See also infra*, at 13.

(citations and internal quotation marks omitted). The relevant market is the Western District of Wisconsin.

Several exceptions to the general rule exist.[3] If, for example, no local attorneys could have provided the claimed services, a plaintiff may be awarded fees for high-priced, out-of-town lawyers. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). The Seventh Circuit discussed the standard:

> If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service. On the other hand, there are undoubtedly services which a local attorney may not be willing or able to perform. The complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally.

*Id.* Conversely, a court may reduce an out-of-town attorney's billing rates where services of equal quality could have been available in the area where the legal services were rendered. *See Mathur*, 317 F.3d at 744; *Jeffboat*, 553 F.3d at 490-91 (a court may adjust out-of-town counsel's rates downward where local counsel could have provided comparably effective legal services);

---

[3]Where the "subject matter of the litigation is one where the attorneys practicing it are highly specialized" the community may be the "community of practitioners" in the national market. *Jeffboat, LLC v. Dir. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Although Esseks and Knight had specialized expertise in LGBT litigation, the Kadish Declaration does not claim that *any* Mayer Brown attorneys possessed such expertise. (*See* Dkt. #170.) Regardless, the subject matter of this lawsuit was not so "highly specialized" that it would have required counsel from beyond the district. Indeed, many similar lawsuits were filed across the country and involved local law firms (as opposed to national firms), that achieved largely the same result. *See* n.2, *supra*; n.9, *infra*.

*Am. Knights of Ku Klux Klan v. City of Auburn, Ind.*, 179 F.R.D. 228, 235 (N.D. Ind. 1997) (finding "that there was no need for Plaintiff to use the services of out of town counsel" and therefore, "[f]or purposes of determining a reasonable fee predicated on the prevailing market rate, the relevant community [was] Ft. Wayne.")

The evidence does not show that Plaintiffs were unable to find any attorneys in the district, or even in Wisconsin, who were willing to take their case. In Plaintiffs' declarations, ACLU attorneys claim to have "ruled out two large Wisconsin firms . . . because they had recently said they would not work on litigation with LGBT subject-matter" and that "partners at two other large Wisconsin firms . . . declined to be involved." (Dkt. #166, ¶¶ 14, 15; *see also* Dkt. #171, ¶ 9). Beyond this, their declarations are silent regarding efforts to retain local counsel. And their billing records are similarly scant, suggesting minimal, if any, attempt was made to find Wisconsin counsel. At most, Knight's billing records show he spent half an hour trying to retain counsel,[4] although his records make no mention that the counsel he contacted was located in Wisconsin.

And there was no need for Plaintiffs to use the services of out-of-town counsel. In similar litigation arising out of Idaho's statutory and

---

[4]*See* Dkt. #171-1 at 1 (only two billing entries exist, totaling .6 hours, to retain "cooperating" or "possible volunteer" firms; Knight billed a total of 404.50 hours).

constitutional laws prohibiting same-sex marriage, the plaintiffs retained local, Boise, Idaho counsel and the National Center for Lesbian Rights (NCLR). Even though no out-of-town big firms were involved, the Idaho plaintiffs still prevailed. *See Latta v. Otter*, 19 F. Supp. 3d 1054 (D. Idaho 2014). But their fee petition was about one-half of what Plaintiffs seek here. *See Latta v. Otter*, No. 13-cv-00482-CWD, 2014 WL 7245631, at *6 (D. Idaho Dec. 19, 2014) (awarding $397,300 in attorney fees based upon rates ranging from a high of $400/hr for the plaintiff's lead counsel to a low of $175/hr for an NCLR staff attorney with five years' experience).[5] They achieved this result despite the defendant *state*, not the plaintiffs, hiring a team of high-profile expert lawyers to bolster its litigation efforts.[6]

---

[5]The Idaho plaintiffs filed a supplemental motion for fees and expenses following the Ninth Circuit's mandate. *See Latta v. Otter*, No. 13-cv-00482-CWD (Dkts. #147 & 147-1) (seeking $297,475.00 for appeal to the Ninth Circuit and two petitions for a writ of certiorari to the U.S. Supreme Court). A copy of the supplemental motion and supporting memorandum is available online at the following URL: http://tinyurl.com/pan4bcy. Thus, for a litigation of similar duration before the district court, appeal to the Ninth Circuit, and two cert petitions to the Supreme Court, the Idaho plaintiffs' fee claim was about half of what the Wisconsin plaintiffs claim here.

[6]The Idaho state defendants retained attorney Monte Neil Stewart and his firm to litigate and argue the state's case. Stewart, a former judicial law clerk to Chief Justice Warren Burger, is the founding president of the Marriage Law Foundation and has been hired by several states to defend their marriage laws in same-sex marriage litigation. *See Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859 (8th Cir. 2006); *see also Sevcik v. Sandoval*, No. 12-17668 (9th Cir.) (representing Intervenor-Defendant-Appellee Coalition for the Protection of Marriage). If ever a case demanded big firm litigation experts to counter a state's external counsel with same-sex marriage litigation expertise, the Idaho litigation would have been it.

- 13 -

Plaintiffs have also failed to establish that local attorneys were unavailable or could not have adequately litigated this case or achieved a similar result.  As shown in litigation arising out of 2011 Wis. Act 10 and the protests in the Wisconsin State Capitol following Act 10, as well as voter photo ID and abortion legislation, it is likely that several, if not many, Wisconsin lawyers would have been both willing and able to handle the case competently and effectively, both before this Court and on appeal to the Seventh Circuit.  Thus, the relevant community for determining the prevailing market rates for civil rights attorneys should be the Western District of Wisconsin.

Plaintiffs suggest that circumstances warranted their high-priced team of litigators from around the country. (*See, e.g.,* Dkts. #172, ¶ 9; 164 at 8.) Although certain factors could warrant steep rates similar to those charged, none were present here.

A client could reasonably pay somewhat higher rates to achieve, for example, time savings based counsel's specialized expertise. Such a client would expect, however, that the hours billed would reflect that efficiency. Based upon Plaintiffs' evidence, Esseks and Knight—but none of Plaintiffs' other attorneys—arguably possess expertise justifying an "expert" rate.[7]  But

_____

[7]The State Defendants do not object to Knight's claimed rate of $450/hr. Although Esseks has expertise in LGBT litigation, his claimed rate of $650/hr is

despite their experience litigating other same-sex marriage cases,[8] and the existence of many other similar cases with publicly available briefs and court opinions—including at least eight opinions issued prior to commencement of briefing in this matter[9]—few efficiencies were achieved here that would justify counsel's rates or the level of staffing.  There is no evidence in the record that this case required, at times, the work of a dozen or more attorneys to litigate it effectively or that achieving expedited relief was imperative.  For example, Plaintiffs abandoned their preliminary injunction motion after the Court suggested that relief would be stayed even if the Court granted the motion.  (*See* Dkts. #53, 55.)

---

well beyond prevailing market rates for civil rights attorneys is the Western District of Wisconsin. Accordingly, the State Defendants request the Court reduce Esseks' rate to $520/hr consistent with the Laffey Matrix maximum rates.

[8]The ACLU litigated the constitutionality of state-based traditional marriage laws in at least three cases prior to the present action. *See, e.g., Lee v. Orr*, No. 13-CV-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014); *Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013) (filing an amicus brief only); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014); *DeBoer v. Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014). *See also* Esseks Declaration, Dkt. #167, ¶¶ 8-9.

[9]*See Kitchen*, 961 F. Supp. 2d 1181; *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013); *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla.); *Bostic v. Rainey*, 970 F. Supp. 2d 456 (E.D. Va. 2014); *DeLeon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014); *Tanco v. Haslam*, 7 F. Supp. 3d 759 (M.D. Tenn. 2014); *Bourke v. Beshear*, 996 F. Supp. 2d 542 (W.D. Ky. 2014); *DeBoer v. Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014).

## C.   Plaintiffs' declarations do not support that the hourly rates claimed are market rates.

The declarations from three civil rights attorneys not involved with this case are flawed and do not support the hourly rates claimed as market rates. (*See* Dkts. #165, 168, 172.) Although several of the declarants claim to maintain certain billable rates, none provide evidence that any of their paying clients actually pays these rates. *See Cintas v. Perry*, 517 F.3d 459, 469-70 (7th Cir. 2008) ("the best evidence of whether attorneys' fees are reasonable is whether a party has paid them"). The evidence Plaintiffs submitted in support of their motion for attorneys' fees is, as discussed below, insufficient to establish the claimed rates as prevailing market rates in the Western District of Wisconsin for civil rights litigation.

### 1.   Jeff Scott Olson Declaration

Plaintiffs submit the Declaration of Jeff Scott Olson in support of their motion for attorneys' fees. (Dkt. #172.) Olson asserts that he is a national and statewide expert in civil rights litigation whose "standard hourly billing rate has been five hundred fifty dollars per hour" since January 1, 2014. (Dkt. #172, ¶ 10.) His eighth year associate's rate is $330/hr. (*Id.*, ¶ 12.) He claims to charge $150/hr for paralegals and law clerks. (*Id.*, ¶¶ 13-14.)   Yet Plaintiffs' attorneys' claimed rates vastly exceed the benchmark set by their own witness.

Olson's Declaration is insufficient in several respects. Although Olson is familiar with Dupuis and his credentials, (*id.*, ¶ 19), presumably from having served as co-counsel with him, Olson does not vouch for the skill, ability, or reputation of any other attorney. Olson claims, based upon an unidentified "extensive study," (*id.*, ¶ 20), to know the "the range of hourly rates charged to paying clients by attorneys of similar skill, reputation and ability in this community," but he does not say what it is. Nor does he cite any objective, empirical evidence (*e.g.*, the Survey of Law Firm Economics, Matter Benchmark Reports, the National Law Journal's annual Billing Survey, the Laffey Matrix, or surveys from state bar associations[10]) in support of his opinions.

Next, although he asserts that "a large proportion of my income has come from paying clients paying for my services at my regularly hourly rates," he submits no evidence showing that any of his clients, in fact, actually paid him $550/hr for his legal services in 2014. Olson does not provide any evidence that he has actually billed any of his clients—hourly clients, contingency fee clients, or otherwise—his claimed rate or his associate's claimed rate. Olson provides no distinction between his rate for civil rights cases under § 1983 versus his rates for other types of cases

---

[10]*See, e.g.*, the State Bar of Wisconsin's *Economics of Law Practice in Wisconsin: 2013 Survey Report,* and Dianne Molvig, *A Changing Landscape: The Economics of Practicing Law*,  http://tinyurl.com/mf46gng.

(*e.g.*, employment litigation, animal rights, or other practice areas identified on Olson's firm's website).

The Olson Declaration also lacks foundation to establish the prevailing market rate for Illinois attorneys. He, for example, states that he has "made efforts to keep up with" the rates charged by Illinois attorneys but does not say what those efforts were, whether they were objective, or whether they were based upon empirical evidence.  (Dkt. #172, ¶ 22.)  He is not an Illinois-licensed attorney. He does not claim to be a client paying the fees of an Illinois licensed attorney. His blanket statement that the Plaintiffs' attorneys' claimed rates are not beyond those "charged to affluent paying clients," is neither the relevant standard, nor does it address the reasonableness of rates. (*Id.*)  In short, Olson lacks the foundation necessary to support opinions regarding the reasonableness of Illinois attorneys' rates.

Finally, he opines Plaintiffs' attorneys' bills were reasonable "both in the aggregate . . . and with respect to *each individual task*." (*Id.*, ¶ 24 (emphasis added).) Yet he does not claim to have reviewed all pleadings. His opinions are, at most, limited to the unspecified "key documents" that he reviewed. (*Id.*)

### 2.    Michael R. Fox Declaration

Plaintiffs submit the Declaration of Michael R. Fox in support of their motion for attorneys' fees. (Dkt. #168.) Fox asserts his firm has been "rated as

the number one plaintiff's employment law firm in Wisconsin" and that he is "one of the 100 top trial lawyers" in the State. (*Id.*, ¶ 4.) His claimed rate is $650/hr. (*Id.*, ¶ 6.) He does not identify the rates for any of the five other attorneys associated with his firm.[11] Fox claims to be familiar with the rates charged by Wisconsin and Illinois[12] attorneys, but he fails to identify a range of rates charged by attorneys of comparable experience and skill.

Although Fox reviewed the fee petition and all fee bills, he did not claim to have reviewed all underlying pleadings, motions, briefs, and other litigation documents. (*Id.*, ¶ 8.)  He makes no representation that his review of the pleadings was complete or even representative. Yet he concludes that "the case was efficiently litigated." (*Id.*, ¶ 13.)  He lacks foundation for this opinion.

He also curiously opines that the work in this case "easily triples" his work in *Dubin v. Board of Madison Area Technical College District*, No. 10-CV-00035-wmc (W.D. Wis.).  (Dkt. #168, ¶ 11.)  *Dubin* was a three-and-one-half year long employment discrimination case with extensive discovery, depositions, motion practice, a multi-day jury trial, post-trial briefing, and

---

[11]In 2011, the rate for Fox's colleague Randall B. Gold (1985 graduate) was $375/hr and James F. Miller, Jr. (1975 graduate) was $400/hr. *See* Dkt. #163 at 4, in *Dubin v. Bd. of Madison Area Tech. Coll. Dist.*, No. 10-CV-35-wmc (W.D. Wis.).

[12]Although Fox's firm maintains office space in Chicago, Fox is not licensed to practice in Illinois or any of its federal district courts. *See* *http://www.fox-law.com/Attorneys/Michael-R-Fox.shtml*.

several post-trial appeals. Fox sought attorneys' fees and expenses totaling $531,081.25; he was awarded $438,308.75 in fees and $16,307.97 in costs. (*See* link to Justia.com at Dkt. #168, ¶ 6.)   This case, in contrast, was litigated in roughly six months, decided on the parties' briefs with limited discovery and no depositions, and featured only two district court appearances by counsel.

### 3.    Anne L. Clark Declaration

Plaintiffs submit the Declaration of Anne L. Clark in support of their motion for attorneys' fees. (Dkt. #165.) Clark is licensed in Massachusetts and New York,[13] and her firm is located in New York City. She asserts that her firm's rates range from $450-750/hr for partners, but she does not explain the bases for these varying rates (*e.g.*, years of practice, expertise, practice area, etc.). (*Id.*, ¶ 2.)

Although Clark vouches for Esseks' work product as being of high quality, she does not claim to have reviewed *any* of the litigation documents upon which his bills were based. (*Id.*, ¶ 6.) Yet she conjectures that *if* Esseks were employed at her firm (he is not) *and* had paying clients (he does not) that those hypothetical clients would have *likely* been willing to pay $700/hr

---

[13]Clark is not licensed to practice law in Wisconsin or Illinois and has not been admitted to practice in the Western District of Wisconsin. She cites no Wisconsin cases—or even cases arising out of the districts comprising the Seventh Circuit—in support of her opinion that Plaintiffs' attorneys' claimed fees are prevailing market rates for the Western District of Wisconsin. As such, she lacks foundation to provide opinions regarding the reasonableness of Wisconsin or Illinois attorneys' rates.

for his services. (*Id.*) Clark's speculative claims lack foundation and should be disregarded for purposes of assessing the reasonableness of Esseks' rates.

### 4.    Laurence J. Dupuis Declaration

Plaintiffs submit the Declaration of Laurence J. Dupuis in support of their motion for attorneys' fees. (Dkt. #166.) He billed 436.79 hours at a rate of $450/hr totaling $196,555.50. (*See* Dkt. #164 at 12.)

The State Defendants do not dispute the number of hours billed by Dupuis but strongly object to his claimed rate of $450/hr. When Dupuis and the ACLU of Wisconsin have litigated cases against the State of Wisconsin and its agencies, he has never before claimed fees in excess of $300/hr. Thus, Dupuis' claim of $450/hr here includes a 50% premium on his usual and customary rate. Unlike Knight and Esseks, Dupuis claims no expertise in LGBT litigation and was not lead counsel in this case. The State Defendants object to Dupuis' claimed $450/hr rate as being beyond his usual and customary rate and inconsistent with the prevailing market rate for civil rights attorneys of similar experience, ability, and reputation in the Western District of Wisconsin.   The State Defendants believe that—based upon the $300/hr rate—Dupuis's fees should be reduced to $131,037.00.

### 5.    James Esseks Declaration

Plaintiffs submit the Declaration of James Esseks in support of their motion for attorneys' fees. (Dkt. #167.) He billed 126.30 hours at a rate of $650/hr totaling $82,095.000. (*See* Dkt. #164 at 12.)

The State Defendants do not dispute the number of hours billed by Esseks but object to his claimed rate of $650/hr. Although Esseks was lead counsel on appeal before the Seventh Circuit, and has expertise litigating same-sex marriage constitutional cases, (*see* Dkt. #167, ¶¶ 8-9), his rates are nonetheless beyond the prevailing market rate for civil rights attorneys in the Western District of Wisconsin or the Seventh Circuit and inconsistent with the evidence presented by Plaintiffs. The Court should limit Esseks' hourly rate to $520/hr per the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and reduce any award for his services to $65,676.00.

### 6.      John Knight Declaration

Plaintiffs submit the Declaration of John Knight in support of their motion for attorneys' fees. (Dkt. #171.) He billed 404.50 hours at a rate of $450/hr totaling $182,025.00. (*See* Dkt. #164 at 12.) The State Defendants do not dispute the number of hours billed by Knight. Nor do the State Defendants object to Knight's claimed rates of $450/hr, based upon his role as lead counsel, (*id.*, ¶ 7), and his particularized expertise as Director of LGBT & HIV Project of the Roger Baldwin Foundation and a Senior Staff Attorney for the LGBT & HIV Project of the ACLU.

### 7.      Gretchen Helfrich Declaration

Plaintiffs submit the Declaration of Gretchen Helfrich in support of their motion for attorneys' fees. (Dkt. #169.) Helfrich is a 2009 law school graduate. (Dkt. #169, ¶ 3.) In August 2014, Helfrich left Mayer Brown and became associated with Loevy & Loevy, a prominent Chicago-based civil rights law firm. At Mayer Brown, her practice "included complex commercial dispute resolution, ranging from class action litigation to international and domestic arbitration." (*Id.*, ¶ 7.) At Loevey & Loevy, her "cases involve almost exclusively civil rights litigation" (*Id.*, ¶ 8.) At Mayer Brown, she billed 525.25 hours at a rate of $565/hr totaling $296,766.25. (Dkt. #164 at 12.) At Loevy & Loevy, she billed 25.50 hours at a rate of $300/hr totaling $7,650.00. (*Id.*)

Helfrich's practice at Loevy & Loevy is "almost exclusively" civil rights litigation, precisely what this case is. (Dkt. #169, ¶ 8.) Ms. Helfrich, and presumably her work product, remained the same when she transitioned from Mayer Brown to Loevy & Loevy, but her rates were cut drastically. (*Compare Id.*, ¶ 9 *with* Dkt. #164 at 12). This is the best evidence of the value of her legal services as a civil right litigation attorney within the Chicago market—a market that greatly exceeds the Western District of Wisconsin.

The evidence presented is insufficient to establish that $565/hr is reasonable for a fifth-year associate attorney in a civil rights litigation in the Western District of Wisconsin. Although Helfrich claims in her declaration that her "requested rate" is currently $400/hr, she admittedly "do[es] not bill clients for [her] time." (Dkt. #169, ¶ 9.) And she does not identify a single court that has *ever* valued her services at $400/hr. Although both Olson and Fox opine that Helfrich's rates were reasonable, neither explains the gross fluctuation between her Mayer Brown and Loevy & Loevy rates. Plaintiffs correctly valued Helfrich's services for civil rights litigation at Loevy & Loevy at $300/hr. (Dkt. #164 at 12.) The Court should apply Helfrich's $300/hr rate to all of her billed hours, resulting in a total of $157,575.00 for her Mayer Brown hours and $7,650.00 for her Loevy & Loevy hours.

### 8.   Marc R. Kadish Declaration

Plaintiffs submit the Declaration of Marc Kadish in support of their motion for attorneys' fees. (Dkt. #170.) Kadish is Mayer Brown's Director of Pro Bono Activities and Litigation Training. (*Id.*) He billed 13.50 hours in this case at a rate of $555/hr, totaling $7,492.50. (*See* Dkt. #164 at 12.) He does not claim to maintain a commercial practice.  (Dkt. #170, ¶ 2.)  Instead, he "act[s] as the billing partner for all pro bono matters." (*Id.*, ¶ 3)

Kadish asserts that the rates claimed here "are the rates that Mayer Brown regularly charges clients whether the work is performed in Illinois or outside the State. Clients regularly and willingly pay these rates for the work of these lawyers." (*Id.*, ¶ 5.) But he identifies no clients who actually pay these rates for civil rights litigation. Nor is any proof of payment disclosed to establish that the firm's clients have, in fact, paid these rates for these attorneys in civil rights cases.

Kadish is not licensed to practice in Wisconsin and has not been admitted to practice before this Court. He did not appear in this case.

The Court should not award Plaintiffs anything for Kadish's services. As shown by Exhibit B to the Kadish Declaration cataloging the Mayer Brown billing entries, (Dkt. #170-2), Kadish's involvement was purely administrative. (*See, e.g.*, Dkt. #170-2 at 3 (billing 1.0 hours for "Emails to set up meeting.").) Per his billing records, Kadish's work was limited to

scheduling meetings, conferring with colleagues, and sending emails. Administrative tasks such as these are not compensable. *Spegon*, 175 F.3d at 553 (disallowing time for administrative tasks). Even if his services were compensable, his claimed rate of $555/hr far exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. Despite charging the rates of an expert, he performed the services of an administrator.

The Kadish Declaration is also insufficient to establish the prevailing market rate for other Mayer Brown personnel, as discussed below.

### D. Plaintiffs' evidence regarding Mayer Brown attorneys and staff is insufficient and does not establish that the rates claimed are prevailing market rates.

In addition to reducing the fees of ACLU counsel, as outlined herein, the Court should also reduce the fees requested by Plaintiff's Mayer Brown lawyers. The claimed rates are not market rates.

#### 1. Mary Anderson

The Kadish Declaration does not support Plaintiffs' claim for 140.50 hours of Anderson's billable time at the rate of $425/hr, totaling $59,712.50. The Kadish Declaration does not, for example, identify Anderson's date of graduation, the law school she attended, her practice group or any specialty, or even whether she is an attorney licensed to practice law in any state or before any federal district court. According to the Illinois Attorney

Registration & Disciplinary Commission[14] website, Anderson was admitted to practice law in Illinois in October 2013. She has not been admitted in Wisconsin or by this Court. She did not appear in this case. Although her ARDC registered business address shows Mayer Brown, her name does not appear on the firm's website in any capacity, perhaps because she is clerking at the Sixth Circuit Court of Appeals. (*See* Dkt. #170, ¶ 15.)

Assuming the ARDC database is correct, when Anderson billed time in this case, (*see* Dkt. #170-2 at 3-29), she was a first-year associate with about two months of professional experience. Yet her claimed rate of $425/hr was on par with Knight's, a senior ACLU attorney with 10+ years of experience as Senior Staff Attorney and program director. Anderson's rate is greater than the prevailing market rates for civil rights attorneys in the Western District of Wisconsin. The Court should limit Anderson's hourly rate to $255/hr consistent with the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and reduce any award for Anderson's services to $35,827.50.

### 2.    Paige Becker

The Kadish Declaration does not support Plaintiffs' claim for 7.75 hours of Becker's billable time at the rate of $285/hr totaling $2,208.75. The Kadish

---

[14]The ARDC operates under the authority of the Illinois Supreme Court, which has sole authority to regulate the admission and discipline of lawyers in Illinois. *See* _http://www.iardc.org/_. Administrative responsibility for the registration and discipline of Illinois lawyers has been delegated by the Illinois Supreme Court to the ARDC. The ARDC website includes a "lawyer search" function, allowing a public record search of all Illinois attorneys, both active and inactive.

Declaration does not, for example, identify Becker's date of graduation, if any, or the law school she attended or still attends. Defendants cannot confirm that Paige Becker is, in fact, a licensed attorney in any state, even though Plaintiffs identified her as an attorney in their brief. (*See* Dkt. #164 at 11.) Becker does not appear to be licensed to practice law in Illinois, New York, or Wisconsin. She is not listed on the Mayer Brown website. A Google search of Becker's name suggests she may be a law student at the University of Michigan Law School. Under the circumstances, based on a lack of support in the Kadish Declaration, it is questionable whether any market for Becker's professional services exists. The Court should not award Plaintiffs anything for Becker's claimed services. Alternatively, the Court should limit Becker's hourly rate to $150/hr consistent with the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and the Olson Declaration (*see* § I.C.1., *supra*) and reduce any award for Becker's services to $1,162.50.

### 3.   Timothy Bishop

The Kadish Declaration does not support Plaintiffs' claim for 81.75 hours of Bishop's billable time at the rate of $980/hr totaling $80,115. Bishop is a 1985 graduate and is a partner with Mayer Brown. The Kadish Declaration does not identify his practice group or any specialties. Bishop is not licensed to practice law in Wisconsin, has not been admitted to practice before this Court, and did not appear in this case. Although Bishop's

credentials are impressive, his claimed rate vastly exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Bishop's hourly rate to $505/hr consistent with *Fox ex rel. Fox v. Barnes*, No. 09-C-5453, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 13, 2013) (awarding $505/hr for experienced civil rights attorneys with great level of skill and success), (*see* § I.F., *infra*), and reduce any award for Bishop's services to $41,283.75.

### 4.    Frank Dickerson

The Kadish Declaration does not support Plaintiffs' claim for 307.75 hours of Dickerson's billable time at the rate of $555/hr totaling $170,523.75. Dickerson is a 2010 graduate and is an associate with Mayer Brown. He is not licensed to practice law in Wisconsin. The Kadish Declaration does not identify his practice group or any specialties. His claimed rate exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Dickerson's hourly rate to $300/hr consistent with the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and Plaintiffs' valuation of Helfrich's services for civil rights litigation at Loevy & Loevy, (Dkt. #164 at 12), and reduce any award for Dickerson's services to $92,325.00.

### 5. Hans Germann

The Kadish Declaration does not support Plaintiffs' claim for 62 hours of Germann's billable time at the rate of $705/hr totaling $43,710. Germann is a 2001 graduate and is a partner with Mayer Brown. He is not licensed to practice law in Wisconsin. The Kadish Declaration does not identify his practice group or any specialties. His claimed rate exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Germann's hourly rate to $330/hr consistent with the Olson Declaration (*see* § I.C.1., *infra*) and reduce any award for Germann's services to $20,460.00.

### 6. Gretchen Helfrich (*see also* § I.C.7, *supra*)

The Kadish Declaration does not support Plaintiffs' claim for 525.25 hours of Helfrich's billable time at the rate of $565/hr totaling $296,766.25. Helfrich is a 2009 graduate, (*see* Dkt. #169, ¶ 4), and was formerly an associate at Mayer Brown. She is not licensed to practice law in Wisconsin. Her claimed rate exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Helfrich's hourly rate to $300/hr, as valued by Plaintiffs for her hours billed at Loevy & Loevy, (Dkt. #164 at 12), and reduce any award for Helfrich's services that she provided while at Mayer Brown to $157,575.00.

### 7.   Rebecca Klein

The Kadish Declaration does not support Plaintiffs' claim for 118 hours of Klein's billable time at the rate of $480/hr totaling $56,640. Klein is a 2011 graduate and is an associate with Mayer Brown. Klein is not licensed to practice law in Wisconsin, has not been admitted to practice before this Court, and did not appear in this case. The Kadish Declaration does not identify any claimed specialties or areas of expertise. Her claimed rate exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Klein's hourly rate to $255/hr consistent with the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and reduce any award for Klein's services to $30,090.00.

### 8.   Linda Shi

The Kadish Declaration does not support Plaintiffs' claim for 17 hours of Shi's billable time at the rate of $480/hr totaling $8,160. Shi is a 2013 graduate and is an associate with Mayer Brown. Shi is not licensed to practice law in Wisconsin, has not been admitted to practice before this Court, and did not appear in this case. The Kadish Declaration does not identify any claimed specialties or areas of expertise. Her claimed rate exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Shi's hourly rate to $255/hr

consistent with the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and reduce any award for Shi's services to $4,335.00.

### 9.     Kristin Silverman

The Kadish Declaration does not support Plaintiffs' claim for 27.25 hours of Silverman's billable time at the rate of $595/hr totaling $16,213.75. Silverman is a 2008 graduate and is an associate with Mayer Brown. Silverman is not licensed to practice law in Wisconsin, has not been admitted to practice before this Court, and did not appear in this case. The Kadish Declaration does not identify any claimed specialties or areas of expertise. Her claimed rate exceeds the prevailing market rate for civil rights attorneys in the Western District of Wisconsin. The Court should limit Silverman's hourly rate to $300/hr consistent with the Laffey Matrix, (*see* § I.G., *infra*; Kawski Decl., Ex. B), and Plaintiffs' valuation of Helfrich's services for civil rights litigation at Loevy & Loevy, (Dkt. #164 at 12), and reduce any award for Silverman's services to $8,175.00.

### 10.     Mayer Brown paralegals and staff

The Kadish Declaration does not support Plaintiffs' claim for 99.75 hours of "paralegals & support" personnel at hourly rates averaging $278.25 and totaling $27,755.[15] An hourly rate of $278.25 is significantly higher than the rates for many experienced civil rights attorneys in Chicago, much less

---

[15]The average hourly rate for these paralegal and support personnel was calculated by dividing $27,755 by 99.75 hours (=$278.25/hr).

the Western District of Wisconsin. *See, e.g.*, *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (affirming district court's award of $175/hr for civil rights attorneys with two and five years of experience).

The Kadish Declaration does not identify by name the paralegals or administrative support staff[16] or discuss their experience, background, or credentials, making impossible any determination of whether the biller was capable of performing substantive legal work or whether their claimed rates were objectively reasonable.

Much of the paralegals' and support staffs' billing was for purely administrative tasks. (*See, e.g.,* Dkt. #170-2 at 30 (0.5 hours billed by Alexis Baker on 6/3/14 to e-file plaintiffs' motion to immediately lift stay).) Administrative work is not compensable. *Spegon*, 175 F.3d at 553 (disallowing time spent on administrative or non-professional tasks, including hours billed by paralegals).

And many of the bills submitted by the paralegal or support staff are vague. (*See, e.g.*, Dkt. #170-2 at 29 (4.0 hours billed by Joshua Lobert on 6/17/14 for "Doing follow up work on Wisconsin marriage matter.").) This, too,

---

[16]Exhibit A to the Kadish Declaration identifies rates for each biller. Exhibit B includes the fee bills. Neither exhibit identifies the biller's title, whether he or she was a paraprofessional or administrative staff, or provides any detail regarding the biller's background and experience.

makes impossible any objective determination of the reasonableness or necessity of the tasks performed.

The Court should disallow all of Plaintiffs' claimed paralegal and administrative support staff time because it is impossible to determine from the evidence what work was sufficiently complex to justify paralegal work as opposed to non-professional or non-paraprofessional services. *See Spegon*, 175 F.3d at 553 (allowing deductions based upon "whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.") (citation omitted). Plaintiffs have not met their burden of establishing the reasonableness and necessity of the claimed bills.

If the Court awards Plaintiffs' fees for claimed paralegal time (but not administrative support staff time), it should reduce their paralegal rates to $150/hr consistent with the Laffey Matrix (*see* § I.G., *infra*; Kawski Decl., Ex. B) and the Olson Declaration (*see* § I.C.1., *infra*). If, for sake of argument, all 99.75 hours were attributable to paralegals (and by the billing records, this does not appear to be the case), the Court should reduce any award for Plaintiffs' claimed paralegal services to $14,962.50.

**E.     The State Defendants' evidence shows that Plaintiffs' claimed rates are not prevailing market rates.**

The State Defendants are filing evidence to show that Plaintiffs' attorneys' claimed rates do not equate to prevailing Wisconsin market rates for this type of complex civil rights litigation.  Several attorney declarations confirm that Plaintiffs' rates are excessive. (*See* Declaration of Richard M. Esenberg; Kawski Decl., Exs. D, E, F (attorney declarations filed in decennial legislative redistricting cases in the Eastern District of Wisconsin); Kawski Decl., Exs. G, H (attorney affidavits filed in Capitol protester cases).)

### 1.     Declaration of Richard M. Esenberg

Rick Esenberg is the founder and general counsel of the Wisconsin Institute for Law & Liberty ("WILL"), a public interest legal center and think tank that promotes the public interest in individual liberty, economic freedom, constitutionally limited government, and the rule of law.  (*See* Esenberg Decl., ¶¶ 3, 8.)  Attorney Esenberg is admitted to practice in this District and the Eastern District of Wisconsin, in the Supreme Courts of the United States and Wisconsin, in the Seventh Circuit, and has been admitted *pro hac vice* in courts throughout the United States. (*Id.*, ¶ 2.)  He graduated from Harvard Law School in 1981 and practiced with Foley & Lardner LLP in Milwaukee from 1981 to 1997, first as an associate and then as a litigation

partner. (*Id.*, ¶¶ 4-5.)  His practice has focused on civil litigation in state and federal appellate courts in Wisconsin and throughout the nation, including the Metropolitan Milwaukee School desegregation case, redlining cases, prisoners' civil rights litigation, cases brought under the Voting Rights Act, and a variety of other constitutional challenges. (*Id.*, ¶ 5.)  He is also adjunct faculty at Marquette University Law School.  (*Id.*, ¶ 7.)

Attorney Esenberg's practice at WILL has focused on civil rights and public interest litigation, including cases under 42 U.S.C. § 1983.  (*Id.*, ¶ 9.)  Among the latter cases are actions challenging local ordinances and actions for violating the First and Fourth Amendments and state campaign finance regulations for violating the First and Fourteenth Amendments to the United States Constitution.   (*Id.*)    Recent cases include *Vanden Boogart v. Christensen,* No. 12-CV-491 (E.D. Wis.); *Fred M. Young, Jr. v. Timothy Vocke, et al.,* No. 13-CV-635 (E.D. Wis.); and *CRG Network* v. *Thomas Barland, et al.,* No. 14-CV-719 (E.D. Wis.). (*Id.*)

Attorney Esenberg testifies to the rates WILL bills for civil rights litigation in the Wisconsin market.   Since January 1, 2013, Attorney Esenberg's standard hourly billing rate has been $375/hr for the civil rights litigation he has handled with WILL.  (*Id.*, ¶ 13.)

WILL's current standard hourly rate for the services of Brian McGrath, senior counsel with WILL, is also $375/hr.  (*Id.*, ¶ 14.)  He is a graduate of

Harvard Law School.  (*Id.*, ¶ 15.)  Attorney McGrath has been in practice as senior counsel with WILL since May, 2013.  (*Id.*, ¶ 14.)  Prior to that time, he was a litigation partner with Foley & Lardner LLP for 30 years. (*Id.*)  He handled general commercial litigation while at Foley & Lardner and is a former chairperson of the firm's Milwaukee Litigation Department.  (*Id.*)  Attorney McGrath has been peer review rated as AV® Preeminent,™ the highest performance rating in Martindale-Hubbell's peer review rating system, and he is also listed in *Chambers USA: America's Leading Business Lawyers* (2005-12) and was selected in the 2007-11 *Wisconsin Super Lawyers*® lists.  (*Id.*, ¶ 16.)  He was also selected by his peers for inclusion in *The Best Lawyers in America*® in the area of commercial litigation, franchise law.  (*Id.*)

WILL's current standard hourly rate for the services of Tom Kamenick, who is employed by WILL as associate counsel, is $225/hr.  (*Id.*, ¶ 17.)  Attorney Kamenick joined WILL at its founding in the summer of 2011.  (*Id.*)  He graduated magna cum laude from Marquette Law School in 2009, was an editor of the Marquette Law Review, and was judicial law clerk to Wisconsin Supreme Court Justice Michael J. Gableman for the 2009-10 term.  (*Id.*)  Attorney Kamenick has handled civil rights litigation while at WILL.  (*Id.*)

Based upon his personal knowledge—and WILL's review—of the hourly rates charged by attorneys who litigate civil rights and other complex civil

litigation in this litigation market, it is Attorney Esenberg's opinion that the rates sought by Plaintiffs' lawyers in this action are generally outside the range of hourly rates charged to paying clients by attorneys of similar skill, reputation, and ability in the Wisconsin legal community.  (*Id.*, ¶¶ 19-20.) Based upon his and WILL's experience and review of rates in the Milwaukee market for complex litigation, Attorney Esenberg understands that "rates for associates are in the range $175-400 per hour, young partner rates are in the range of $350-500 per hour and senior partner rates are in the range of $475-675 per hour." (*Id.*, ¶ 22.)  It is his opinion that "the hourly rates sought by Plaintiffs' counsel in this case, and in particular by the Chicago Mayer Brown attorneys who worked on this case, are much higher than rates that would be expected to be charged to paying clients for civil rights litigation work in the Wisconsin legal market." (*Id.*, ¶ 23.)

WILL attorneys Richard Esenberg and Brian McGrath are examples of very experienced and highly-regarded civil rights litigators in the Wisconsin litigation market.  They are comparable in reputation, experience, and skill to Plaintiffs' attorneys like Laurence Dupuis.  The rates that Esenberg and McGrath command for complex civil rights litigation in Wisconsin should be higher than Dupuis's customary rate of $300/hr, however, as Dupuis has fewer years of relevant litigation experience.

WILL attorney Tom Kamenick is an example of a less-experienced, but still highly-regarded, civil rights attorney in the Wisconsin market. The rates of less-experienced Mayer Brown associates like Helfrich and Dickerson should be closer to Kamenick's rate of $225/hr than the excessive $500+/hr rates Plaintiffs claim.

### 2. Declarations filed in legislative redistricting litigation in the Eastern District of Wisconsin

The State Defendants are submitting declarations that were filed by the plaintiffs' counsel in litigation before a three-judge panel in the Eastern District of Wisconsin regarding decennial legislative redistricting. (*See* Kawski Decl., Exs. D, E, F.) These declarations further confirm that Plaintiffs' attorneys' claimed rates are excessive, particularly in light of the similarly-complex and high-profile nature of the redistricting cases in relation to the instant case.

In *Baldus v. Brennan*, No. 11-CV-562 (E.D. Wis.)/*Voces de la Frontera v. Brennan*, No. 11-CV-1011 (E.D. Wis.), Godfrey & Kahn, S.C. (Madison) litigation partner Douglas M. Poland filed a declaration listing his hourly rate as $385/hr. (Kawski Decl., Ex. D at 4.) Poland is a 1994 graduate of the Loyola University Chicago School of law and has practiced complex civil litigation for more than 17 years. (*Id*. n.1.) Prior to joining Godfrey & Kahn

in Madison, Poland was a partner in the Litigation Practice Group at the Chicago office of Kirkland & Ellis LLP.  *See* http://tinyurl.com/pdkp4pm.

The rate that Poland commands is comparable to the rates of other experienced Wisconsin civil rights attorneys like WILL attorneys Esenberg and McGrath, as described above.

Poland's associate attorneys, Dustin B. Brown, Wendy K. Arends, and Aaron A. Seligman, billed their time at rates of $255/hr, $255/hr, and $185/hr, respectively.  (*Id* at 4-5.)  Brown is a 2007 graduate of New York University School of Law, practiced complex civil litigation for more than four years, including service as a federal law clerk.  (*Id.* n.2.)  Arends and Seligman graduated in 2007 and 2011, respectively.  (*Id.* n.3, n.4.)

These Godfrey & Kahn civil litigation associate rates are comparable to the hourly rate of WILL attorney Tom Kamenick for Wisconsin civil rights litigation, as described above.  The Godfrey & Kahn associate rates are much less than the $500+/hr rates claimed by Plaintiffs' similarly-experienced Mayer Brown associates.

Poland's affidavit in *Baldus/Voces* also lists a rate of $125/hr for paralegal Jacqueline M. Schwartz of Godfrey & Kahn, S.C. in Madison.  (*Id.* at 8.)  This is less than half of what Plaintiffs claim for Mayer Brown.

Attorney Peter Earle filed a declaration in *Baldus/Voces* in support of his claim to recoup attorneys' fees at his regular hourly rate of $425/hr for his

representation of the *Voces* plaintiffs.  (Kawski Decl., Ex. E at 3.)  Earle is a 1988 graduate of IIT Chicago Kent College of Law and practices civil litigation in the Eastern District of Wisconsin.  (*See id.* at 1-2.)  He has litigated a number of complex civil cases, including arguing before the Wisconsin Court of Appeals, Wisconsin Supreme Court, and Seventh Circuit.  (*Id.*)  He recently successfully litigated a noteworthy appeal challenging the validity of Wisconsin's risk contribution doctrine, *Gibson v. American Cynamid*, 760 F.3d 600 (7th Cir. 2014).  (*Id.* at 2.)

Attorney Earle has similar civil rights litigation experience as WILL attorneys Esenberg and McGrath, as described above, and his rate is comparable but a little higher.  Earle has been practicing law for about 10 years longer than Attorney Dupuis, and this explains why is rate is higher than Dupuis's customary rate of $300/hr.

Attorney Jacqueline Boynton of Milwaukee also filed a declaration in *Baldus/Voces* in support of her claim to recoup attorneys' fees at a rate of $150/hr for her representation of the *Voces* plaintiffs.  (Kawski Decl., Ex. F at 2.)  Attorney Boynton is a 1985 Marquette Law School graduate and an adjunct professor in the Political Science Department at UW-Milwaukee and at Marquette Law School.  (*Id.* at 1-2.)

The rates that the State Defendants' evidence illustrates are consistent with rates recently awarded in the Western District for specialized civil

litigation.     *See   Sierra   Club   v.   Jackson*,   No.   11-CV-315-WMC,
2013 WL 5409036, at *4 (W.D. Wis. Sept. 25, 2013) (finding $415/hr was
reasonable for experienced attorneys with 13 and nine years of experience
with specialized Clean Air Act experience; within the Madison-Milwaukee
market, "a successful law firm partner at a local or regional firm with ten to
fifteen years of litigation experience might expect to command a rate between
$300 and $400/hour; an attorney with five to ten years of experience typically
bills between $250 and $350/hour.")

### 3.   Affidavits   of   Jeff   Scott   Olson   and Pamela R. McGillivray filed in state circuit court Capitol protester cases

Finally, the State Defendants are submitting the declarations of Jeff
Scott Olson and Pamela R. McGillivray that were filed in *State of Wisconsin
v. Susanne U. Breckenridge*, Nos. 2013FO2105 & 2013FO2396 (Dane Co. Cir.
Ct.).  (Kawski Decl., Exs. G, H.)  These are two Capitol protester cases that
involved—as a defense—First Amendment challenges to Department of
Administration administrative rules.  These affidavits reflect lower rates for
civil rights litigators in the Madison market than those that Plaintiffs claim.

McGillivray filed an affidavit in *Breckenridge* to support her request for
fees.  (Kawski Decl., Ex. G.)  She graduated *cum laude* from the University of
Wisconsin Law School in 1999.  (*Id.*, ¶5.)  She is admitted to practice law in
Wisconsin state courts, the Eastern and Western Districts of Wisconsin, the

Northern District of Illinois, the Western District of Michigan, and the Seventh Circuit. (*Id.*) She has over 15 years of experience litigating civil rights cases in federal courts and administrative tribunals. (*Id.*, ¶ 6.) She serves on the executive committee of the ACLU of Wisconsin's board of directors. (*Id.*, ¶ 8.) She states that she was awarded attorneys' fees at an hourly rate of $415/hr in an environmental case, *Sierra Club v. Jackson*, No. 11-CV-315-WMC (W.D. Wis.). (*Id.*, ¶ 9.) She also states that she was awarded attorneys' fees at a rate of $300/hr by the Madison Equal Opportunities Commission in 2013. (*Id.*)

In his affidavit, Olson attests to his familiarity with prevailing rates for civil rights litigators in the Madison market, in particular, for McGillivray's services. (Kawski Decl., Ex. H, ¶¶ 6-7.) He states: "Based on my knowledge of prevailing market rates for [litigators like McGillivray] in Wisconsin, and on my familiarity with the experience and qualifications of Ms. McGillivray, I can attest that a rate of over $300/hour in this case is reasonable and commensurate with current market rates in [sic] for such services performed by attorneys of similar skill, reputation and experience to Ms. McGillivray in Dane County." (*Id.*, ¶ 7.)

In sum, some of the most probative evidence in the record of prevailing market rates for experienced civil rights attorneys in Wisconsin are the declarations filed with this response brief. The stratospheric rates sought by

Plaintiffs' attorneys are outside what typical Wisconsin attorneys of comparable skill would have charged for similar work.

###    F.    Plaintiffs' attorneys' rates are excessive, even if the market was for civil rights attorneys in Chicago.

The relevant market is for civil rights attorneys in the Western District of Wisconsin. (*See* § I.B., *supra*.) Even if the Chicago market were determined to be the relevant geographic market, Plaintiffs' attorneys' claimed rates would still greatly exceed prevailing rates for that higher-priced market.

To put Plaintiffs' attorneys' claimed rates in perspective, Jon Loevy, founding partner of the Loevy & Loevy firm and a civil rights attorney with 20 years of experience, was awarded $495/hr in November 2012. *See Jimenez*, 2012 WL 5512266, at *2. In *Jimenez*, the Northern District of Illinois recognized $495 as "amply justified by comparison with hourly rates awarded to other plaintiff's civil rights attorneys in Chicago, including rates of $500 to $535 for attorneys who have more years of experience but no greater level of skill or rate of success, and $400 to $425 for attorneys with equivalent or less experience and more modest histories of success."[17] A year later, after similar success, Loevy sought—and was awarded—$505/hr. *See Fox ex rel. Fox v. Barnes*, No. 09-CV-5453, 2013 WL 4401802, at *2-3 (N.D. Ill. Aug. 13, 2013).

---

[17]Loevy's *Jimenez* rate has been used as a reference point for rates in civil rights litigation in the Northern District of Illinois. *See Morjal v. City of Chicago,* No. 12-CV-185, 2013 WL 2368062, at *6 (N.D. Ill. May 29, 2013) (relying on Jon Loevy's hourly rates as a touchstone for the hourly rates of other plaintiff's civil rights lawyers).

The awards in *Jimenez* and *Fox* set the upper limit for civil rights attorneys in the Chicago market, a more costly market than the Western District of Wisconsin.

In support of his *Fox* fee petition, Loevy submitted an Expert Report of Bruce R. Meckler, Esq. It was attached as an exhibit to the *Fox* fee petition and is being filed here as Exhibit C to the Declaration of Clayton P. Kawski. There, Meckler opined based upon objective, empirical evidence,[18] that an appropriate measure for Loevy and his colleagues would be the "ninth decile" of attorney rates charged by counsel as reported by the Survey of Law Firm Economics.[19] The range of ninth decile rates as reported by the SLFE range from a low of $295/hr for attorneys with less than two-years' experience to a high of $632/hr for attorneys with 31 or more years experience.[20] (Kawski Decl., Ex. C at 10.) The rates for paraprofessional and support staff range from $100 to $245/hr. (*Id.*)

---

[18]Meckler's opinions were based upon evaluations of, among other things, the Survey of Law Firm Economics ("SLFE"), Westlaw's Matter Benchmark Reports, the National Law Journal's annual Billing Survey, the Laffey Matrix, and surveys from state bar associations. (*See* Kawski Decl., Ex. C at 4-5.)

[19]Meckler's opinions were based upon 2012 SLFE data. (Kawski Decl., Ex. C at 10 n.10.) Given that nearly all of Plaintiffs' attorneys' work was performed in 2014, a slight increase in rates may be justified if so indicated by objective, empirical data.

[20]The ninth decile SLFE rates are reflective of Plaintiffs' attorneys' credentials, experience, and Chicago legal market. In comparison, according to LexisNexis, the average U.S. law firm partner bills at $381/hr. *See* Enterprise Legal Management Trends Report, 2013 Mid-Year Edition, at 2 (available at *http://www.lexisnexis.com/counsellink/documents/CounselLink-ELM-web.pdf*). And litigation attorneys average a rate of $340/hr. *Id.* at 18.

Here, nearly all of the rates claimed by Plaintiffs' attorneys' exceed the SLFE benchmark. In so doing, they exceed the prevailing Chicago market rates for civil rights attorneys, a market described as being "among the more expensive legal markets nationally." (Kawski Decl., Ex. C at 9.)

Applying the SLFE rates to Plaintiffs' attorneys' claimed hours, without taking any deductions, their total fees would range from a low of $890,983.20 to a high of $964,324.25.

**G.     The Laffey Matrix provides an upper limit of hourly rates.**

The Laffey Matrix provides an alternative objective upper limit of hourly rates. The 2014-15 Laffey Matrix is being filed as Exhibit B to the Kawski Declaration.

"The Laffey Matrix is a chart of hourly rates published by the U.S. Attorney's Office for the District of Columbia, which some circuits use to help determine a reasonable fee under fee-shifting statutes." *Montanez*, 755 F.3d at 554. Although the Seventh Circuit has "expressed some skepticism about applying the Laffey Matrix outside Washington, D.C.," it has "left it to trial judges to exercise their discretion in evaluating its usefulness in any particular case." *Id.*; *see also Moore v. Midland Credit Mgmt., Inc.*, No. 12-CV-166-TLS, 2012 WL 6217597, at *4 (N.D. Ind.

Dec. 12, 2012) (finding that the Laffey Matrix provides "a general range for billing rates that is useful").

The Laffey Matrix is instructive here insofar as it sets an upper limit for a prevailing plaintiff's attorneys' rates for purposes of a 42 U.S.C. § 1988 analysis. *See Johnson v. McMahon*, No. 05-C-0129-C, 2007 WL 5614102, at *7 (W.D. Wis. Feb. 13, 2007) (stating that the Laffey Matrix provides "at least some foundation" to establish an attorney's rate). Courts within this Circuit have also suggested that the Laffey Matrix may be adjusted downward to reflect lower Wisconsin rates. *See Johll v. Colvin*, No. 13-CV-630-JDP, 2014 WL 6607463, at *2 & n.2 (W.D. Wis. Nov. 19, 2014) (adjusting the Laffey Matrix to the "Minn/WI" locality yields rates "closer to $285 and $240 per hour for 2013-14"); *see also Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010) (concluding that Laffey Matrix rates, based on the D.C. market, should be adjusted downward for the lower cost of living in Chicago).

Many district courts within the Seventh Circuit consider the Laffey Matrix in determining the reasonableness of rates. *See, e.g., Hadnott v. City of Chicago*, No. 07-C-6754, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (noting that "numerous judges in this district have considered the Laffey Matrix as at least one factor"); *see also Soleau v. Ill. Dep't of Transp.*, No. 09-C-3582, 2011 WL 2415008, at *4 (N.D. Ill. June 11, 2011) (describing the Laffey Matrix as a "well-established neutral source" that has

been widely accepted by federal courts); *Berg v. Culhane*, No. 9-C-5803, 2011 WL 589631, at *3 (N.D. Ill. Feb. 10, 2011) (finding the Matrix constitutes "satisfactory evidence"). Courts that have refused to apply the Laffey Matrix have often done so where a prevailing plaintiff attempts to *increase* his or her rates beyond their true market value. *See, e.g., Montanez*, 755 F.3d at 554-55 (affirming district court's refusal to award rates based on the Laffey Matrix where counsel's rates were lower than Matrix rates).

The 2014-2015 Laffey Matrix is an objective point of reference for civil rights attorneys' fees in the Washington, D.C. market. Under the Laffey Matrix, the maximum recoverable hourly rates for attorneys range from a low of $255/hr for attorneys with one to three years' experience to a high of $520/hr for attorneys with 20+ years' experience. Paralegals and claims rates are capped at $150/hr. Applied to Plaintiffs' attorneys' fee claims here—without adjusting downward for Wisconsin or deducting unreasonable fees—their claim would be reduced to $874,259.

## II.  The State Defendants do not generally object to Plaintiffs' attorneys' claimed hours, but some hours are unreasonable.

Although the number of hours claimed by Plaintiffs' attorneys was enormous, and their litigation team overstaffed, with a nod towards the Court's "goal . . . to do rough justice," *see Fox*, 131 S. Ct. at 2216, the State

Defendants do not generally object to the number of claimed hours. Several exceptions, however, are discussed below.

### A. Plaintiffs should not recover fees for what appear to be questionable, over-billed days.

Plaintiffs should not recover all of their attorneys' fees for what appear to be questionable, superhuman billing days. It is unreasonable for an attorney to bill a paying client 10 to 14 hours in one day for drafting a brief.[21] Attorneys are not robots and do not work like them. Several of Plaintiffs' billing entries challenge one's credulity and common sense:

| Staff | Description | Dkt. #170-2 Page | Date | Hours | Amount |
|-------|-------------|------------------|------|-------|--------|
| Dickerson | Draft motion for preliminary injunction. | 11 of 65 | 2/12/2014 | 10.50 | $ 5,355.00 |
| Dickerson | Draft preliminary injunction motion. | 11 of 65 | 2/13/2014 | 12.00 | $ 6,120.00 |
| Helfrich | Finalize declarations. Revise brief. Revise amended complaint, other drafting related to filing.  Calls with plaintiffs re declarations | 15 of 65 | 2/25/2014 | 10.00 | $ 5,400.00 |
| Helfrich | Revise brief. Finalize declarations and fact statements. Revise other | 16 of 65 | 2/26/2014 | 11.50 | $ 6,210.00 |

[21]Plaintiffs' attorneys' also, on occasion, submitted block bills (*e.g.*, 14.00 hours billed by Helfrich on 5/19/14 for "finalize reply brief and file"). *See Joe Hand Promotions, Inc. v. Zani*, No. 11-C-4319, 2014 WL 958716 at *3 (N.D. Ill. Mar. 11, 2014) (finding that although block billing is not prohibited, courts may partially or even completely reduce block-billed time). This would be an alternative basis for reducing Plaintiffs' attorneys' claimed hours, including Helfrich's 5/19/14 bill.

| | | | | | |
|---|---|---|---|---|---|
| | documents related to PI filing. Call with plaintiffs re declarations | | | | |
| Dickerson | Draft reply brief | 25 of 65 | 5/14/2014 | 10.25 | $ 5,227.50 |
| Helfrich | Finalize reply brief and file | 26 of 65 | 5/19/2014 | 14.00 | $ 7,560.00 |
| Helfrich | Research and draft memo in opposition to appellate jurisdiction. Call re memo. | 28 of 65 | 6/10/2014 | 12.00 | $ 6,480.00 |
| Helfrich | Finish and file jurisdiction memo. Begin research on reply in support of injunction. | 28 of 65 | 6/11/2014 | 12.00 | $ 6,480.00 |
| Dickerson | Draft response brief. | 33 of 65 | 7/24/2014 | 12.00 | $ 6,660.00 |
| | | | **TOTALS** | **104.25** | **$ 55,492.50** |

Although some of this billed time is certainly legitimate, at least some
most certainly is not. The State Defendants request the Court reduce
Plaintiffs' claimed fees by 1% for their attorneys' objectively unreasonable
and unreliable billing entries. *See Diamond Waste, Inc. v. Monroe Cnty.*,
908 F. Supp. 974, 977 (M.D. Ga. 1995) (refusing to accept fourteen-hour days
as "superhuman"); *see also Harper*, 223 F.3d at 605 (explaining that a district
court may strike or reduce billing entries that do not appear reasonable).

**B.    Plaintiffs are not entitled to recover attorneys' fees
relating to their claims challenging the Evasion Statute.**

Plaintiffs are not entitled to recover attorneys' fees relating to their
claims challenging Wis. Stat. § 765.30(1) (the so-called "Evasion Statute")

because they did not prevail on them. *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989).

Plaintiffs asserted claims against defendants Van Hollen, King, and Chisholm relating to their hypothetical enforcement of the Evasion Statute. (*See* Dkt. #1, ¶¶ 4, 15, 16, 19 (Complaint); Dkt. #26, ¶¶ 7, 20, 21, 24, 25 (First Amended Complaint).)  When the case was filed, the Evasion Statute was key to Plaintiffs' litigation strategy. *See, e.g.*, Jessica VanEgeren, *ACLU suit to undo Wisconsin's gay marriage ban reveals 'marriage evasion' law*, The Capital Times, Feb. 4, 2014, *available at* http://tinyurl.com/kczdeoy; Patrick Marley, *ACLU lawsuit challenges Wisconsin same-sex marriage ban*, Milwaukee Journal Sentinel, Feb. 3, 2014, *available at* http://tinyurl.com/l3y6rzw.

Defendants King and Chisholm stipulated they would not initiate prosecutions under the statute. (Dkt. #55-1.) The State Defendants moved to dismiss, claiming the statute did not apply and that Evasion Statute claims against King and Chisholm were moot. (Dkt. #67.) Plaintiffs agreed, (*see* Dkt. #95 at 2-3), but did not withdraw their Evasion Statute claims against Van Hollen.

On April 30, 2014, the Court granted the State Defendants' motion to dismiss Evasion Statue claims as to King and Chisholm. (Dkt. #97 at 3-4.) The Court's June 6, 2014, Opinion and Order does not mention the Evasion

Statute or otherwise dispose of Plaintiffs' claims challenging it. (Dkt. #118.) Nor does the Court's judgment find in Plaintiffs' favor for claims arising out of the Evasion Statute. (Dkt. #136.)

Plaintiffs' attorneys' bills *directly* related to attorney and staff work on Evasion Statute claims follow, with adjustments to rates consistent with the rates proposed and summarized in Exhibit A to the Kawski Declaration:

| Staff | Description | Time | Date | Adj. Rate | Amount | Docket | Page |
|-------|-------------|------|------|-----------|--------|--------|------|
| Dupuis | Research re marriage evasion | 0.62 | 01/14/14 | $300.00 | $186.00 | Dkt. 166-2 | 1 of 18 |
| Dupuis | Researching evasion statute, guardianship notice, etc; email with coco… | 1.38 | 01/28/14 | $300.00 | $414.00 | Dkt. 166-2 | 2 of 18 |
| Dupuis | Revisions to section on evasion claims | 0.79 | 04/09/14 | $300.00 | $237.00 | Dkt. 166-2 | 8 of 18 |
| Anderson | Research regarding the WI evasion statute as it relates to marriage | 2.00 | 01/22/14 | $255.00 | $510.00 | Dkt. 170-2 | 5 of 65 |
| Anderson | Research regarding evasion statute in WI as applied | 0.50 | 01/22/14 | $255.00 | $127.50 | Dkt. 170-2 | 5 of 65 |
| Anderson | Research regarding the enactment of the WI Evasion Statute | 2.00 | 02/04/14 | $255.00 | $510.00 | Dkt. 170-2 | 8 of 65 |
| Serzante | pull legislative history WI Marriage Evasion state, 765.04 | 0.25 | 02/05/14 | $0.00 | $0.00 | Dkt. 170-2 | 9 of 65 |
| Anderson | Attend Meeting regarding the marriage case and completed research related to the WI evasion statute and preliminary injunctions in the 7th circuit court of appeals | 2.00 | 02/05/14 | $255.00 | $510.00 | Dkt. 170-2 | 9 of 65 |
| **TOTALS** | | **9.54** | | | **$2,494.50** | | |

The Court should not award fees expressly relating to the Evasion Statute claims because Plaintiffs did not prevail. *See Hensley,* 461 U.S. at 436-37 (a "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.")

## III.   The State Defendants do not object to Plaintiffs' claimed litigation expenses.

Plaintiffs are requesting litigation expenses totaling $9,281.78. (*See* Dkt. #164 at 22-23.) The State Defendants do not object to any of Plaintiffs' claimed litigation expenses.

## CONCLUSION

This Court should not take up 42 U.S.C. § 1988 issues now given that the U.S. Supreme Court could issue a decision this summer that would impact the validity of this Court's judgment. If the Court addresses Plaintiffs' fees motion now, it should deny the motion in substantial part.

The State Defendants oppose Plaintiffs' request for an award of almost $1.25 million in attorneys' fees, costs, and expenses primarily because the attorneys' fees claimed are beyond the prevailing market rates for civil rights attorneys in the Western District of Wisconsin.   The State Defendants request that the Court reduce the hourly rates claimed by Plaintiffs' attorneys as discussed above and as shown in Exhibit A to the Kawski Declaration. The State Defendants also request that the Court deduct $3,721.75 for attorneys' fees relating solely to the Evasion Statute. Finally, the State Defendants request the Court reduce Plaintiffs' claimed attorneys' fees by 1% for their attorneys' objectively unreasonable and unreliable billing entries.   The State Defendants request that the Court reduce Plaintiffs' request for attorneys' fees, costs, and expenses to $776,657.76.  That amount is calculated as follows:

| | |
|---|---|
| Market fees calculated in Kawski Decl., Ex. A | $777,621.75 |
| Less Evasion Statute fees | ($ 2,494.50) |
| Less 1% reduction to all fees | ($ 7,751.27) |
| Plus litigation expenses requested | $ 9,281.78 |
| **Total:** | **$776,657.76** |

Dated this 9th day of February, 2015.

Respectfully submitted,

BRAD D. SCHIMEL
Attorney General

/s/ Clayton P. Kawski
TIMOTHY C. SAMUELSON
Assistant Attorney General
State Bar #1089968

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants
Scott Walker, Brad D. Schimel,
and Oskar Anderson

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-3542 (Samuelson)
(608) 266-7477 (Kawski)
(608) 267-2223 (fax)
*samuelsontc@doj.state.wi.us*
*kawskicp@doj.state.wi.us*